**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | |
| | : | **Case No. 21-cr-287** |
| **KEVIN SEEFRIED** | : | |
| **HUNTER SEEFRIED** | : | |
| | : | |
| **Defendants.** | : | |

**JOINT MOTION TO VACATE TRIAL DATE**
**AND EXCLUDE TIME UNDER THE SPEEDY TRIAL ACT**

The United States of America and counsel for defendants Kevin Seefried and Hunter Seefried ("Defendants") jointly move this Court to vacate the current trial date of December 7, 2021, grant a 90-day continuance of this case, exclude the time within which a trial must commence under the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.* ( "STA"), and schedule a status hearing in ninety days to allow counsel for the government and for the defendants the reasonable time necessary for effective plea negotiations or trial preparation, taking into account the parties' exercise of due diligence.

Since the August 3, 2021 status hearing when the Court set this matter for trial on December 7, 2021, the government has provided defense counsel with voluminous discovery, as described below. Defense counsel require additional time to not only review the discovery productions but also to consult with their clients before providing their final position as it relates to a possible non-trial resolution of this matter.[1] The government also needs additional time to continue its production of all potentially material or exculpatory information. Should this Court

---

[1] Counsel for defendant Hunter Seefried is scheduled to begin an eight-week trial on January 31, 2022 that also requires significant trial preparation.

1

grant this joint request, all counsel further request that the current pre-trial briefing schedule be vacated and that a new briefing schedule be ordered by the Court.

The basis for this joint motion follows.

### FACTUAL BACKGROUND

While proof of the Defendant's charged conduct will not be protracted or complicated, proof of the January 6, 2021 Capitol riot will be.  The government has charged that the Defendants conspired with each other to storm the United States Capitol building on January 6 to obstruct the Electoral College vote certification proceedings and thereby interfere with the peaceful transition of presidential power.  The government alleges that Hunter Seefried broke open a window in the Senate Wing of the Capitol.  Hunter and Kevin Seefried then entered the Capitol building through the broken window, allowing other rioters to follow behind.  Once inside, Defendants unlawfully paraded inside of the Capitol before leaving the building.

### PROCEDURAL BACKGROUND

The government initially charged Defendants in a complaint with offenses stemming from their conduct at the Capitol on January 6.  On April 7, 2021, a grand jury in the District of

Columbia returned an indictment, charging the Defendants, jointly and singularly, with violations of:

- 18 U.S.C. § 1512(c)(2) (obstruction of an official proceeding);

- 18 U.S.C. § 1752(a)(1) (entering and remaining in a restricted building or grounds);

- 18 U.S.C. § 1752(a)(2) (disorderly and disruptive conduct in a restricted building or grounds);

- 40 U.S.C. § 5104(e)(2)(D) (disorderly conduct in a Capitol building);

- 40 U.S.C. § 5104(e)(2)(G) (parading, demonstrating, or picketing in a Capitol building);

- 18 U.S.C. § 1752(a)(4) (entering and remaining in a restricted building or grounds with physical violence against property);

- 18 U.S.C. § 1361 (destruction of government property); and

- 40 U.S.C. § 5104(e)(2)(F) (act of physical violence in the Capitol grounds or building).

Both defendants are on pretrial release and have been compliant with pretrial conditions.

The government has turned over to the defense the most substantial evidence of Defendants' participation in the January 6 Capitol riot. As the government continues to review the voluminous video evidence uncovered during its investigation of the Capitol Breach, it may continue to uncover and produce additional footage depicting Defendants inside the Capitol building.

Apart from the files for this case maintained by the assigned FBI agent and government counsel, the government is in possession of a broad array of potentially discoverable material that may also contain exculpatory information. That material includes, for example, thousands of hours

of video footage from multiple sources (*e.g.*, Capitol surveillance cameras, police officers' body-worn-cameras, digital devices such as mobile telephones, Stored Communications Act accounts, digital media tips, the Parler social networking service, and the news media).  That material also includes hundreds of thousands of investigative documents, including but not limited to interviews of tipsters, witnesses, investigation subjects, defendants, and law enforcement officials and financial, travel, and communications records.  The government has filed four memoranda regarding its ongoing and diligent efforts to produce discovery from these voluminous materials (the "Discovery Status Memoranda"), incorporated herein by reference.  S*ee* Dkt. No. 38.

## ARGUMENT

**Owing to the Government's On-Going Execution of its Plan to Satisfy its Very Substantial Disclosure Obligations, An Ends-of Justice Tolling of the Speedy Trial Act is Warranted to Enable the Parties to Determine Whether a Non-Trial Disposition is Appropriate, and if not, to Prepare for Trial.**

Pursuant to 18 U.S.C. § 3161(h)(7), which authorizes this Court to grant a continuance and exclude time under the STA if "the interests of justice" warrant,[2]  the parties jointly move to vacate the currently scheduled trial date and continue this matter to permit the government to continue its

---

[2] The STA requires the district court to "exclude" from "the time within which . . . the trial . . . must commence":

> Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

18 U.S.C.A. § 3161(h)(7)(A).

collection, review, cataloging, and production of discoverable materials pursuant to Federal Rule of Criminal Procedure 16(a) and the *Brady* doctrine.[3]   An "ends of justice" continuance is warranted here because, owing to the massive volume and the complex character of much of the information compiled by the extensive investigation of the Capitol riot, which involved thousands of participants, the government will be unable to discharge its unprecedented discovery obligations by the time of the currently scheduled trial.

Defense counsel represents that they have received voluminous discovery since the last status conference in this case and are still reviewing it. They further represent that they will need more time to review it in order to decide whether and how to negotiate a pretrial disposition.  Given those concerns, the currently scheduled trial date does not provide defense counsel with sufficient time to both decide whether or not to engage in plea discussions and, if not or if those negotiations fail, to file pretrial motions and prepare for trial.

Another reasons for this request is that the government needs additional time beyond that afforded by the current trial date to address unprecedented and complex discovery obligations. Notably, the D.C. Circuit and other Courts of Appeals have approved much longer continuances than that requested here to accommodate production and review of far less voluminous discovery. *See United States v. Bikundi*, 926 F.3d 761, 777-79 (D.C. Cir. 2019) (upholding ends-of-justice continuances totaling 18 months in health care fraud and money laundering conspiracy case involving two defendants, in part because the District Court found a need to "permit defense counsel and the government time to both produce discovery and review discovery").[4]

---

[3] *See Brady v. Maryland*, 373 U.S. 83 (1963).

[4] *See also United States v. Bell*, 925 F.3d 362, 374 (7th Cir. 2019) (upholding two-month ends-of-justice continuance in firearm possession case, over defendant's objection, where five days before trial a superseding indictment with four new counts was returned, "1,000 pages of new discovery materials and eight hours of recordings" were provided, and the government stated that "it needed more than

Since January, the government has worked diligently to obtain, organize, review, and make accessible voluminous data.  As elaborated in the Discovery Status Memoranda, performing the required tasks correctly and comprehensively takes time.  The government is using Relativity as a platform to manage, review, and share documents.  Before documents are loaded to our Relativity workspace, the government must ensure that it has the password for protected documents, that the documents were provided in a format that will open, and that it has removed irrelevant software and system files that would cloud the workspace and confuse reviewers.  Once the documents are loaded, the government must deduplicate them so that they are not analyzed or reproduced multiple times.  The government must also review documents to identify items that must be excluded or redacted.   These processes are necessary to avoid production of unorganized data dumps, unreadable files, and unusable databases, or a failure of the government to take adequate steps to prevent both victims' and defendants' private information from being shared with hundreds of defendants.[5]

---

five days to prepare to try [the defendant] on the new counts"); *United States v. Vernon*, 593 F. App'x 883, 886 (11th Cir. 2014) (unpublished) (district court did not abuse its broad discretion in case involving conspiracy to commit wire and mail fraud by granting two ends-of-justice continuances due to voluminous discovery); *United States v. Gordon*, 710 F.3d 1124, 1157-58 (10th Cir. 2013) (upholding ends-of-justice continuance of almost eleven months, where discovery included "documents detailing the hundreds financial transactions that formed the basis for the charges" and "hundreds and thousands of documents that needs to be catalogued and separated, so that the parties could identify the relevant ones") (internal quotation marks omitted); *United States v. O'Connor*, 656 F.3d 630, 640 (7th Cir. 2011) (upholding ends-of-justice continuances totaling five months and twenty days in wire fraud case that began with eight charged defendants and ended with a single defendant exercising the right to trial, based on "the complexity of the case, the magnitude of the discovery, and the attorneys' schedules"); *United States v. Lewis*, 611 F.3d 1172, 1177-78 (9th Cir. 2010) (upholding ninety-day ends-of-justice continuance in case involving international conspiracy to smuggle protected wildlife into the United States, where defendant's case was joined with several co-defendants, and there were on-going investigations, voluminous discovery, a large number of counts, and potential witnesses from other countries).

[5]  Under the government's discovery plan, document productions from Relativity will be made on a rolling basis.  The government is prioritizing the processing and production of documents that have been requested by Capitol Breach defendants.   Ultimately, the government will also make any

The processing and production of thousands of hours of digital evidence is also complex and time-consuming.  As elaborated in the Discovery Status Memoranda, the government is using evidence.com as a platform to manage, review, and share digital media evidence.  On Friday, September 3, 2021, the government amended its contract with Axon Enterprise, Inc. ("Axon"), to fund a defense environment or "instance" of evidence.com administered by the Federal Public Defender for the District of Columbia.  Other than body-worn-camera footage, digital evidence must first be transmitted to the government's vendor from law enforcement for ingestion into our instance of evidence.com.  The act of transmitting terabytes of digital information can take weeks. Such information may then require additional processing, *e.g.*, conversion from a proprietary format, before it can be ingested into evidence.com.[6]

The government's approach to the production of voluminous discovery in the Capitol Breach cases is consistent with the *Recommendations for Electronically Stored Information (ESI) Discovery Production* developed by the Department of Justice and Administrative Office of the U.S. Courts Joint Working Group on Electronic Technology in the Criminal Justice System.[7]  It is also the generally accepted approach in cases involving voluminous information.  Notably, every circuit to address the issue has concluded that, where the government has provided discovery in a useable format, and absent bad faith such as padding the file with extraneous materials or purposefully hiding exculpatory material within voluminous materials, the government has

---

documents it produces available to a defense Relativity workspace.  This will allow Capitol Breach defense teams to leverage Relativity's search and analytics capabilities to search the voluminous documents for information they believe may be material to their individual cases.

[6] Under the government's plan, as such material is organized, it will provide it to the defense instance of evidence.com on a rolling basis.

[7] *See* https://www.justice.gov/archives/dag/page/file/913236/download.

satisfied its *Brady* obligations.  *See United States v. Tang Yuk*, 885 F.3d 57, 86 (2d Cir. 2018) (the "government's duty to disclose generally does not include a duty to direct a defendant to exculpatory evidence within a larger mass of disclosed evidence") (internal citations omitted); *United States v. Stanford*, 805 F.3d 557, 572 (5th Cir. 2015) ("We have previously rejected such 'open file' *Brady* claims where the government provided the defense with an electronic and searchable database of records, absent some showing that the government acted in bad faith or used the file to obscure exculpatory material.").[8]  The rare cases where courts have required the government to identify *Brady* within previously produced discovery are the exceptions to this widely observed rule.  For example, in *United States v. Saffarinia*, 424 F. Supp. 3d 46 (D.D.C. 2020), in which the court ordered the government to identify any known *Brady* material within its prior productions that involved over a million records and defense counsel was working "*pro bono* with time constraints and limited financial resources," the court acknowledged that "persuasive authority has articulated a 'general rule' that 'the government is under no duty to direct a defendant

---

[8] *See also United States v. Gray*, 648 F.3d 562, 567 (7th Cir. 2011) ("The government is not obliged to sift fastidiously through millions of pages (whether paper or electronic). . . [and] is under no duty to direct a defendant to exculpatory evidence [of which it is unaware] within a larger mass of disclosed evidence.") (quotation marks and citations omitted); *Rhoades v. Henry*, 638 F.3d 1027, 1039 (9th Cir. 2011) (rejecting *Brady* claim on the ground that the defendant "points to no authority requiring the prosecution to single out a particular segment of a videotape, and we decline to impose one"); *United States v. Warshak*, 631 F.3d 266, 297 (6th Cir. 2010) ("As a general rule, the government is under no duty to direct a defendant to exculpatory evidence within a larger mass of disclosed evidence"); *United States v. Skilling*, 554 F.3d 529, 576 (5th Cir. 2009) (same), *aff'd in part, vacated in part on other grounds*, 561 U.S. 358 (2010); *United States v. Pelullo*, 399 F.3d 197, 212 (3d Cir. 2005) ("*Brady* and its progeny . . . impose no additional duty on the prosecution team members to ferret out any potentially defense-favorable information from materials that are so disclosed."); *United States v. Jordan*, 316 F.3d 1215, 1253-54 (11th Cir. 2003) (defendant's demand that the government "identify all of the *Brady* and *Giglio* material in its possession," "went far beyond" what the law requires); *United States v. Yi*, 791 F. App'x 437, 438 (4th Cir. 2020) (unpublished) ("We reject as without merit Yi's argument that fulfillment of the Government's obligation under *Brady* requires it to identify exculpatory material.").

to exculpatory evidence within a larger mass of disclosed evidence.'" *Id*. at 84 n.15 (quoting *Skilling*, 554 F.3d at 576).

As the Supreme Court has observed, the STA "recognizes that criminal cases vary widely and that there are valid reasons for greater delay in particular cases." *Zedner v. United States*, 547 U.S. 489, 497 (2006).  "Much of the Act's flexibility is furnished by § 3161(h)([7]), which governs ends-of-justice continuances."  *Id*. at 498.  "Congress clearly meant to give district judges a measure of flexibility in accommodating unusual, complex, and difficult cases."  *Id*. at 508. Congress recognized "that the many sound grounds for granting ends-of-justice continuances could not be rigidly structured."  *Id*.

Although the "substantive balancing underlying the decision" to grant an ends-of-justice continuance is "entrusted to the district court's sound discretion," *United States v. Rice*, 746 F.3d 1074, 1078 (D.C. Cir. 2014), the requirement of express findings imposes "procedural strictness" on the court.  *Zedner*, 547 U.S. at 509 (2006).  Those findings "must indicate [the court] 'seriously weighed the benefits of granting the continuance against the strong public and private interests served by speedy trials.'" *Rice*, 746 F.3d at 1078 (quoting *United States v. Bryant*, 523 F.3d 349, 361 (D.C. Cir. 2008)).  Here, this Court should find that the government's diligence in discharging its very substantial disclosure obligations in the Capitol breach cases, as described in its Discovery Status Memoranda and during previous status conferences in this case, demonstrate that an ends-of-justice continuance is warranted under the STA.

Accordingly, the government requests that the Court set a status hearing in 90 days of the date of this motion, allowing it to assess the government's disclosures in this case.  If, at that time, the government needs additional time to complete its discovery obligations or defense counsel needs additional time to complete its review of the discovery, the Court may then entertain any

requests for an additional ends-of-justice continuance.  If the parties' discovery obligations are nearly complete at that time, the Court can and should set a trial date.

Finally, the government respectfully requests that the Court vacate the current scheduling order for pretrial motions.  Once discovery is complete, the parties will be ready to litigate the admissibility of trial evidence.  Because discovery is ongoing, the parties need additional time to identify the evidentiary issues for which pretrial resolution by way of motions in limine are appropriate.  Should this Court grant the request to amend the scheduling order to fall within the time of a new trial date, all parties will have had time to appreciate all of the potential evidence in this case, some of which have yet to be determined given the discovery issues that are still outstanding.[9]

---

[9] To date, defendants have filed a Motion to Dismiss to dismiss Count 1 of the indictment.  The basis for that motion, which turned upon the nature of the charges, did not require a review of the government's disclosures.

**CONCLUSION**

For the foregoing reasons and any others that may be offered at a hearing on this matter, the parties respectfully request that the Court grant their motion to vacate the trial date currently set for December 7, 2021, grant a 90-day continuance of the above-captioned proceeding, and set a status hearing to assess the government's progress in meeting its discovery obligations. The parties intend to move this case forward expeditiously given the constraints of the vast amount of investigative information to be reviewed and thank the Court for its efforts towards that goal. The parties are united in their belief that the jointly request continuance  will strongly facilitate their preparedness and the effectiveness of all counsel,

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
D.C. Bar No. 415793

By: _____ /s/ *Emily A. Miller*
  EMILY A. MILLER
  Capitol Breach Discovery Coordinator
  D.C. Bar No. 462077
  555 Fourth Street, N.W., Room 5826
  Washington, DC 20530
  Emily.Miller2@usdoj.gov
  (202) 252-6988

By: _____ /s/ *Brittany L. Reed*
  BRITTANY L. REED
  Trial Attorney – Detailee
  La. Bar No. 31299
  650 Poydras Street, Ste. 1600
  New Orleans, Louisiana 70130
  Brittany.Reed2@usdoj.gov
  (504) 680-3000

By: _____ /s/ *Edson A. Bostic*
  Edson A. Bostic, Esquire
  The Bostic Law Firm
  1700 Market Street, Suite 1005
  Philadelphia, PA 19103
  (267) 239-4693
  eab.bosticfirm@gmail.com

By: _____ /s/ *Carlos J. Vanegas*
  Carlos J. Vanegas
  Assistant Federal Public Defender
  625 Indiana Ave., N.W., Suite 550
  Washington, D.C. 20004
  (202) 208-7500