UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 1:21-cr-00287-TNM |
| | : | |
| KEVIN SEEFRIED, and | : | |
| HUNTER SEEFRIED, | : | |
| | : | |
| Defendant. | : | |

MOTION IN LIMINE REGARDING
AUTHENTICATION OF CERTAIN VIDEO EVIDENCE

The United States of America, by and through its attorney, the United States Attorney for

the District of Columbia, hereby submits the following motion *in limine* regarding the

authentication of certain video evidence at trial.

BACKGROUND

The riot at, and attack on, the United States Capitol Building was an event of unparalleled

size and scope. Much of the event was recorded on video: on surveillance footage captured by the

U.S. Capitol Police ("USCP") cameras; by Metropolitan Police Department ("MPD") body-worn

cameras; by cameras and cellphones carried by journalists and by rioters. The government's case

at trial will rely in part on USCP camera footage to prove the defendants' specific conduct and the

greater context in which it took place.  Should the defense not stipulate to the authenticity of this

footage, the government will call an appropriate witness at trial.  But the government may also

introduce footage from videos taken by other rioters or by journalists; for this set of video evidence,

the government seeks a pretrial ruling on authenticity.

Under Federal Rule of Evidence 901(a), "[t]o satisfy the requirement of authenticating or

identifying an item of evidence, the proponent must produce evidence sufficient to support a

finding that the item is what the proponent claims it is." Rule 901(b) provides a non-exhaustive list of examples of evidence that satisfies this requirement. As relevant here, those examples include:

> (3) *Comparison by an Expert Witness or the Trier of Fact*. A comparison with an authenticated specimen by an expert witness or the trier of fact.
> (4) *Distinctive Characteristics and the Like*. The appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances.

Fed. R. Evid. 901(b)(3), (4).

As a general matter, establishing an item's authenticity is not "a particularly high hurdle." *United States v. Ortiz*, 966 F.2d 707, 716 (1st Cir. 1992); *see also United States v. Vidacak*, 553 F.3d 344, 349 (4th Cir. 2009) ("The burden to authenticate under Rule 901 is not high"); *Link v. Mercedes-Benz of N. Am., Inc.*, 788 F.2d 918, 927 (3d Cir. 1986) ("The burden of proof for authentication is slight."); *United States v. Hassanshahi*, 195 F. Supp. 3d 35, 48 (D.D.C. 2016) ("The threshold for the Court's determination of authenticity is not high, . . . and the proponent's burden of proof for authentication is slight[.]" (citation and quotation marks omitted)). Rule 901 "requires only a prima facie showing of genuineness and leaves it to the [finder of fact] to decide the true authenticity and probative value of the evidence." *United States v. Harvey*, 117 F.3d 1044, 1049 (7th Cir. 1997) (citing cases); *see also, e.g.*, *United States v. Belfast*, 611 F.3d 783, 819 (11th Cir. 2010) ("[A]uthentication itself is 'merely . . . the process of presenting sufficient evidence to make out a prima facie case that the proffered evidence is what it purports to be.'") (quoting *United States v. Caldwell*, 776 F.2d 989, 1002 (11th Cir. 1985)); *Vidacek*, 553 F.3d at 349 ("only a *prima facie* showing is required"). Stated differently, "[t]he standard the district court must apply in evaluating a document's authenticity is whether there is enough support in the record to warrant a reasonable person in determining that the evidence is what it purports to be." *United States v.*

*Blanchard*, 867 F.3d 1, 6 (1st Cir. 2017) (quoting *United States v. Paulino*, 13 F.3d 20, 23 (1st Cir. 1994)). Once that showing is made, "[t]he factual determination of whether evidence is that which the proponent claims is ultimately reserved for the [finder of fact]." *Vidacek*, 553 F.3d at 349; *see also, e.g.*, *Belfast*, 611 F.3d at 819 ("Once that *prima facie* case is established, the evidence is admitted and the ultimate question of authenticity is decided by the jury.").

To make out a prima facie showing of authenticity, "circumstantial evidence of authenticity can be sufficient." *United States v. Bruner*, 657 F.2d 1278, 1284 (D.C. Cir. 1981). *See, e.g.*, *United States v. Broomfield*, 591 F. App'x 847, 851 (11th Cir. 2014) (unpublished) ("Authentication may be established 'solely through the use of circumstantial evidence.'" (quoting *United States v. Smith*, 918 F.2d 1501, 1510 (11th Cir. 1990)). And, importantly, the party seeking to admit evidence need not "rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be." *United States v. Holmquist*, 36 F.3d 154, 168 (1st Cir. 1994). Rather, "the government must only 'demonstrate that, as a matter of reasonable probability, possibilities of misidentification and adulteration have been eliminated.'" *United States v. Celis*, 608 F.3d 818, 842 (D.C. Cir. 2010) (quoting *United States v. Stewart*, 104 F.3d 1377, 1383 (D.C. Cir. 1997)); *see, e.g.*, *United States v. Bowens*, 938 F.3d 790, 794-95 (6th Cir. 2019) (explaining that "[a]nyone could have used the defendants' Facebook accounts, just as the pictures could have depicted the men smoking tobacco cigars, and 'getting high' could have been a reference to skydiving," but that there was sufficient circumstantial evidence "for the jury to infer that the accounts belonged to the defendants, and that the defendants were the authors of the posts about using marijuana"); *Broomfield*, 591 F. App'x at 852 (finding sufficient evidence of authenticity even though "there was no testimony establishing that the recording equipment was reliable or that the video was not altered or staged").

In deciding preliminary questions about the admissibility of these videos, "[t]he court is not bound by evidence rules, except those on privilege." Fed. R. Evid. 104(a). In other words, the government may rely upon otherwise inadmissible evidence in establishing the authenticity of the video evidence described in this motion. *See, e.g.*, *United States v. White*, 116 F.3d 903, 914 (D.C. Cir. 1997). Of course, even with a pretrial ruling that evidence is authentic, and thus admissible, the government must introduce sufficient evidence at trial from which a reasonable fact-finder could reach the same conclusion regarding authenticity. *See, e.g.*, *United States v. Gammal*, 831 F. App'x 539, 542 n.6 (2d Cir. 2020) (unpublished) ("Insofar as the District Court relied on non-public information to make its preliminary determination, it did not err because it did not do so in lieu of the presentation of sufficient authenticating public evidence later at trial."); *United States v. Puttick*, 288 Fed. App'x 242, 246 (6th Cir. 2008) (unpublished) ("It is permissible for the judge to make a preliminary determination as to authentication, admit the evidence conditionally under Rule 104(b), and then allow the jurors to be the final arbiters of whether it was actually authenticated."); *United States v. Branch*, 970 F.2d 1368, 1371 (4th Cir. 1992) ("Thus, even though the district court may have ruled during an in camera proceeding that the proponent had presented sufficient evidence to support a finding that a tape recording was authentic, evidence that would support this same ruling must be presented again, to the jury, before the tape recording may be admitted.").

## ANALYSIS

At trial, the government anticipates offering video clips from the USCP cameras, as well as from sources other than the USCP.  Some of these other sources include reporters who were present in the Capitol on January 6, 2021, the defendants' fellow rioters, or other members of the crowd. Many of the videos were obtained through open-source means and are publicly available.

For any such videos, the government will establish authenticity by asking the jury to compare it with other, authenticated exhibits, in particular, to USCP camera footage. Fed. R. Evid. 901(3). This footage will confirm that such videos are what they purport to be: recordings of the same events, captured from a slightly different perspective, and in some cases depicting events and sounds that were not captured by the USCP camera. In addition, the distinctive features of the interior of the Capitol building and of the other individuals depicted in the footage will help authenticate the videos. *Id*. at 901(4).

For example, the government intends to offer into evidence a video taken by an individual who was present in the crowd at the exterior of the Capitol building at approximately the same time that the defendants entered the Capitol building via a window near the Senate Wing Doors (the "Exterior Video"). The government intends to introduce USCP video – from the vantage point of inside of the Capitol building – depicting rioters breaking both sets of two-paned windows on either side of the Senate Wing Doors and entering the Capitol building through those windows and the Senate Wing Doors, including the defendants climbing through the set of windows to the left (*i.e.* to the west) of the Senate Wing Doors. Still images of the USCP video are below:



*Figure 1*



*Figure 2*



*Figure 3*

Figure 1 depicts a USCP officer deploying crowd-control spray as rioters – including defendant Hunter Seefried – breached the Capitol building.  Figure 2 depicts Hunter Seefried entering the Capitol building through the broken windows to the west of the Senate Wing Doors. Figure 3 depicts defendant Kevin Seefried immediately after climbing through the same window, carrying a flagpole with a large confederate flag.

The Exterior Video, which was filmed by another individual in the crowd outside the Senate Wing Doors, captures precisely the same moments as the USCP video, but taken from the vantage point just outside the building.  This video depicts Hunter Seefried, after the window pane has been broken by other rioters, pushing the remaining glass out of the frame with his hand and climbing through the window.  It also depicts Kevin Seefried climbing through the same window seconds later, carrying a flagpole with a large confederate flag.  This different perspective will be valuable in showing what the defendants themselves were perceiving shortly before, and during

the time that they breached the Capitol building, depicting conduct not captured by the USCP camera, and generally providing context to the defendants' conduct.  Still images from the Exterior Video are below:



*Figure 4*



*Figure 5*

Figure 4 depicts Hunter Seefried climbing through the two-paned set of windows to the right (*i.e.* to the west) of the Senate Wing Doors.  A USCP officer, who has assumed a stance similar to that depicted in Figure 1, is visible through the window frame.  Figure 5 depicts Kevin Seefried, after he has climbed through the same window, holding a flagpole with a confederate flag.  Kevin Seefried is positioned next another rioter who is wearing a helmet and camouflage attire, similar to an individual depicted in a similar location in Figure 3.  The floor tiles depicted in Figure 5 and at other points in the Exterior Video, are also similar in appearance to those in the USCP video.  In addition, many of the rioters depicted in the USCP video are distinctive in appearance and are also depicted in the Exterior Video.

Should the government elect to offer other video clips taken by other persons present in the crowd, the government will file a supplement prior to trial detailing the clips to be used and the factors supporting authenticity of those clips.

**CONCLUSION**

For the reasons stated herein, the government respectfully requests that this Court rule *in limine* that the government's video evidence from non-UCSP sources satisfies the authenticity requirement of Fed. R. Evid. 901.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

By:    */s/ Brittany L. Reed*
       BRITTANY L. REED
       Assistant United States Attorney
       LA Bar No. 31299
       650 Poydras Street, Ste. 1600
       New Orleans, LA 70130
       Brittany.Reed2@usdoj.gov
       (504) 680-3031

       */s/ Benet J. Kearney*
       BENET J. KEARNEY
       Assistant United States Attorney
       NY Bar No. 4774048
       1 Saint Andrew's Plaza
       New York, New York 10007
       BKearney@usa.doj.gov
       (212) 637-2260