## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CASE NO. 21-cr-287 (TNM)** |
| **v.** | : | |
| | : | |
| **KEVIN SEEFRIED, and** | : | |
| **HUNTER SEEFRIED,** | : | |
| | : | |
| **Defendants.** | : | |

### UNITED STATES' TRIAL BRIEF

The United States, by and through its attorneys, respectfully submits this brief summarizing the government's evidence at trial and legal issues that may be brought before the Court. As described below, the government will introduce video evidence, testimony from law enforcement witnesses, and substantial admissions made by both defendants in video-taped interviews. In an effort to streamline its presentation for this bench trial and focus on the matters in dispute, the parties have agreed to certain stipulations.

## I.     THE JANUARY 6 CAPITOL RIOT AND THE DEFENDANT'S ACTIONS

On January 6, 2021, thousands of people descended on the U.S. Capitol and interrupted the joint session of Congress that had convened to certify the votes of the Electoral College for the 2020 Presidential Election. The government's evidence will briefly set the stage for the joint session and the riot in which the defendants participated, and then focus on the defendants' criminal conduct and intent that day.

As the Court is aware, Vice President Michael Pence, as the President of the Senate, was present at the Capitol to preside over the joint session and Senate proceedings. On that day, Secret Service was present for the protection of the Vice President and his family members, and physical barriers and law enforcement officers surrounded the U.S. Capitol building and grounds. At all

relevant times, the United States Capitol building and its grounds—including the Lower West Terrace on the West Front, and the entire Capitol building itself—were closed to members of the public.

The defendants, Kevin Seefried and Hunter Seefried, father and son, respectively, were among the group of rioters who illegally entered the U.S. Capitol grounds, and then the U.S. Capitol building, that day. The defendants traveled from their residence in Laurel, Delaware, to attend the "Stop the Steal" rally to hear former President Donald Trump speak at the rally. After attending the entire rally, the defendants stopped at their vehicle before walking to the U.S. Capitol building. Along with thousands of others, the defendants entered the grounds and approached the Capitol on the West Front, where law enforcement officers were attempting to maintain a barrier to protect the Capitol and the proceedings inside. The defendants climbed over a wall near a stairwell and scaffolding in the Northwest section of the U.S. Capitol building and grounds.

The evidence will show that the defendants were highly motivated and managed to be among the very first rioters to approach the Capitol building near a critical entry point -- the Senate Wing Door. As they stood immediately outside the building, they watched other rioters use a police riot shield and a 2x4 to break large windows just to the right of the Senate Wing Door. Hunter Seefried, wearing gloves, approached the window and used his fist to clear a shard of glass remaining in one of the broken windowpanes and clear the way inside. The defendants and scores of other rioters entered the Capitol building through that window.

By assisting in breaking the window, Hunter Seefried violated 18 U.S.C. § 1361, 18 U.S.C. § 1752(a)(4), and 40 U.S.C. § 5104(e)(2)(F).[1]

---

[1] As it relates to the government's proof relative to the violation of Title 18, United States Code, Sections 1361 and 2, on May 20, 2022, the Architect of the Capitol provided the government with a revised Damage Estimate regarding the January 6, 2021 Capitol Breach. The revised estimate

After jumping on the window's ledge, Hunter Seefried leaned through the window, into the Capitol building, and then swung backward briefly when he saw a police officer inside.  Despite the clear danger, he persisted and jumped through the broken window.  Kevin Seefried witnessed all of this and followed immediately behind Hunter.  They were among the very first rioters to enter the Capitol that day.  In fact, video footage taken from both the interior and exterior of the Capitol building shows that Hunter Seefried was the first person to enter the building through the side of the window from which he had cleared glass and the fourth person to set foot inside the Capitol at that breach point.  Kevin Seefried was the thirteenth person to enter via that same set of windows. As Kevin Seefried made his entrance into the building, on a long flagpole he carried the Confederate Battle flag with him that he had brought with him from home.  The defendants remained inside of the U.S. Capitol for approximately twenty-five minutes.

While present in the U.S. Capitol, Kevin Seefried and Hunter Seefried engaged with U.S Capitol Police (USCP).  After violently and unlawfully entering through the broken window, the defendants joined with other rioters confronting a USCP Officer and seeking out members of Congress and the location where the Electoral College votes for the 2020 Presidential Election were being counted.  The defendants' conduct both entering the Capitol and while inside the Capitol establish their violations of 18 U.S.C. §§ 1512(c)(2) and (2), 18 U.S.C §§ 1752(a)(1) and 1752(a)(2), and 40 U.S.C. §§ 5104(e)(2)(D) and 5014(e)(2)(G).

## II.    THE GOVERNMENT'S PROOF

The government will call a very experienced Inspector from the USCP who will provide an overview of the Capitol building and grounds and set the stage for what occurred there on

---

reflects that the cost to repair the single pane of glass alleged to have been damaged by Hunter Seefried on January 6, 2021 is $774.00, less than $1,000.00.  The government provided notice to the defendants of the change in valuation on May 20, 2022.

January 6, 2021.  Video evidence will show what occurred as the Capitol grounds and building were breached.  Because this Court is familiar with the "overview evidence" that the government has offered in prior Capitol siege trials, the government has compiled a video presentation that is tailored to the defendants' locations and conduct while they were at the U.S. Capitol while also providing the context in which their conduct took place.

The government's presentation will also include the testimony of USCP officers who dealt directly with the defendants and the group they joined at the forefront of the rioters. Their testimony will be accompanied by video and photographs that capture the defendants inside the Capitol.

Finally, the government will also present the testimony of Federal Bureau of Investigation (FBI) agents who investigated this case and interviewed the defendants. The government intends to offer portions of defendant Kevin Seefried's video-recorded FBI interview -- focusing on the statements that prove the elements of the charged offense.  The government intends to introduce the complete FBI interview of Hunter Seefried.[2]

### A.  Stipulated Testimony

In *United States v. Couy Griffin*, 21-cr-00092-TNM (March 21-22, 2022), this Court heard the testimony of United States Secret Service (USSS) Inspector Lanelle Hawa.  Inspector Hawa testified regarding the restricted perimeter surrounding the U.S. Capitol building and grounds and the presence of then Vice President Pence and his immediate family within the restricted perimeter from the afternoon of January 6, 2021 until the morning of January 7, 2021.

---

[2] Each of the defendants' FBI statements contains evidence related to the other defendant.  Because the defendants have elected to proceed by a bench trial, the government does not intend to offer redactions in those statements to address the issues that would arise under *Bruton v. U.S.*, 391 U.S. 123 (1968) in a jury trial.

In *United States v. Timothy Hale-Cusanelli*, 21-cr-00037 (TNM) (May 24-26, 2022), this Court heard the testimony of Daniel Schwager, who, on January 6, 2021 was the general counsel to the Secretary of the United States Senate.  Mr. Schwager testified regarding Congress's Certification of the Electoral College vote (the "Certification proceeding"), including an explanation of the provisions governing the Certification proceeding.  Mr. Schwager also testified about the Certification proceeding, as it occurred on January 6 and 7, 2021.

To save time, and to focus on the matters that will likely be in dispute, the government, with the consent of the defendants, plans to offer into evidence a transcript of Inspector Hawa's testimony and the accompanying exhibits from the *Griffin* trial and Mr. Schwager's testimony and the accompanying exhibits from the *Hale-Cusanelli* trial.

## B.  Trial Stipulations

The government and defendants have reached stipulations to the following facts which all parties agree are not in dispute.  These stipulations include: (1) a description of the Capitol Building and Grounds; (2) the operation and maintenance of closed-circuit video monitoring and recording equipment utilized by the USCP on January 6, 2021; and (3) the defendants' identities and presence in the Capitol on January 6, 2021.

## C.  The Defendant's Admissions

### 1.  Kevin Seefried Interview

Agent Joseph Lear and Agent Brian Dinkel interviewed defendant Kevin Seefried on January 12, 2021; the interview was video-recorded.  Kevin Seefried admitted that he entered the U.S. Capitol on January 6, 2021, through a broken window and said that he knew that it was wrong to have done so.  Kevin Seefried told Agent Lear he left his residence in Laurel, Delaware, on the early morning of January 6, 2021, to travel to Washington, D.C., along with Hunter Seefried,

Hunter's girlfriend, and Kevin's wife.  Kevin Seefried indicated that his purpose was to support the President.

While in attendance at then-President Trump's "Stop the Steal" rally, Kevin Seefried heard the President direct attendees to walk to the U.S. Capitol.  Kevin Seefried admitted watching rioters break windows near the Senate Wing Door.

Kevin Seefried admitted to making statements to a police officer during that  confrontation that confirm his goal of getting to Members of Congress that day to stop what they were doing.  According to Seefried, he said to the officer:  "Why would you want to work for people . . . that are  liars and thieves" and  "this affects us all."

2.  Hunter Seefried Interview

Hunter Seefried was interviewed on January 12, 2021 by Agent Ryan McCabe.  The interview was video-recorded.  During the interview, Hunter Seefried detailed his family's travel from Delaware to Washington D.C. on the morning of January 6, 2021 to attend the "Stop the Steal" rally.  He acknowledged his motive for coming to Washington on January 6, 2021 was that he was concerned about "fraud" tied to the 2020 Presidential Election.  Consistent with the other evidence described above, Hunter Seefried admitted that he confronted a USCP officer about his concerns while inside the Capitol, demanding to know, "why this stuff is allowed to be happening in America."

Hunter Seefried repeatedly denied damaging a window before entering the Capitol building.  When confronted with video evidence, however, he ultimately admitted that he had removed the remaining glass in the windowpane before entering the building.

### D.  USCP Officers

USCP Inspector Thomas Loyd will serve as the government's overview witness regarding January 6, 2021; he will also testify regarding his personal interactions with the group of rioters that included the defendants in the Ohio Clock Corridor, just outside the Senate Chamber.

Likewise, USCP Officer Eugene Goodman and USCP Officer Brian Morgan will testify about their interactions with those rioters, including the defendants, inside the Capitol building. Collectively, these officers will describe the group of rioters as intent on getting to the Members of Congress.

#### 1.    Testimony of Officer Eugene Goodman

The evidence will show that within minutes of entering the building, Kevin Seefried joined with other rioters near the base of the East Senate Wing Grand staircase where the group confronted USCP Officer Eugene Goodman. During this encounter, rioters in the group yelled statements such as "We are here for you."  "Where are the senators?" "Where are the votes being counted."  Video evidence will show that the defendants were present when the statements were made. The testimony will show that when confronted by the mob, which included the defendants, Officer Goodman instructed the mob repeatedly to "back up," given their closeness in proximity to him.  Armed with his service weapon and police baton, Officer Goodman stood alone to face the mob of rioters clustered together in the small hallway near the staircase.  The rioters continued to aggressively yell at Officer Goodman while he received radio commands and awaited the location of other officers who may be able to assist him.  Outnumbered, Officer Goodman decided to ascend to the staircase.

In his interview, Kevin Seefried acknowledged threatening Officer Goodman with violence, specifically stating, "And then I threw my stick down.  I said you can shoot me man but

we're comin' in . . . we're comin' in here man." Video evidence will show that both defendants, as well as other rioters, pursued Officer Goodman up the stairwell, with the rioters chanting and yelling. The defendants stopped chasing Officer Goodman in the Ohio Clock Corridor.

2.   Testimony of Officer Brian Morgan

The evidence will show that Officer Brian Morgan responded to the Ohio Clock Corridor and observed the defendants as they stood confronting the line of police officers who responded to their presence in the corridor. Officer Morgan will testify about his observations of the mob of rioters and their conduct and his observation of the defendants.

He will testify that he heard a rioter referencing the "liars" and "thieves" who were in the building.  Notably, as described above in his interview, Kevin Seefried told Agent Lear that he said to an officer:  "why would you wanna work ah, for people man that are liars and, and thieves man.  Why would you wanna do that?  I don't--  I mean, you know, it's affect, just affects us all man.  It affects you, you, your mom, your kids-- and, you know, he just, you know, kind of put it. Hey, I said well let me tell you this man.  I said man, I don't have no problem with none of you guys. I said we didn't touch nothin', man, we didn't threaten nobody. We didn't come in here for that."  Officer Morgan will not testify that it was Kevin Seefried that made the statement he heard.

**E.  Elements of the Crimes Alleged**

The Superseding Indictment charges eight offenses, some of which jointly charge the defendants, and come counts in which defendant, Hunter Seefried, is charged as the sole defendant. The offenses are as follows[3]:

---

[3] Unless otherwise noted, the instructions here reflect the jury instructions used by this Court in *United States v. Hale-Cusanelli*, 21-CR-37 (TNM).

Count One

Count One of the Superseding Indictment charges the defendants with obstruction of an official proceeding and aiding and abetting, in violation of 18 U.S.C. §§ 1512(c)(2) and (2). In order to find the defendants guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt:

1.  First, the defendant attempted to or did obstruct or impede an official proceeding;

2.  Second, the defendant intended to obstruct or impede the official proceeding;

3.  Third, the defendant acted knowingly, with awareness that the natural and probable effect of his conduct would be to obstruct or impede the official proceeding; and

4.  The defendant acted corruptly.

The government further alleges that the defendants aided and abetted others in committing obstruction of an official proceeding.  To satisfy its burden of proof in proving that the defendant aided and abetted others in committing this offense, the government must prove the following beyond a reasonable doubt:

1.  First, that others committed obstruction of an official proceeding by committing each of the elements of the offense charged;

2.  Second, that the defendants knew that obstruction of an official proceeding was going to be committed or was being committed by others;

3.  Third, that the defendants performed an act or acts in furtherance of the offense;

4.   Fourth, that the defendants knowingly performed that act or acts for the purpose of aiding, assisting, soliciting, facilitating, or encouraging others in committing the offense of obstruction of an official proceeding; and

5.  Fifth, the defendants did that act or acts with the intent that others commit the offense of an obstruction of an official proceeding.

9

The term "official proceeding" includes a proceeding before the Congress. The official proceeding need not be pending or about to be instituted at the time of the offense. If the official proceeding was not pending or about to be instituted, the government must prove beyond a reasonable doubt that the official proceeding was reasonably foreseeable to the defendant. As used in Count One, the term "official proceeding" means Congress's Joint Session to certify the Electoral College vote.

A person acts "knowingly" if he realizes what he is doing and is aware of the nature of his conduct, and does not act through ignorance, mistake, or accident. In deciding whether the defendant acted knowingly, the Court may consider all of the evidence, including what the defendant did or said.

<u>Count Two</u>

Count Two of the Superseding Indictment charges the defendants with entering or remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1). In order to find the defendants guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt:

1. First, that the defendant entered or remained in a restricted building or grounds without lawful authority to do so; and

2. Second, that the defendant did so knowingly.

The term "restricted building or grounds" means any posted, cordoned off, or otherwise restricted area of a building or grounds where a person protected by the Secret Service is or will be temporarily visiting.

The term "person protected by the Secret Service" includes the Vice President and the immediate family of the Vice President.

The term "knowingly" has the same meaning as previously defined.

Count Three

Count Three of the Superseding Indictment charges the defendants with disorderly or disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2). In order to find the defendants guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt:

1. First, that the defendant engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building or grounds;

2. Second, that the defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions;

3. Third, that the defendant's conduct occurred when, or so that, his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions.

"Disorderly conduct" occurs when a person is unreasonably loud and disruptive under the circumstances, or interferes with another person by jostling against or unnecessarily crowding that person.

"Disruptive conduct" is a disturbance that interrupts an event, activity, or the normal course of a process.

The terms "restricted building or grounds" and "knowingly" have the same meanings as previously defined.

Count Four

Count Four of the Superseding Indictment charges the defendants with disorderly or disruptive conduct in a Capitol building or grounds, in violation of 40 U.S.C. § 5104(e)(2)(D). In

order to find the defendants guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt:

1. First, that the defendants engaged in disorderly or disruptive conduct in any of the United States Capitol Buildings;

2. Second, that the defendants did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress; and

3. Third, that the defendants acted willfully and knowingly.

The term "United States Capitol Buildings" includes the United States Capitol located at First Street, Southeast, in Washington, D.C.

The term "disorderly or disruptive conduct" has the same meaning described in the instructions for Count Three defining "disorderly conduct" and "disruptive conduct."

A person acts "willfully" if he acts with the intent to do something that the law forbids, that is, to disobey or disregard the law.  "Willfully" does not, however, require proof that the defendant be aware of the specific law or rule that his conduct may be violating.

The term "knowingly" has the same meaning as previously defined.

<u>Count Five</u>

Count Five of the Superseding Indictment charges the defendants with parading, demonstrating, or picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). In order to find the defendants guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt:

1. First, that the defendants paraded, demonstrated, or picketed in any of the United States Capitol Buildings;

2. Second, that the defendants acted willfully and knowingly.

The terms "parade" and "picket" have their ordinary meanings.  The term "demonstrate" refers to conduct that would disrupt the orderly business of Congress by, for example, impeding or obstructing passageways, hearings, or meetings, but does not include activities such as quiet praying.[4]

The terms "United States Capitol Buildings," "knowingly," and "willfully" have the same meanings as previously defined.

Count Six

Count Six of the Superseding Indictment charges the defendant, Hunter Seefried, with entering and remaining in a restricted building or grounds with physical violence against property, in violation of 18 U.S.C. § 1752(a)(4). In order to find the defendant guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt:

1.  First, that the defendant engaged in any act of physical violence against any person or property in any restricted building or grounds; and

2.  Second, that the defendant did so knowingly.

The term "knowingly" has the same meaning as previously defined.

Count Seven

Count Seven of the Superseding Indictment charges the defendant, Hunter Seefried, with destruction of government property, in violation of 18 U.S.C. § 1361.  In order to find the defendant guilty of injuring, damaging, or destroying government property of the United States, the Court must find that the government proved each of the following  elements beyond a reasonable doubt:

---

[4] *Bynum v. United States Capitol Police Board*, 93 F. Supp. 2d 50, 58 (D.D.C. 2000).

1.  First that the defendant injured, damaged, or destroyed property[5];

2.  That the defendant did so willfully;

3.  That the property involved was the property of the United States, or of any department or agency thereof, or any property which had been or was being manufactured or constructed for the United States, or any department or agency thereof, however, the government does not need to prove that the defendant knew that the property belonged to the United States;[6] and

4.  That the damage or attempted damage to the property in question exceeded the sum of $1,000.[7]

---

[5] Although Section 1361 refers to committing a "depredation" against property, the Modern Federal Jury Instructions does not use that term, instead using "damaged (*or* destroyed)," because "the term used in the statute – 'depredation' – is unlikely to be in the vocabulary of the average juror . . . Instead, as courts routinely refer to 18 USC § 1361 as involving 'damage' to government property, that term is substituted." 2 Modern Federal Jury Instructions, ¶ 44A.01, Comment to Instruction 44A-4 (footnote with case citations omitted). Similarly, the Pattern Jury Instructions for Federal Criminal Cases, District of South Carolina (Eric William Ruschky, 2020 Online Edition) use "injured or damaged" for this element.

[6] *United States v. LaPorta*, 46 F.3d 152, 158–59 (2d Cir. 1994) (Section 1361 does not require proof that defendants know that they are destroying government property; government's title to property is jurisdictional fact, not a scienter requirement); *United States v. Krause,* 914 F.3d 1122, 1127 (8th Cir. 2019) ("The plain language of the statute unequivocally does not demand that a person have knowledge that the property willfully injured or destroyed belongs to the United States. Although the word 'willfully' requires that Krause acted knowingly and voluntarily, the terms does not relate to the latter phrase: 'property of the United States.' This language merely lays out a jurisdictional prerequisite: the property must belong to the United States for a person to be guilty of this offense.") (citation omitted).

[7] Section 1361 provides that the offense is a felony punishable by up to ten years' imprisonment if the damage to government property exceeds $1,000, but it is only a misdemeanor offense if the damage does not exceed $1,000. As referenced above, the government does not intend to offer evidence that the value of the pane of glass, a portion of which was removed by Hunter Seefried, has a value exceeding $1,000.

14

<u>Count Eight</u>

Count Eight of the Superseding Indictment charges the defendant, Hunter Seefried, with acts of physical violence in the Capitol Grounds or Building, in violation of 40 U.S.C. § 5104(e)(2)(F). In order to find the defendant guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt:

1.  First, that the defendant engaged in an act of physical violence in the Grounds or any of the Capitol Buildings; and

2.  That the defendant did so willfully and knowingly.

The term "act of physical violence" is defined as "any act involving (A) an assault or other infliction or threat of infliction of death or bodily harm on an individual; or (B) damage to, or destruction of, real or personal property."

The terms "United States Capitol Buildings," "knowingly," and "willfully" have the same meanings as previously defined.

## III.   THE PARTIES' EVIDENCE AND ANTICIPATED DEFENSES

The parties are mutually committed to trying the case expeditiously and without lengthy arguments about objections. The government may nonetheless object to particular portions of exhibits, or particular questions about exhibits.[8]

---

[8] For example, the government will offer statements that defendant Kevin Seefried made to the FBI during his interview. Because the defendant is an opposing party, his statements are not hearsay pursuant to Fed. R. Evid. 801(d)(2)(A). There is no similar rule allowing the defendant to admit his own statements. Barring an exemption from hearsay (e.g., Rule 801(d)), an exception to the hearsay rule (e.g., Rule 803), or statements made admissible by the Rule of Completeness (Rule 106), the defendant's own statements, when offered by him, are inadmissible hearsay.

As it relates to anticipated defenses, the government anticipates that the defendants will argue that they lacked the corrupt intent necessary to prove a violate of Section 1512(c)(2).  In fact, ample evidence will support that element.

Each defendant came to Washington, D.C., and ultimately to the U.S. Capitol, to support former President Trump.  Support for the former President is not, of course, itself evidence of an intent to stop the Certification proceeding.  But understood in context, the defendants showed that support by coming to a rally held 14 days before the end of that President's term, premised on the idea that the election had been stolen, held on the same day that that President's own Vice President was about the certify the election for the other candidate, and at which the President urged those in attendance to go the Capitol, which both defendants in fact did.  In his interview, moreover, Hunter Seefried made clear that he was focused on what he believed was "fraud" in the 2020 presidential election.  And Kevin Seefried used Facebook—an account he deleted on January 7, 2021—to solicit others to come to the rally and was a Facebook "friend" with a prominent supporter of the President who also attended the rally on January 6.

From the rally, the defendants proceeded to the Capitol.  But they did more than simply show up or follow a crowd.  They made their way past thousands of others, including law enforcement officers, scaled a wall to get to the building, and positioned themselves at the very front of those trying to breach the Capitol where lawmakers were meeting in joint session to certify the results of the 2020 presidential election.  The defendants were among the first rioters to enter the Capitol building.  They stood nearby as other rioters violently smashed a window of the Capitol building, with Kevin Seefried in his interview emphasizing the violence of that destruction.  And Hunter Seefried physically removed a portion of the glass that cleared the way for rioters to  enter

the Capitol building through that particular window.  Both defendants entered through the window that Hunter Seefried had helped to damage.

Both defendants knew, moreover, that their conduct was wrongful.  Each admitted in his interviewed that he knowingly entered the building and that he knew that doing so was wrong.

Once inside the Capitol building, the defendants joined a group that confronted Capitol Police Officer Eugene Goodman as he tried to prevent rioters from reaching members of Congress. During that confrontation, the group that the defendants had joined demanded to know where lawmakers were and where the Certification proceeding was occurring.  And during that confrontation, the defendants were no passive bystanders.  Instead, Kevin Seefried threatened Officer Goodman with a flagpole.  Indeed, the flag that Kevin Seefried carried itself served to signal his intent: the Confederate *Battle* Flag, a symbol of violent opposition to the United States government.  And when Officer Goodman, who was significantly outnumbered, was forced to retreat, the defendants joined the other rioters pursuing Officer Goodman further into the Capitol building.

This and other evidence the government intends to adduce at trial will establish the defendants intended to stop what Congress was doing that day, and that they knew their conduct was wrongful.

## IV.    CONCLUSION

The defendants were early, aggressive, and active participants in the breach of the U.S. Capitol on January 6, 2021.   Acting together and with others around them, they corruptly obstructed the joint session of Congress to Certify the Electoral College vote.  At trial, the evidence will prove beyond a reasonable doubt that the defendants committed each offense charged in the Superseding Indictment.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

By:     /s/ Brittany L. Reed
BRITTANY L. REED
Assistant United States Attorney
LA Bar No. 31299
650 Poydras Street, Ste. 1600
New Orleans, LA 70130
Brittany.Reed2@usdoj.gov
(504) 680-3031

/s/ Benet J. Kearney
BENET J. KEARNEY
Assistant United States Attorney
NY Bar No. 4774048
1 Saint Andrew's Plaza
New York, New York 10007
Benet.Kearney@usdoj.gov
(212) 637-2260