```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
_____

United States of America,      ) Criminal Action
                               ) No. 1:21-cr-00287-TNM
             Plaintiff,        )
                               )
vs.                            ) Bench Trial Verdict
                               )
Kevin Seefried and             )
Hunter Seefried,               ) Washington, D.C.
                               ) June 15, 2022
             Defendants.       ) Time:  3:00 p.m.
_____

              Transcript of Bench Trial Verdict
                        Held Before
              The Honorable Trevor N. McFadden
                 United States District Judge


                     A P P E A R A N C E S

For the Government:       Brittany L. Reed
                          UNITED STATES ATTORNEY'S OFFICE
                          650 Poydras Street, Suite 1600
                          New Orleans, Louisiana 70130

                          Benet Kearney
                          UNITED STATES ATTORNEY'S OFFICE
                          One Saint Andrew's Plaza
                          New York, New York 10007

For the Defendant Kevin Seefried:
                          Eugene Ohm
                          Elizabeth A. Mullin
                          FEDERAL PUBLIC DEFENDER FOR THE
                          DISTRICT OF COLUMBIA
                          625 Indiana Avenue, Northwest
                          Washington, D.C. 20004

For the Defendant Hunter Seefried:
                          Edson Bostic
                          THE BOSTIC LAW FIRM
                          1700 Market Street, Suite 1005
                          Philadelphia, Pennsylvania 19103
```

```
Stenographic Official Court Reporter:
                         Nancy J. Meyer
                         Registered Diplomate Reporter
                         Certified Realtime Reporter
                         333 Constitution Avenue, Northwest
                         Washington, D.C. 20001
                         202-354-3118
```

|     |     |
| --- | --- |
| 1   | P R O C E E D I N G S |
| 2   | THE COURTROOM DEPUTY:  This is Criminal Case 21-287, |
| 3   | United States of America v. Kevin Seefried and Hunter Seefried. |
| 4   | Counsel, please come forward to identify yourselves for |
| 5   | the record, starting with the government. |
| 6   | MS. REED:  Good afternoon, Your Honor.  AUSA Brittany |
| 7   | Reed and Benet Kearney on behalf of the United States. |
| 8   | THE COURT:  Good morning, ladies -- or good |
| 9   | afternoon. |
| 10  | MR. OHM:  Eugene Ohm and Elizabeth Mullin on behalf |
| 11  | of Kevin Seefried.  Good afternoon, Your Honor. |
| 12  | THE COURT:  Good morning [sic], folks.  Good |
| 13  | afternoon, Mr. Kevin Seefried. |
| 14  | MR. BOSTIC:  Good afternoon, Your Honor.  Edson |
| 15  | Bostic on behalf of Hunter Seefried. |
| 16  | THE COURT:  Good morning, Mr. Bostic -- good |
| 17  | afternoon, Mr. Bostic, and good afternoon, Mr. Hunter Seefried. |
| 18  | MR. HUNTER SEEFRIED:  Good afternoon. |
| 19  | THE COURT:  All right.  Ms. Reed, anything we need to |
| 20  | discuss before I announce the verdicts? |
| 21  | MS. REED:  No, Your Honor. |
| 22  | THE COURT:  Mr. Ohm? |
| 23  | MR. OHM:  No, Your Honor. |
| 24  | THE COURT:  And Mr. Bostic? |
| 25  | MR. BOSTIC:  No, Your Honor. |

1          THE COURT: All right. I make the following findings
2     of fact and conclusions of law in support of my verdict in
3     United States v. Kevin Seefried and Hunter Seefried. This
4     verdict is taken in full recognition of the standard jury
5     instructions including, but not limited to, the government's
6     burden to prove its case beyond a reasonable doubt.
7          I am utilizing the elements laid out in the government's
8     trial brief, which both defendants have agreed to. I'm also
9     assuming, without deciding, that the defense is correct that
10    *Rosemund's* "advance knowledge" requirements applies for any
11    aiding and abetting conviction.
12         As a general matter, I found all of the law enforcement
13    witnesses, including the stipulated testimony of two government
14    witnesses from previous trials, to be credible. I'll
15    specifically discuss Officer Goodman's testimony later, who is
16    the only witness the defense has seriously sought to impeach.
17    I also found Ms. Cuff to be largely credible. I think she did
18    have some bias for the defendants, and I found her lack of
19    specificity on certain questions suspicious. But, generally, I
20    think she did testify credibly, and I do credit her testimony,
21    except to the extent it disagrees with my findings below.
22         I won't go into great detail now as to the defendants'
23    actions on January 6th, 2021, largely because the defendants'
24    actions are basically uncontested. They drove from Delaware to
25    D.C. on the morning of January 6th with two women to attend

1       then-President Trump's "Stop the Steal" rally.  After attending
2       at least part of the rally in the morning, the group decided to
3       get lunch, which they ate at their car, which was parked in
4       front of the west front of the U.S. Capitol.
5               Then they joined the throng of people heading from the
6       rally to the U.S. Capitol.  Kevin and Hunter Seefried got
7       separated from the women in this throng, and the two men made
8       their way first to the east side of the Capitol, then to the
9       west side, where they climbed stairs leading to the Senate wing
10      door.  There they climbed through a broken window into the
11      Capitol Building where they joined the mob that briefly chased
12      Officer Goodman up the Senate east grand staircase.
13              This ended in a standoff between U.S. Capitol Police and
14      the rioters in the Ohio Clock corridor outside the Senate
15      Chamber.  After about 20 minutes or so, the two men left the
16      corridor, apparently concerned that the police were about to
17      arrest all of the protesters.  I'll make findings as to several
18      specific incidents during the day in a few moments.
19              Next, I briefly discuss Counts 2, 3, 4, and 5.  Although
20      the defendants didn't explicitly concede their guilt as to all
21      of these counts, they made no real attempt to undermine the
22      government's evidence on these counts, which I thought was
23      overwhelming.
24              As to the two section 1752 counts, Counts 2 and 3, I
25      find that the Capitol Grounds had been restricted as shown in

1    Government's Exhibit 101 and discussed in Inspector Hawa's
2    stipulated testimony and that, at the very least, by the time
3    the defendants entered the Capitol Building, they knew that
4    they had entered into a restricted area.
5         I also think the government's video evidence clearly
6    shows that the defendants engaged in disorderly and disruptive
7    conduct, and paraded and demonstrated in the Capitol Building
8    within the meanings of Count 3, 4, and 5.  I should say,
9    Officer Goodman's testimony and Officer Morgan's testimony also
10   supports that conclusion.
11        As to Kevin Seefried, this is shown by his shouting,
12   flag waving, and threatening conduct and statements towards
13   Officer Goodman.  As to Hunter Seefried, this is shown, at the
14   very least, by his involvement in the destruction of the window
15   and entry through the window.  It is also shown in the
16   participation of both defendants in a mob that chased
17   Officer Goodman through the Senate building.  Therefore, I find
18   both defendants guilty of Counts 2 through 5.
19        I'll now discuss Count 6 through 8, which relate to
20   Hunter Seefried's breaking of the glass window.  Although these
21   counts involve slightly different elements, I believe they rise
22   or fall together.  Count 8 defines an act of physical violence
23   as any act involving damage to or destruction of real or
24   personal property.
25        While Count 6 does not seem to define an act of physical

1   violence against any property in any restricted building, I
2   believe the same basic definition should apply as that given in
3   Count 8, and neither party has suggested otherwise.  This
4   definition is also very similar to Count 7's requirement of the
5   government showing the defendant injured, damaged, or destroyed
6   property.
7   　　　　　I've carefully and repeatedly reviewed Government's
8   Exhibit 502, which provides the best evidence of the window
9   breaking.  Based on my review, I find that two other men
10  repeatedly smashed the window, one using a shield and one using
11  a 2-by-4.  At 52 seconds in Exhibit 502, the man with the
12  2-by-4 succeeded in completely smashing the windowpane.  While
13  the window shatters, one large shard fell to the bottom lip of
14  the window frame and stuck there.  It sat off balance and at an
15  angle to the frame.  At 53 seconds, Hunter Seefried then pushed
16  the shard through the window and onto the floor.
17  　　　　　Based on these findings, I do not believe Hunter
18  Seefried destroyed the window.  I take the government's point
19  that someone can, quote/unquote, finish the job started by
20  someone else and that the man wielding the shield and the man
21  wielding the 2-by-4 can both be guilty of destroying the
22  window.  But here I think the job already was finished by the
23  time Mr. Seefried acted.  The other two men had taken turns
24  damaging the window and had, ultimately, destroyed it.  There
25  was nothing more the defendant could do to reduce the value or

1   utility of the window.  The shard he pushed was utterly useless
2   and had, in fact, already been knocked out of the frame.
3           While a closer matter, I also don't think I can say that
4   he aided and abetted the property destruction.  As I said, he
5   acted after the other two rioters had destroyed the window.
6   Had he pushed the window shard while they were still hammering
7   away at it, this would be a different matter.  For all these
8   reasons, I find Hunter Seefried not guilty of Counts 6, 7, and
9   8.
10          Next, I consider Count 1, obstruction of an official
11  proceeding, as to Kevin Seefried.  This first element is that
12  the defendant attempted to or did obstruct or impede an
13  official proceeding.  I find that the defendant did, in fact,
14  obstruct the certification of the election by his actions;
15  specifically, entering the U.S. Capitol while the certification
16  was supposed to take place, engaging in a heated confrontation
17  with Officer Goodman just below the Senate Chamber, and taking
18  a confederate flag into the Ohio Clock corridor just feet from
19  the path the Senators would take to and from the House Chamber.
20          All of these actions, in addition to his joining of a
21  larger mob, had the effect of obstructing the certification.  I
22  note and credit Mr. Schwager's stipulated testimony about the
23  planned certification proceeding, and I believe that the
24  senators had to shelter in place in the U.S. Senate Chamber,
25  just feet from where the defendants were, in part because of

1   the mob -- the mob's illegal actions and presence.

2           The second element is that the defendant must intend to
3   obstruct or impede the certification.  I also find the
4   government has proven this element.  This is shown most
5   definitively through Kevin Seefried's statement to
6   Officer Goodman; specifically, "Where are the members at?" and
7   "Where are they counting the votes at?  I'm not leaving!" and
8   "You can shoot me, but we're coming in."

9           I find that Kevin Seefried did make these statements
10  during a confrontation with Officer Goodman near the base of
11  the Senate east grand staircase.  Also during this time, he
12  made jabbing motions at Officer Goodman with his flagpole to
13  keep Officer Goodman from approaching him.

14          Kevin Seefried's counsel have striven mightily to
15  undermine Officer Goodman's testimony on these points,
16  questioning whether there was, in fact, time for all of this to
17  occur given the video evidence; and whether it is realistic
18  that Officer Goodman would remember specific statements from
19  the defendant, given all that had happened that day and the
20  fact that Officer Goodman apparently had not attributed these
21  statements to the defendant before.

22          I reject each of these arguments.  First, I think the
23  defense is wrong about the timing of the videos.  Defense
24  argues that Government's Exhibit 505, which is a video taken by
25  Igor Bobic, who had just descended the east grand staircase,

captures their confrontation only about 3 seconds after the confrontation began. I don't think that's correct. That video shows Officer Goodman's ASP baton on the ground at the foot of the staircase. Yet, Kevin Seefried admitted to the FBI that he had a confrontation with the officer during which the officer brandished his baton, he brandished his stick or flagpole, and he told the officer, "You can shoot me, but we're coming in."

I think the government is correct that they had a longer confrontation, lasting potentially 10 seconds before Government's Exhibit 505 captures that. The government has laid out its reasoning, which I largely agree with, in a letter to the Court dated yesterday that I'll be making part of the public docket, along with Mr. Hunter Seefried's -- or Kevin Seefried's response.

More basically, I found Officer Goodman credible in the statements he attributed to Kevin Seefried. Officer Goodman explained his pneumonic device of remembering specific people by something about them, like the "Q Shirt Guy" or the one who looked like his supervisor. Similarly, he remembered Kevin Seefried as the "Confederate Flag Guy" because he, remarkably, was carrying a confederate battle flag in the U.S. Capitol. That helps explain how he would have a specific memory of these certain individuals.

And according to both Officer Goodman and Kevin Seefried, it is clear the two of them had a

1  confrontation.  This makes it more likely he would stand out in
2  Officer Goodman's memory.  Finally, I note that Officer Goodman
3  didn't have any similar distinct memories of statements from
4  Hunter Seefried, just that he refused to leave.  This bolsters
5  Officer Goodman's credibility, in my mind, because he's not
6  just willy-nilly ascribing inculpatory statements to the
7  defendants.
8      Finally, I recognize that Officer Goodman apparently did
9  not previously attribute some of these statements specifically
10 to Kevin Seefried.  While this does call into question his
11 testimony now, I don't think it ultimately discredits his
12 current testimony.  Rather, I find that now, at trial,
13 confronted by the defendants and having refreshed his memory
14 with the videos and -- and more fully prepared for testimony,
15 he was in a position to give a more fulsome and accurate count
16 of the events.
17     Now, it is possible that Officer Goodman was incorrect
18 about some other details, including the timing of things and
19 his distance from Kevin Seefried when they had this
20 confrontation with the sticks.  But I believe those are
21 innocent misrecollections, which are common for people when
22 testifying about chaotic events months afterwards.  Regardless,
23 they do not make me believe that Officer Goodman was incorrect
24 in attributing the statements to Kevin Seefried that I just
25 recited.

1          More generally, Kevin Seefried's intent is demonstrated
2     by his background awareness of the political situation; his
3     desire to attend the "Stop the Steal" rally; his efforts to be
4     one of the first rioters to enter the Capitol; his
5     participation in a mob that chased Officer Goodman through the
6     Capitol; his subsequent questioning of officers, such as, "Why
7     would you want to work for people who are liars and thieves?"
8     and his presence with the shaman and others who were yelling,
9     "Where are you hiding?"  "Where are all the members at?"
10    "Where are they counting votes at?"
11         The third element is the defendant acted knowingly with
12    awareness that the natural and probable effect of his conduct
13    would be to obstruct or impede the official proceeding.  I
14    believe the government has also met this element.  Many of the
15    points I just mentioned also support this element.  In
16    particular, I note his presence in a mob that is apparently
17    looking for the senators who are supposed to be counting votes,
18    suggests an awareness of the implications of their actions.
19    They had breached the Capitol Building while the certification
20    was supposed to be taking place.  I find that he knew what he
21    was doing.
22         Finally, the government must show the defendant acted
23    corruptly.  To act corruptly, the defendant must use unlawful
24    means or have a wrongful or unlawful purpose or both.  The
25    defendant must also act with consciousness of wrongdoing.

Consciousness of wrongdoing means that -- with an understanding or awareness that what the person is doing is wrong or unlawful. I find the government has also satisfied this element.

As an initial matter, the wrongfulness of the defendants' actions, things like breaking into the Capitol through a window, threatening an officer, and then joining in a mob that chased him through the Capitol, are so self-evident as to require little further explication. But I also note his admissions to Agent Lear that "We were doing something we shouldn't be doing" and "We shouldn't be here" are further proof of this element.

Finally, I consider Count 1 as to Hunter Seefried. I believe this is a closer question than his father's guilt, as his father was generally the prime mover in the decision to go to D.C. He apparently has a greater knowledge and interest in politics. He made more explicit statements regarding the certification, and he engaged in more aggravated conduct while in the Capitol.

The first element the government must prove as to Hunter Seefried on Count 1 is that the defendant attempted to or did obstruct or impede an official proceeding. I find that the government has proven this element. The defendant joined others in breaking through a Capitol window, chasing an officer, and participated in a standoff with officers right

outside the Senate Chamber, where senators should have been certifying the election rather than sheltering in place due to the rioters' breach and continuing presence.

The second element is that the defendant intended to obstruct or impede the official proceeding. I put limited stock in Hunter Seefried's attendance at the "Stop the Steal" rally or statements or mindset pre-January 6th. My impression of him is that he was not very politically attuned. However, his actions at the Capitol and statements about his actions are more damning. As he told Agent McCabe, the atmosphere changed from fun to heated as the crowd approached the Capitol.

He also admitted to Agent McCabe that he entered the building through the window because that was the easiest way to get to the front and that's where all the commotion was. These affirmative steps suggest that he was no longer just following his father but was himself angry, riled up, and intent on action. He joined a mob inside the Capitol that was repeatedly yelling, "Where are you hiding?" "Where are all the members at?" "Where are they counting votes at?"

While this is not definitive proof of his intent, and there's no evidence that he himself yelled these things, his participation and decision to remain with the mob is suggestive that he agreed with them. He also told Agent McCabe that what's going on in that room, that building, affects my way of living. I think this statement is the single most suggestive

statement of an intent to obstruct the certification.

Similarly, he admitted that he wanted to ask "them people," why is this stuff going on? Why are they allowing this to happen? And people are saying they witnessed so-called fraud. To be sure, he also said that he went to the Capitol to express his opinion, that he had no idea why the Capitol was targeted, and that he wasn't certain what was going on in the Capitol.

These statements would suggest he wasn't aware of the certification and was not trying to obstruct it. I discounted those statements, though. Hunter Seefried showed a pattern of deception and minimization of his actions in the interview with Agent McCabe. He repeatedly lied about his involvement with the window break, and he claimed that he didn't know where his father was during this time. In light of this action -- or in light of this, I do not believe that his exculpatory statements detract from his inculpatory statements or from the natural presumption that he was acting in accord with the other members of the mob in the Ohio Clock corridor. I, thus, find that the government has proved the second element.

For similar reasons, I find that the government has proven the third element and that the defendant acted knowingly with awareness that his natural and probable effect of his conduct would be to obstruct or impede the official proceeding. While he may not have known about the certification process

1    before January 6th, it is clear to me that by the time he was
2    in the Capitol Building, he knew that an official proceeding
3    was supposed to be occurring there.  And he would have been
4    aware that his actions would inevitably obstruct those
5    proceedings.
6            Finally, I find that the government has proven the
7    fourth element; that the defendant acted corruptly.  He
8    admitted to Agent McCabe that he was ashamed of what he had
9    done.  In any event, his involvement with the window
10   destruction, his decision to enter the Capitol Building, even
11   after he believed an officer was about to pull a gun on him,
12   and his actions in the Capitol are also so self-evidently
13   illegal that he must have known what he was doing was unlawful.
14           For all these reasons, I find both defendants guilty of
15   Count 1.  Because I believe they acted as principals, I will
16   not also consider whether they acted as aiders and abettors as
17   well.
18           Ms. Reed, do you have any questions about my verdict?
19           MS. REED:  No, Your Honor.
20           THE COURT:  Mr. Ohm?
21           MR. OHM:  No, Your Honor.
22           THE COURT:  Mr. Bostic?
23           MR. BOSTIC:  No, Your Honor.
24           THE COURT:  All right.  Ms. Chaclan, let's set a
25   sentencing date.

```
 1                  THE COURTROOM DEPUTY:  September 16th at 2:00 p.m.
 2                  THE COURT:  All right.  Does that work for the
 3      government?
 4                  MS. REED:  Yes, Your Honor.
 5                  THE COURT:  Mr. Ohm?
 6                  MR. OHM:  What date?
 7                  THE COURT:  September 16th at 2:00 p.m.
 8                  MR. OHM:  Simultaneous?
 9                  THE COURT:  I don't know.  Anybody have a thought
10      about whether we should do these simultaneously?  I mean, I
11      guess I'd just do them one after another then.
12             Mr. Bostic, are you also free then?
13                  MR. BOSTIC:  No, Your Honor.  I'll be out of the
14      country, returning the week of the 19th.
15                  THE COURT:  Okay.  So let's set Mr. Kevin Seefried
16      for September 16th at 2:00 p.m.
17             Ms. Reed, is the government available on September 23rd
18      at 2:00 p.m.?
19                  MS. REED:  Yes, Your Honor.
20                  THE COURT:  And, Mr. Bostic, does that work for you?
21                  MR. BOSTIC:  Yes, Your Honor.
22                  THE COURT:  All right.  Ms. Reed, is the government
23      seeking step-back?
24                  MS. REED:  One moment, Your Honor.
25                  THE COURT:  And while you're checking on that,
```

1   Mr. Hunter Seefried and Mr. Kevin Seefried, a written
2   presentence report will be prepared by the probation office to
3   assist me in sentencing.  You'll be asked to give information
4   for the report, and your attorneys may be present, if you wish.
5   You and your attorney will have an opportunity to read the
6   presentence report and file any objection to the report before
7   I see it and, again, before your sentencing.
8           You and your attorney will have an opportunity to speak
9   to me at your sentencing hearing.  Any victims of the offense
10  will also have an opportunity to be heard.
11          I'll ask that any memoranda in aid of sentencing be
12  filed seven days before the sentencing.
13              MS. REED:  And, Your Honor, the government is not
14  seeking a remand of either defendant.
15              THE COURT:  Okay.  So I'll direct both defendants to
16  appear here for sentencing on the sentencing date.  Failure to
17  appear as required is a separate criminal offense for which you
18  could be sentenced to imprisonment.  All the conditions on
19  which you are released up to now continue to apply, and the
20  penalties for violating those conditions can be severe.  If you
21  fail to appear for sentencing, you'll be subject to a fine and
22  imprisonment.  Any term of imprisonment for your failure to
23  appear will be consecutive to any sentence received for any
24  other offense.
25              If you violate any conditions of your release, you'll be

1    subject to revocation of the release and a separate prosecution
2    for contempt of court.
3             Ms. Reed, anything further for the government?
4             MS. REED:  No, sir.
5             THE COURT:  Mr. Ohm?
6             MR. OHM:  No, Your Honor.
7             THE COURT:  Mr. Bostic?
8             MR. BOSTIC:  No, Your Honor.
9             THE COURT:  Thanks, folks.
10            (Proceedings were concluded at 3:25 p.m.)

1      CERTIFICATE OF STENOGRAPHIC OFFICIAL COURT REPORTER

2

3           I, Nancy J. Meyer, Registered Diplomate Reporter,

4      Certified Realtime Reporter, do hereby certify that the above

5      and foregoing constitutes a true and accurate transcript of my

6      stenograph notes and is a full, true, and complete transcript

7      of the proceedings to the best of my ability.

8

9                       Dated this 28th day of August, 2022.

10

11                      /s/ Nancy J. Meyer
                        Nancy J. Meyer
12                      Official Court Reporter
                        Registered Diplomate Reporter
13                      Certified Realtime Reporter
                        333 Constitution Avenue Northwest
14                      Washington, D.C. 20001

15

16

17

18

19

20

21

22

23

24

25