UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KEVIN SEEFRIED,<br><br>        Defendant. | Crim. Action No. 1:21CR287 |

**SUPPLEMENT TO SENTENCING MEMORANDUM**

      Kevin Seefried respectfully submits this supplement to his Memorandum in aid of Sentencing, ECF. No. 136. (Def. Memo).

      In their respective memoranda, the parties pointed to other sentences imposed on defendants convicted of 18 U.S.C. §1512(c)(1) and other related counts. The government justifies its exceptionally harsh request by relying primarily upon a case where the court erroneously applied enhancements rejected by this Court, under U.S.S.G. § 2J1.2(b)(1)(B) and 2J1.2(b)(2). *See* ECF No. 135 at 32-33. The defendant in that case, Anthony Williams, had 11 prior convictions. But most importantly, Mr. Williams's words and actions, both before and after January 6th, made very clear that his intent was to bring violence to the District. Before January 6th, Mr. Williams asked others to join him on January 6th to "Hold the Line" and "Storm the Swamp" for Donald Trump. *United States v. Anthony Williams*, 21-cr-377, ECF No. 120 at 7-8. Mr. Williams specifically referenced Democrats "hung for treason" and "hav[ing] you swing from the end of a rope." ECF No. 120 at 8. In other words, Mr. Williams

sentenced was justified because he was promoting a revolution. ECF No. 120 at 8 ("btw we'll take to war, would probably last 2 weeks). In contrast, Mr. Seefried's premediated actions mirrored the hundreds charged with misdemeanors and even the tens of thousands who remained outside of the Capitol and were not charged. He did not call for violence or "storming" – he traveled to the District with no intention of entering the Capitol at all.

The government also relies upon *United States v. Erik Herrerra,* 21-cr-619 (BAH), but that defendant is easily distinguishable from Mr. Seefried's. Mr. Herrera came for war, dressed in a Kevlar vest and armed with a mask and goggles in anticipation of tear gas. He went into the Parliamentarian's office, stole from that office and while in the Capitol, which he entered twice, he both drank alcohol and smoked marijuana. ECF No. 75 at 3.  Chief Judge Howell specifically noted that Mr. Herrera's pre—January 6th communications showed that he was not "caught up in the moment." Mr. Herrera also testified at his trial and the Chief Judge remarked that his testimony was "false."

The government's comparison to *Hale-Cusanelli*, 21-cr-37 (TNM) is similarly misplaced. Mr. Hale-Cusanelli was sentenced to 48 months for aggravating factors that place him in a very different category than Mr. Seefried. He interfered with a police officer who was trying to arrest a "particularly unruly rioter."  ECF No. 120 at 79.  He made "appalling" taunts at a female police officer and his animus towards "racial and religious minorities was at least in part responsible for [his] desire to obstruct the certification process," and even advocated for a civil war to "provide a

clean slate." ECF No. 120 at 81. Finally, Mr. Hale-Cusanelli's sentenced was based in part upon his "decision to lie on the witness stand." ECF No. 120 at 84.

Finally, *Secor* involved an individual who not only entered the Senate Chamber but the Senate Floor and sat in the Vice President's seat. *United States v. Christian Secor*, 21-cr-157, ECF No. 56 at 49. Mr. Secor argued with conservatives who condemned January 6th on social media and destroyed his iPhone in an attempt to conceal evidence. Mr. Secor was also involved in "pushing officers out of the way who were blocking a door." ECF No. 56 at 51.

The Defense has identified a factually comparable case involving an individual carrying a large Confederate flag who physically assaulted an officer, who was engaged in his duties, by pushing his lacrosse stick against his chest. *United States v. David Blair*, 21-cr-186 (CRC), ECF No. 55 at 2. What is more, Mr. Blair "brazenly attempted to start a physical fight with a police officer." ECF No. 55 at 15. Although Mr. Blair did not enter the building, he was wearing "tactical" gloves and carrying a serrated knife and a roll of duct tape. For all of this, Mr. Blair was sentenced to **5 months** of incarceration.

## Conclusion

For these reasons and all those set forth in the Defense Memorandum, Mr. Seefried respectfully submits that the government's request for 78 months is excessive and will undermine rather than meet the goals of sentencing. Instead, a sentence of no more than twelve months and one day is sufficient but no greater than necessary in this case.

Respectfully submitted,

A. J. Kramer
Federal Public Defender

_____/s/_____
Eugene Ohm
Elizabeth Mullin
Assistant Federal Public Defenders
625 Indiana Ave NW, Suite 550
Washington, D.C. 20004
(202) 208-7500