```
 1                  UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLUMBIA
 2
        * * * * * * * * * * * * * * *   )
 3      UNITED STATES OF AMERICA,       )      Criminal Action
                                        )       No. 21-00287
 4                      Plaintiff,      )
                                        )
 5         vs.                          )
                                        )
 6      KEVIN SEEFRIED and              )      Washington, D.C.
        HUNTER SEEFRIED,                )      May 20, 2022
 7                                      )      10:04 a.m.
                        Defendants.     )
 8      * * * * * * * * * * * * * * *   )

 9

10

11                 TRANSCRIPT OF PRETRIAL CONFERENCE
                 AND ARRAIGNMENT OF HUNTER SEEFRIED
              BEFORE THE HONORABLE TREVOR N. McFADDEN,
12                  UNITED STATES DISTRICT JUDGE

13

14      APPEARANCES:

15      FOR THE GOVERNMENT:     BRITTANY L. REED, ESQ.
                                UNITED STATES ATTORNEY'S OFFICE
16                              650 Poydras Street
                                Suite 1600
17                              New Orleans, Louisiana 70130

18                              BENET KEARNEY, ESQ.
                                UNITED STATES ATTORNEY'S OFFICE
19                              One Saint Andrew's Plaza
                                New York, New York 10007

20

21      FOR THE DEFENDANT       EUGENE OHM, ESQ.
          KEVIN SEEFRIED:       OFFICE OF THE FEDERAL PUBLIC
22                                 DEFENDER
                                625 Indiana Avenue, Northwest
23                              Suite 550
                                Washington, D.C. 20004

24

25
```

1       APPEARANCES, CONT'D:

2       FOR THE DEFENDANT          EDSON BOSTIC, ESQ.
         HUNTER SEEFRIED:          THE BOSTIC LAW FIRM
3                                  1700 Market Street
                                   Suite 1005
4                                  Philadelphia, Pennsylvania 19803

5
        REPORTED BY:              LISA EDWARDS, RDR, CRR
6                                  Official Court Reporter
                                   United States District Court for the
7                                    District of Columbia
                                   333 Constitution Avenue, Northwest
8                                  Room 6706
                                   Washington, D.C. 20001
9                                  (202) 354-3269

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                THE COURTROOM DEPUTY:  Your Honor, this is
2      Criminal Case 21-287, the United States of America versus
3      Kevin Seefried and Hunter Seefried.
4                Counsel, please come forward to identify
5      yourselves for the record, starting with the Government.
6                MS. REED:  Good morning, your Honor.  AUSA
7      Brittany Reed and AUSA Benet Kearney on behalf of the United
8      States.
9                THE COURT:  Good morning, Ms. Reed.
10               Good morning, Ms. Kearney.
11               MR. OHM:  Eugene Ohm on behalf of Kevin Seefried.
12     Good morning, your Honor.
13               THE COURT:  Good morning, Mr. Ohm.
14               Good morning, Mr. Kevin Seefried.
15               MR. BOSTIC:  Good morning, your Honor.  Edson
16     Bostic on behalf of Hunter Seefried.
17               THE COURT:  Good morning, Mr. Bostic.
18               Good morning, Mr. Hunter Seefried.
19               I think we need to start off.  We've got a new
20     indictment.
21               Ms. Chaclan, can we arraign the Defendants?
22               And just so you have kind of a roadmap of what I'm
23     thinking today, we'll start out with the arraignment.  Then
24     I wanted to handle the waiver of jury colloquy.  And then
25     I'll hear any argument on the outstanding motions, and I
```

 1    hope to give an oral ruling if possible on those.  So that's

 2    kind of what I'm looking to do this morning.

 3              Anything I'm forgetting that we should be

 4    including in there?  Ms. Reed?

 5              MS. REED:  No, your Honor.

 6              THE COURT:  Mr. Ohm?

 7              MR. OHM:  No, your Honor.

 8              THE COURT:  And Mr. Bostic?

 9              MR. BOSTIC:  No, your Honor.

10              THE COURT:  Great.

11              Gentlemen, I'll ask you to come forward and we'll

12    arraign you in just a moment.

13              THE COURTROOM DEPUTY:  Mr. Kevin Seefried, in

14    Criminal Case 21-287, in which you are charged by

15    superseding indictment on Count 1, obstruction of an

16    official proceeding and aiding and abetting; Count 2,

17    entering and remaining in a restricted building or grounds;

18    Count 3, disorderly and disruptive conduct in a restricted

19    building or grounds; Count 4, disorderly conduct in a

20    Capitol building; and Count 5, parading, demonstrating or

21    picketing in a Capitol building, do you waive the formal

22    reading of the indictment?  And how do you wish to plead?

23              MR. OHM:  Your Honor, on behalf of Kevin Seefried,

24    we waive formal reading and assert his Fifth and Sixth

25    Amendment rights, request a speedy trial and any outstanding

1    discovery.

2              MR. BOSTIC:  Your Honor, if I may, on behalf of

3    Hunter Seefried, we waive the formal reading of the

4    indictment and he will enter a plea of not guilty at this

5    time.

6              THE COURT:  Thank you, gentlemen.

7              I'm also informed that both Defendants wish to

8    waive their right to a jury trial.

9              Actually, you know what?  Sorry.  I need you back

10   up here, gentlemen.

11             Is that correct, Mr. Ohm?

12             MR. OHM:  Yes, your Honor.

13             THE COURT:  Mr. Bostic?

14             MR. BOSTIC:  Yes, your Honor.

15             THE COURT:  Before accepting your waiver to a jury

16   trial, there are a number of questions that I need to ask

17   you to ensure that there's a valid waiver.  If you do not

18   understand any of the questions or if at any time you want

19   to chat with your attorneys, please let me know.  I'll give

20   you a chance to talk with them.  Or if you have any

21   questions you want to ask me, please feel free to do so as

22   well.  It is essential to a valid waiver that you understand

23   each question before you answer.

24             Do you understand all that, Mr. Kevin Seefried?

25             DEFENDANT KEVIN SEEFRIED:  Yes.

```
1              THE COURT:  And Mr. Hunter Seefried?

2              DEFENDANT HUNTER SEEFRIED:  Yes.

3              THE COURT:  And I think I need to swear you in for

4     this.

5              Ms. Chaclan, can we swear the Defendants in.

6              (Whereupon, the Defendants were duly sworn.)

7              THE COURT:  Gentlemen, could you both please give

8     your full names, starting with you, sir.

9              DEFENDANT KEVIN SEEFRIED:  Kevin Seefried.

10             THE COURT:  Do you have a middle name, sir?

11             DEFENDANT KEVIN SEEFRIED:  No, sir.

12             DEFENDANT HUNTER SEEFRIED:  Hunter Scott Seefried.

13             THE COURT:  Can you spell your middle name, sir?

14             DEFENDANT HUNTER SEEFRIED:  S-C-O-T-T.

15             THE COURT:  How old are you, Mr. Kevin Seefried?

16             DEFENDANT KEVIN SEEFRIED:  53.

17             THE COURT:  And Mr. Hunter Seefried?

18             DEFENDANT HUNTER SEEFRIED:  24.

19             THE COURT:  And how far did you go in school,

20    Mr. Kevin Seefried?

21             DEFENDANT KEVIN SEEFRIED:  Ninth grade.

22             THE COURT:  Mr. Hunter Seefried?

23             DEFENDANT HUNTER SEEFRIED:  The same.

24             THE COURT:  Are you able to speak and understand

25    English, Mr. Kevin Seefried?
```

1          DEFENDANT KEVIN SEEFRIED:  Yes, sir.

2          THE COURT:  And Mr. Hunter Seefried?

3          DEFENDANT HUNTER SEEFRIED:  Yes, sir.

4          THE COURT:  Can you read and write, Mr. Kevin

5     Seefried?

6          DEFENDANT KEVIN SEEFRIED:  Yes, sir.

7          THE COURT:  Mr. Hunter Seefried?

8          DEFENDANT HUNTER SEEFRIED:  Yes, sir.

9          THE COURT:  Can you tell me a little bit about

10    your employment background, Mr. Kevin Seefried?

11         DEFENDANT KEVIN SEEFRIED:  My employment?

12         THE COURT:  Yes, sir.

13         DEFENDANT KEVIN SEEFRIED:  I'm a drywall mechanic.

14         THE COURT:  And Mr. Hunter Seefried?

15         DEFENDANT HUNTER SEEFRIED:  I deliver materials.

16    The same place of employment.

17         THE COURT:  Have you consumed any alcohol, drugs,

18    medicine or pills in the last 24 hours, Mr. Kevin Seefried?

19         DEFENDANT KEVIN SEEFRIED:  No, sir.

20         THE COURT:  And Mr. Hunter Seefried?

21         DEFENDANT HUNTER SEEFRIED:  Anxiety medicine.

22         THE COURT:  And when did you take that, sir?

23         DEFENDANT HUNTER SEEFRIED:  Last night.

24         THE COURT:  Is that just your regular medication?

25         DEFENDANT HUNTER SEEFRIED:  Yes, sir.

```
 1                    THE COURT:  Do you feel comfortable?  Are you
 2       alert?
 3                    DEFENDANT HUNTER SEEFRIED:  Yes, sir.
 4                    THE COURT:  Do you understand what we're doing
 5       this morning?
 6                    DEFENDANT HUNTER SEEFRIED:  Yes, sir.
 7                    THE COURT:  Have you received any treatment
 8       recently for any type of mental illness or emotional
 9       disturbance or addiction to narcotic drugs of any kind,
10       Mr. Kevin Seefried?
11                    DEFENDANT KEVIN SEEFRIED:  No, sir.
12                    THE COURT:  Mr. Hunter Seefried?
13                    DEFENDANT HUNTER SEEFRIED:  No, sir.
14                    THE COURT:  Do you understand that you're entitled
15       to a trial by jury on the charges filed against you,
16       Mr. Kevin Seefried?
17                    DEFENDANT KEVIN SEEFRIED:  Yes, sir.
18                    THE COURT:  And Mr. Hunter Seefried?
19                    DEFENDANT HUNTER SEEFRIED:  Yes, sir.
20                    THE COURT:  Do you understand that a jury trial
21       means you will be tried by a jury consisting of 12 people
22       and that all of the jurors must agree on the verdict?
23       Mr. Kevin Seefried?
24                    DEFENDANT KEVIN SEEFRIED:  Yes, sir.
25                    THE COURT:  Mr. Hunter Seefried?
```

```
 1                  DEFENDANT HUNTER SEEFRIED:  Yes, sir.
 2                  THE COURT:  Do you understand that you have the
 3        right to participate in the selection of the jury, Mr. Kevin
 4        Seefried?
 5                  DEFENDANT KEVIN SEEFRIED:  Yes, sir.
 6                  THE COURT:  Mr. Hunter Seefried?
 7                  DEFENDANT HUNTER SEEFRIED:  Yes, sir.
 8                  THE COURT:  Do you understand that if I approve
 9        your waiver of a jury trial, the Court will try the case and
10        determine your innocence or guilt alone?  Mr. Kevin
11        Seefried?
12                  DEFENDANT KEVIN SEEFRIED:  Yes, sir.
13                  DEFENDANT HUNTER SEEFRIED:  Yes, sir.
14                  THE COURT:  Have you discussed with your attorney
15        the advantages and disadvantages of a jury trial?  Mr. Kevin
16        Seefried?
17                  DEFENDANT KEVIN SEEFRIED:  Yes, sir.
18                  THE COURT:  Mr. Hunter Seefried?
19                  DEFENDANT HUNTER SEEFRIED:  Yes, sir.
20                  THE COURT:  Mr. Ohm, have you in fact discussed
21        with your client the advantages and disadvantages of a jury
22        trial?
23                  MR. OHM:  I have, your Honor.
24                  THE COURT:  And do you have any doubt that your
25        client is making a knowing and voluntary waiver of a right
```

1    to jury trial?

2              MR. OHM:  I have no doubt, your Honor.

3              THE COURT:  Has anything come to your attention

4    suggesting the Defendant may not be competent to waive a

5    jury trial?

6              MR. OHM:  No, your Honor.

7              THE COURT:  Mr. Bostic, have you discussed with

8    your client the advantages and disadvantages of a jury

9    trial?

10             MR. BOSTIC:  Yes, I have, your Honor.

11             THE COURT:  Do you have any doubt that your client

12   is making a knowing and voluntary waiver of the right to a

13   jury trial?

14             MR. BOSTIC:  I have not.

15             THE COURT:  Has anything come to your attention

16   suggesting he may not be competent to waive a jury trial?

17             MR. BOSTIC:  No, your Honor.

18             THE COURT:  Ms. Reed, has anything come to your

19   attention suggesting either Defendant may not be competent

20   to waive a jury trial?

21             MS. REED:  No, sir, your Honor.

22             THE COURT:  I have two waivers of trial by jury

23   forms.

24             Mr. Kevin Seefried, is this your signature?

25             DEFENDANT KEVIN SEEFRIED:  Yes, sir.

1          THE COURT:  And, Mr. Hunter Seefried, is this your

2     signature?

3          DEFENDANT HUNTER SEEFRIED:  Yes, your Honor.

4          THE COURT:  I do find that each Defendant, Kevin

5     Seefried and Hunter Seefried, have knowingly and voluntarily

6     waived their rights to a jury trial.  I will approve that

7     waiver and will sign the forms.

8          Gentlemen, you may have a seat.

9          So let me just make sure we're all on the same

10    page as to the motions that are before me.  I have a few

11    motions *in limine* from the Government, one regarding the

12    authentication of certain video evidence, the second one

13    regarding cross-examination of Secret Service witnesses and

14    finally a motion *in limine* regarding evidence about specific

15    locations of U.S. Capitol Police surveillance cameras.

16         I don't believe I got any opposition from either

17    Defendant, so I assume you don't oppose.  You can confirm

18    that for me in a moment.

19         I also have from Mr. Ohm's client a motion to

20    dismiss Counts 1, 2 and 3 and a motion to dismiss on speedy

21    trial.  And then as to Mr. Bostic's client, I have a motion

22    to dismiss Count 1.

23         What I propose we do is give each defense attorney

24    an opportunity to speak.  I'll tell you all, as you're

25    probably aware, I've already ruled on a similar motion on

1      the obstruction count.  That doesn't mean that I can't do

2      something different here.  But I will say I actually waited

3      to rule on that until I saw your filings.

4            And especially Mr. Ohm, obviously, I see the

5      Federal Public Defender's Office a lot and wanted to see

6      your arguments.  So I certainly have considered those and

7      did think about them in rejecting the motion in the other

8      case.  But I'm happy to hear from you all.  I'd suggest that

9      perhaps the speedy trial motion is probably the most

10     interesting to me at this point.  But I'm happy to hear from

11     you on any of those.

12           So, Mr. Ohm, perhaps we could start with you, sir.

13     Am I correct that you are not opposing the three motions *in*

14     *limine*?

15           MR. OHM:  Yes, your Honor.  I mean, I also --

16     because the Court has now accepted a waiver of jury trial,

17     to the extent anything comes out that the Government views

18     as problematic, we won't oppose sealing those portions,

19     given what the Government's concerns are.  But we don't

20     oppose the spirit of the motion at all.  But hopefully we

21     don't have to be as careful about it because it'll be a

22     bench trial.

23           THE COURT:  I agree.  And I think I've tried to --

24     I've had a few of these trials now.  And these issues

25     haven't felt like they really have arisen in practice.  I

1   think you all certainly have the right to find out specific

2   information to the extent that it's relevant to this case.

3   And I wouldn't think that there's some sort of -- the

4   Government has a right to impose some sort of secrecy over

5   their proceedings or what the Secret Service does or the

6   Capitol Police.  As a practical matter, I don't think it's

7   been an issue.  And I'm certainly not going to allow some

8   just fishing expedition.  But I don't expect that to be an

9   issue.

10          So, Mr. Ohm, I'm happy to hear from you.

11          MR. OHM:  Your Honor, I am going to take the

12   Court's lead and ask for -- just talking about the Speedy

13   Trial Act motion to dismiss.

14          So I think one thing that's very clear --

15          THE COURT:  Sorry.  One moment.

16          I should have said, I don't require people to wear

17   masks in my courtroom.  You're certainly welcome to do so if

18   you want to.

19          MR. OHM:  I very much appreciate that there's no

20   plastic here, because the rest of the judges in this

21   courthouse are still observing the folly from science from

22   two and a half years ago.

23          THE COURT:  I forget when we last had a trial.

24   Did we still have the plastic up?

25          MR. OHM:  Yes.

```
1              THE COURT:  It feels good to actually be able to

2       see people.

3              MR. OHM:  It's so nice not to have to go around

4       it.

5              THE COURT:  Yes.

6              MR. OHM:  Also just because it doesn't make any

7       sense, you know.

8              THE COURT:  You've got to trust the science.

9              MR. OHM:  I appreciate that.

10             So as the Court knows, Mr. Seefried has never

11      waived his speedy trial rights in this case.  And it is

12      something that I think both the Court and Mr. Seefried have

13      been pressing throughout.

14             I wasn't the original attorney on the case, so I

15      can't say certain things for sure.  But the Government's

16      entire position seems to rely on the idea that when the

17      motions were filed and the Court set this trial date, that

18      this motions date that we're here at now was for the purpose

19      of resolving that motion to dismiss.

20             And I did not see any evidence of that in the

21      Government's pleading.

22             And just knowing the Court's practice here, that

23      just seemed -- in fact, it was timed with the pretrial

24      conference.  It seemed like the Court -- given the

25      Government's position, the Court would need to make a
```

1    finding that this hearing here was for the purpose of

2    resolving that motion to dismiss that was filed by

3    Mr. Vanegas back in November, I think.  Otherwise, their

4    position fails.

5            What they're saying is that everybody knew that

6    the Speedy Trial Act was -- the speedy trial time was

7    postponed from the filing of that motion to today's date

8    because the Court had set a hearing for that motion.  That's

9    the Government's position.

10           And frankly, I just don't know what the factual

11   basis is for that position.

12           The Circuit -- I think it was *Bryant* -- said that

13   there are certain cases and the Act itself said that there

14   are certain cases and certain motions that require a

15   hearing.  And obviously, for a Fourth Amendment motion, for

16   example, an evidentiary hearing would be required.

17           But generally speaking, these legal motions --

18   just, I guess, to put it pragmatically, we're usually called

19   in for a hearing only when the Court wants to rule orally

20   and not show a written decision.  That's the primary purpose

21   for a hearing on a case like this, because this isn't a

22   hearing that's required to dispose of that motion.  And

23   certainly your Honor's practice has never been, at least in

24   my experience, to just wait six months for a legal issue to

25   be resolved for absolutely no reason at all.

1              And I would remind everyone that when we were last

2      here in February, we thought the clock was running.  And

3      everybody was under that impression.  And the Government

4      didn't say at that point, Hey, hold on, your Honor.  The

5      trial clock isn't running because you set this hearing in

6      May to deal with the motions that were filed in November.

7              I think it would be a much different situation if

8      the Government had made that point back then.  But we were

9      all under the assumption in February that this was going to

10     be an issue.

11             And now it's an issue.  And the Government can't

12     fall back on a motion that was filed in November that was

13     sort of -- I don't know how I would characterize that, but

14     certainly it wasn't the kind of motion which would require a

15     hearing set six months later when the briefing schedule was

16     what it was.

17             So I would ask the Court to reject -- I really do

18     think this is a simple issue --

19             THE COURT:  So, Mr. Ohm, I guess a lot of what

20     you're saying makes sense.  I'd say that this obstruction

21     charge has been genuinely difficult.  Right?  And this was

22     not your kind of typical legal issue.  Obviously, one of my

23     colleagues has gone the other way, which is pretty unusual,

24     to say, you know, there's no legal basis for an indictment.

25             And I think a number of my colleagues, even though

1    they ultimately sided with the Government, raised very real

2    concerns in hearings.  And so this motion does -- certainly

3    back in November, when it was filed, it was a very live and

4    weighty issue.

5           And honestly, in truth, one of the things I was --

6    it was not a quick call, unlike some of these things.  And I

7    was genuinely interested in seeing what the Government's

8    arguments were.  I also wanted to honestly see what my

9    colleagues were doing.

10          So granting your general point, this was not your

11   typical kind of go-by motion or something, where we all know

12   what's going to happen.

13          MR. OHM:  Certainly.

14          THE COURT:  If there is that category of motions,

15   this is not one of them.

16          MR. OHM:  And I guess I would point out that the

17   Speedy Trial Act doesn't contain that category -- an

18   exception for that category of motions that are difficult.

19   And obviously, your Honor's thought processes are certainly

20   rational and reasonable.  And it would even be rational to

21   say, Hey, we should wait for the Circuit to chime in and --

22   so that we're not all sort of confused and different things

23   aren't happening in different courthouses.  That would be

24   a --

25          THE COURT:  That would take a very long time,

1    Mr. Ohm.

2             MR. OHM:  That would be a rational thing to do,

3    given it is a different issue.

4             But again, the Speedy Trial Act doesn't allow for

5    that.  It doesn't allow for the Court to make sure it gets

6    it right.  Without explicit waivers from the Defendant or

7    without some sense -- it would be a preposterous notion to

8    say that the speedy trial clock was paused when nobody knew

9    it.  That's essentially what the Government is saying,

10   because nobody thought of this hearing as a hearing on that

11   motion.

12            And if it were set for that motion, then the

13   defense would actually have an opportunity to say:  Could we

14   actually resolve that motion a little bit early?  If the

15   briefing is done, then it would make a lot more sense to

16   say, Well, let's resolve it earlier.  And if it comes back,

17   there could be motions to reconsider.  So to have things

18   moving forward, which I know that the Court was trying to do

19   the entire time.

20            But to say when it appeared -- and again, in

21   February, when we talked about this, the Government did not

22   seem to take a different position that the speedy time was

23   going to run out -- that now all of a sudden it's like, Oh,

24   we're saved.  I'm sorry.  There's this pending motion that

25   was out there that wasn't resolved right away.

1          That just seems to completely go against the

2     purpose and the spirit and the letter of the Speedy Trial

3     Act.  The Speedy Trial Act doesn't allow for -- I mean, this

4     is such an unusual situation:  Novel prosecutions legally

5     with so many different cases and sort of the opportunity for

6     so many different judges to chime in.  I mean, it just

7     doesn't happen in this kind of timeframe really ever.  And

8     so there's just no indication that in the text of the Speedy

9     Trial Act and the case law that that's what that Act allows

10    for.

11         The cases that need to go forward should have been

12    going forward.  And frankly, your Honor, I mean, the culture

13    of this courthouse is just not what the Speedy Trial Act

14    requires.  And if everybody -- if all the folks that were

15    arrested on this day came in and all said, We're not giving

16    up our speedy trial rights; we're just going to all go

17    forward, I mean, that's actually what the Speedy Trial Act

18    requires.  The public's interest and the Defendant's

19    interest is accommodated by the Court and the Government,

20    not the other way around.

21         But in these cases, and in Mr. Seefried's case,

22    they've been the ones that have been asked to accommodate

23    everybody else, all the difficulties, all the complexities.

24    The Court's seen all the Government's pleadings and the

25    number of times that complex -- complexities or the biggest

1    investigation ever has been cited.

2          That's understandable to some extent, but it can't

3    be for everything.  It can't be for fact-gathering, for

4    discovery, for legal processing.  All of these things

5    started because the Government began the prosecution of this

6    case and decided to put individuals' liberty and --

7    restrictions on individuals' liberty since the beginning of

8    the case.

9          So the Government knew that it was pursuing novel

10    legal theories.  The Government knew that there was a lot of

11    information to work through.  And the Government knew that

12    it was going to bring these cases in the District of

13    Columbia instead of other courthouses around the country and

14    that it would tax their office.

15          But instead of making sure they were ready,

16    gathering the facts first, researching the legal arguments

17    first, hiring the prosecutors first -- I understand they've

18    hired a whole bunch.  Well, they did it now.  I mean, this

19    happened a long time ago now.  And so who is it falling on?

20    It's falling on the Mr. Seefrieds of the world who -- he's

21    trying to do his drywall business out in Delaware; and he

22    was told the very first day that he had speedy trial rights.

23    And he asserted them.

24          And now he's being asked to hold off for what

25    really seems like a very technicality kind of argument, you

 1    know.  People always say that defendants get off on a

 2    technicality.  I mean, that's what the Government's going

 3    for here.  They're saying, Well, there was a motion here,

 4    when we all know that nobody thought that this motions

 5    hearing was to resolve that motion.

 6            And because we all know that, then it's sort of a

 7    farce to Mr. Seefried to be able to say to him, Well,

 8    because that motion was out there and nobody -- it wasn't

 9    acted upon, that you just lose your rights without you even

10    having known it, without it having been discussed with you,

11    without you having waived it.  And that's what the

12    Government's position is.

13            So I'd ask the Court just to completely reject

14    that.  And I apologize.  I've been in trial.  I should have

15    filed a reply.  I wanted to file a reply, and intended to,

16    for the prejudice argument.  But I don't know if the Court

17    wants to hear from me about that.

18            THE COURT:  Sure.

19            MR. OHM:  So one of the issues in this case, at

20    least from Mr. Kevin Seefried's perspective, is that he's

21    charged with this obstruction charge.  And the factual basis

22    of it is not clear to the defense at this point.

23            The alleged conduct, essentially, was that he

24    climbed in through a window; he walked around for 20

25    minutes.  I think there was a conversation with an officer.

1    But frankly, it is no different than the other ten or 11

2    cases that I have -- well, the nine or ten misdemeanors that

3    I have.

4              And so I think that's an important part of the

5    Court's consideration because the seriousness of the offense

6    is.  And if we're talking about the difference of him facing

7    legitimate misdemeanor charges and the Government's relying

8    on the obstruction charge and their

9    seriousness-of-the-charge argument to say that for that

10   prong that Mr. Kevin Seefried fails to meet the prejudice

11   test.

12             I would agree that it's a stronger argument for

13   the Government if the obstruction charge was -- well,

14   mattered.  But factually, it's just not clear to me that it

15   does.

16             And it seems like an odd proposition to sort of

17   bootstrap the Government's position by saying, Well, they

18   charged this without the Court at least having some

19   information about what the basis is for that charge, because

20   it is just an incredibly gray area between the misdemeanors

21   and the obstruction charge and some of the Government's

22   charging decisions across all these cases.

23             And so I think that it would be incumbent on the

24   Court to have them provide that information before making a

25   final ruling on the with-prejudice argument.

1           THE COURT:  Sorry.  Have them explain why he's

2    facing obstruction in particular?

3           MR. OHM:  Yes, your Honor.

4           THE COURT:  I understand your point.

5           MR. OHM:  And secondly, in terms of prejudice to

6    the defense, I'm not sure how prejudicial this is going to

7    be now that the Court has accepted our waiver argument.  But

8    we did recently receive -- I think on April 27th, we

9    received the videotaped interview of Mr. Kevin Seefried.  I

10   haven't had -- we've had the 302 all along.

11          This is when we first received -- we received that

12   video.  Yesterday was the first time I was able to discuss

13   it with my client.  I'm actually not certain -- I looked.  I

14   did not see whether a video was produced to us at least for

15   Mr. Hunter Seefried.  But, number one, you know, we're

16   pretty close to trial, relatively.  We didn't have an

17   opportunity to see that before making a decision about

18   filing whatever motions we might.

19          Number two, there are definitely issues that would

20   be out there, because Kevin Seefried talks about Hunter

21   Seefried.  I'm sure Hunter Seefried talks about Kevin

22   Seefried.  And these are issues that we did not have a real

23   chance to sort of flesh out and think through and determine

24   for Mr. Kevin Seefried's video until about a week and a half

25   ago; and then for Mr. Hunter Seefried at least from my

1   perspective -- and I don't know if Mr. Bostic has received

2   anything, but we still haven't.

3           And so there is prejudice here when there's a

4   position taken that everything just can sort of sit back.

5   If the Defendant's on board, I think it's a completely

6   different thing.  I mean, defendants are asked constantly in

7   this courthouse to not oppose exclusion.  And typically,

8   defendants do.  But when defendants don't, then the Court

9   and the Government needs to take that seriously.  And that's

10  what this situation is.

11          It is not nothing to have these charges hanging

12  over your head.  It is a stigma upon you in the community.

13  I've had -- I had one client who said that he'd go to the

14  corner store, and every time he said it -- there was two

15  stores that he would go to.  One store had -- they all knew

16  about what he wanted to do and they always wanted to talk to

17  him because they were sort of proud of what he did.  And he

18  felt like he didn't know what to say because he was facing

19  charges.  And there was another store that he used to go to

20  where he was completely shunned.

21          These folks come from small communities, your

22  Honor.  And we see people's names when they come to trial.

23  But in the smaller communities, they're in the local

24  newspaper every time they come to court.

25          I had a case where there was an appeal from a

1   motion to travel.  The notice of appeal was reported on the

2   front page of the newspaper.

3        I mean, so it is not nothing for these gentlemen

4   to have these charges hanging over their head.  I don't

5   think Mr. Seefried's ever said that he would ever take a

6   plea that included the felony charge.  So everybody's known

7   that this is on that track the entire time.  So he was

8   entitled to a trial and he was entitled to have his speedy

9   trial rights followed and enforced.

10        THE COURT:  And he is having one of the first

11   trials, frankly, in this courthouse.  Right?  I mean, I have

12   lost track, but I think it's less than ten we've had so far

13   on January 6 trials.  So as you say, there's certainly a

14   different culture in this courthouse.  But you pushed speedy

15   trial; and frankly, I think you're entitled to.  And I try

16   to do the same.

17        So --

18        MR. OHM:  And if this was just a constitutional

19   argument, then I think we would have no -- the Court will

20   notice that I didn't pursue a constitutional argument.  The

21   fact that it's, you know, in the top ten or the top twenty

22   or even the second one, the Speedy Trial Act doesn't allow

23   for that exception.

24        THE COURT:  But it does have these carveouts,

25   including automatically with the filing of a motion.  And

1    it's kind of technicalities both ways.  Right?  You're

2    saying they're standing on a technicality.  But in some

3    ways, the 70 days is a bit of -- as you suggest, I don't

4    know that anybody actually goes to trial in 70 days.

5          MR. OHM:  I had my first trial in this courthouse

6    within 70 days.

7          THE COURT:  Is that true?

8          MR. OHM:  Yes.

9          THE COURT:  Maybe over in Alexandria.  Maybe it

10    happens in 70 days.

11          The other thing that occurs to me is these

12    calculations are a little tricky.  Right?  And it's in part

13    because of these -- every time the Court is supposed to be

14    making findings, but you also have these automatic

15    exclusions that can kick in.  Assuming for the sake of

16    argument that you're right, that we kind of lost track of

17    this, that wouldn't be the first time that's happened.  And

18    I think you do have to kind of go back and look at the

19    technical statute and what happened according to the docket.

20          MR. OHM:  And, your Honor, I agree with everything

21    that the Court said.

22          But when Congress is carving out specific

23    exceptions, that tells us certain things.  Right?  The

24    information that -- is like Congress knows how to carve out

25    the exceptions, and these are the exceptions that they

1   wanted to carve out.  That's the law that's guiding us here.

2   And so there is no courthouse culture exception.  We all

3   know that.

4           THE COURT:  I'm sure.

5           MR. OHM:  And these are laws that apply.  And I

6   think it actually makes -- when we're talking about

7   courthouse culture, especially when we're dragging people in

8   from different jurisdictions and trying them here for being

9   in -- Mr. Seefried hadn't been to D.C. since he was I

10  think --- he had a field trip like when he was like 9 years

11  old.

12          So we're bringing them here and saying:  You've

13  got to respect our courthouse culture; you've got to listen

14  to our -- I'm just going to say this on his behalf, but

15  everybody knows that Washington, D.C., is a little bit

16  Democratic.  So we're subjecting individuals because of the

17  rules of this courthouse.  We can't also say:  You have

18  rights based upon the culture of this courthouse.  I mean,

19  that doesn't make any -- that's no fairness there.

20          THE COURT:  Sure.

21          MR. OHM:  And so we are really just limited to the

22  text of the statute.  And the text of the statute does not

23  carve out any exception for this situation.  And the *Bryant*

24  case that we relied heavily upon seems to be the D.C.

25  Circuit saying to the district court, You're supposed to

1    follow these rules here.  In that situation, it was a 609

2    motion for a gun case, which in a lot of ways was routine,

3    but it's also routine enough to say that courts rule upon

4    them relatively without a lot of angst or, you know, the

5    process the Court went through in this situation.

6           And the Court said even assuming -- well, so there

7    was some argument that the notice of the 609 wasn't a motion

8    or not [sic].  But they said:  Even assuming that it was, it

9    wouldn't have tolled STA for as long as the Government

10   claims.

11          In *Henderson*, the Supreme Court held that all time

12   between the filing of the motion and the conclusion of the

13   hearing on that motion shall be excluded whether or not the

14   delay was reasonably necessary.  However, the Court

15   differentiated between motions that require hearing, in

16   which case all time is excluded, whether reasonably

17   necessary or not, and motions that were decided solely on

18   the basis of paper submissions to the trial court.

19          So that line that *Bryant* drew in terms of

20   following *Henderson* is a very clear one.  Motions that

21   require a hearing, that is motions that require evidence.

22   There is no -- so the Court could very easily have dealt

23   with this -- and a lot of judges would have -- without a

24   hearing.

25                 THE COURT:  Well, not really.  Not this one.  You

1    kind of -- I think there have been motion hearings all over

2    the courthouse.

3           MR. OHM:  There have been.  It wasn't required.

4    Like an evidentiary hearing, you need the evidence to

5    determine the hearing.

6           THE COURT:  I take your point.

7           MR. OHM:  But here, some judges are just like,

8    Keep filing.  And that's what happens.

9           So again, going back to the plain language in the

10   Speedy Trial Act, going back to what *Henderson* says and the

11   carveouts that have been articulated, I would ask the Court

12   not to agree with the Government and sort of expand those

13   carveouts to an area that Congress just didn't intend.

14          Mr. Seefried is entitled to the same rights,

15   whatever courthouse he's prosecuted in and whatever case.  I

16   mean, there is nothing -- the Government has not pursued a

17   complex case designation in these cases.  That's what they

18   were allowed to do to deal with the things that we've been

19   talking about.  The Government decided not to do that.  That

20   was their choice.

21          And Mr. Seefried -- thus, the Court is limited

22   really to the exceptions that are put forth in the statute.

23   And the Government hasn't met any of them.

24          For all those reasons, your Honor, I'd ask the

25   Court to dismiss this case.  I would ask the Court to allow

```
 1    additional fact-gathering/briefing on the prejudice issue,
 2    or I guess that could be dealt with if the Government
 3    re-brings the case.  But I don't know that that's an issue
 4    that necessarily needs to be set forth today, although I
 5    would love just under any circumstances to know what the
 6    factual theory behind the obstruction charge is because I'm
 7    still at the point where I don't know that.
 8              Your Honor, in terms of the obstruction -- the
 9    motion to dismiss the obstruction count, I would just rely
10    on our papers.
11              THE COURT:  Thank you, sir.
12              Mr. Bostic?  If you could clarify first on the
13    motions in limine.  Am I correct that you're not opposing
14    them?
15              MR. BOSTIC:  That's correct, your Honor.
16              Good morning again, your Honor.
17              THE COURT:  Good morning, sir.
18              MR. BOSTIC:  With respect to the motion to dismiss
19    Count 1 on behalf of Hunter Seefried, we would rest on our
20    submission.  We're aware that the rulings in this district
21    favor denying the motion.  So we'll rest at this point.
22              With respect to the speedy trial motion filed by
23    Mr. Ohm in which we join in, we also join in in his argument
24    here today.
25              And I would say without making argument on it in
```

1    any detail that both Defendants are similarly situated and

2    the Court is aware that Mr. Hunter Seefried has one

3    additional charge, destruction of federal property.  And

4    that's the only difference.

5         Touching on the issue with prejudice just a bit, I

6    know this Court has the ability to sanction any speedy trial

7    violation by dismissal with or without prejudice.  And in

8    terms of a prejudice as to Mr. Hunter Seefried in terms of

9    determining whether the dismissal -- if the Court finds that

10   there's a violation that should be with prejudice, I will

11   note that Mr. Hunter Seefried has lost job opportunities

12   while this has been pending, particularly one very

13   beneficial one in connection with an apprenticeship to be

14   with a plumbing outfit that would guarantee a certain higher

15   level of compensation and other benefits.

16        With that in mind, I think that if the Court finds

17   that the speedy trial date has passed, that if the Court

18   can't find a way to dismiss with prejudice, then I would

19   encourage the Court to dismiss without prejudice because, as

20   Mr. Ohm said, even with the technical violation, I think we

21   still have to recognize that there is that violation.  And I

22   don't believe the Government would be greatly harmed by it,

23   but I think it would be a sanction nonetheless.

24        Thank you, your Honor.

25        THE COURT:  Thank you, Ms. Bostic.

1          Ms. Reed?

2          MS. REED:  Thank you, your Honor.  I'm coming to

3     the podium.  I'm a little nervous because I'm not as

4     familiar with the courtroom culture as Mr. Ohm is.  So I'll

5     try to do my best here, your Honor.

6          Your Honor, so one of the things that I think

7     hopefully you have seen from the Government is that we have

8     been making an effort, I think in all of these cases, to

9     move as expeditiously as we can.  I've only had a few

10    appearances before you.  But I hope co-counsel would also

11    agree that I think we have worked well to sort of move this

12    case forward.

13         So certainly as it relates to this case, I can

14    assure the Court that as it relates to the speedy trial

15    issue, Ms. Kearney and I have attempted to move

16    expeditiously in producing discovery in this case as well as

17    we have I think attempted to avoid any unnecessary delays in

18    this case as well.

19         So certainly I think that Mr. Ohm mentioned that

20    when we were at the last pretrial conference the Government

21    didn't sort of wave our hands up and say, Well, we have this

22    outstanding motion.  And I think I can assure the Court that

23    there was nothing suspicious in that.  I think we all were

24    sort of in the position that when the speedy trial issue was

25    raised, that we, the Government, legitimately stated that we

1    needed to do the calculations and that we wanted an

2    opportunity to provide that to the Court in written form.

3              So I can say that only to say that there was no

4    strategy at that time.

5              THE COURT:  I didn't think that's what he was

6    suggesting.  I think he was suggesting that you, we, had all

7    forgotten about that pending motion.  That would have been a

8    kind of -- it didn't matter kind of all of the other

9    arguments about discovery, what have you, that if you

10   thought that motion was tolling as a matter of statute, that

11   would have been the end of the matter.  And you didn't say

12   that.

13             MS. REED:  Right.

14             THE COURT:  I think that's what he's saying.

15             MS. REED:  Okay.  And so, your Honor, just to

16   state, I think, as this Court has already pointed out, we

17   had every reasonable expectation to believe that this Court

18   may have wanted a hearing on that motion.  When this matter

19   initially came, I believe that was back in November of 2021;

20   and I don't believe at that time that any court had ruled on

21   this issue of the 1512 litigation.

22             I believe that it was a hot issue, a hot-button

23   topic, if you will, certainly from our standpoint.  And your

24   Honor's familiar with that, given the number of briefings

25   that have been filed.

1          We have had hearings in a lot of those and we

2     have, I think, vigorously litigated that issue.  And we had

3     every reason in this case to believe that that would be the

4     same in this case.

5          So we had every reason to believe that that May

6     22nd date would have served as a date to dispose of that

7     motion.  And obviously, this Court was able to do that

8     before that time.  And so there's a reasonable basis, I

9     believe, for the Government to believe that the time between

10     that period was actually tolled because certainly we believe

11     that it was reasonably necessary because this is a very

12     novel argument.

13          I know that defense counsel takes a different

14     position on that, but certainly January 6th in and of itself

15     is a unique event, and the litigation that has come from

16     that is also the same.  I'm unaware of any other case that

17     has come before this Court, certainly not in my district, in

18     New Orleans, where this 1512 obstruction charge has been

19     litigated.

20          So because I do think that this was a novel issue.

21     For the Court, I think that for all parties it was right for

22     the Court to take its time to expect all parties to litigate

23     this issue, to expect extensive briefing on it.  And that is

24     what has been done in this matter.

25          And I think at the time when this matter came

1    before the Court, there were no rulings on that.  And this

2    Court did take its time, and rightfully so, to make a

3    finding once litigation had happened in other courts and

4    this Court had an opportunity to look at this novel issue

5    for yourself.

6         So I think that that is somewhat unique about this

7    situation.  And I do think that that is a distinguisher, and

8    that is why in this case the 30-day time period is certainly

9    just not -- I'm not going to say it's not appropriate,

10   because that's the law, but I think that there is a

11   distinction that should be carved out in this particular

12   instance because of that particular litigation.  And it's

13   novelty.

14        THE COURT:  What do you mean when you say the

15   30-day time period is the law?

16        MS. REED:  Meaning that when it is taken under

17   advisement, that a period of -- for 30 days, that there has

18   to be a ruling within the 30-day period.  I believe that is

19   the argument here, is that too much time was expended,

20   obviously, after that 30-day period.  There was -- I think

21   the Court took -- I'm not exactly sure how many days, your

22   Honor, to make a ruling on that.  But I think that that is

23   the argument that defense has rested on, certainly, is that

24   after that 30-day period of time, the clock no longer is

25   tolled.

1           THE COURT:  Is that in the statute or is that case

2      law?

3           MS. REED:  I believe that it is statute, your

4      Honor.  So I believe that it's 3161 -- let's see; I have it

5      front me -- 3161(h)(1)(H), your Honor.  That is -- I believe

6      that that is the statute.  I believe that it's -- I can just

7      cite to your Honor what I have.

8           THE COURT:  Sure.

9           MS. REED:  Under the Speedy Trial Act, any delay

10     resulting from any pretrial motion from the filing of the

11     motion through the conclusion of the hearing on or other

12     prompt disposition of such motion shall be excluded in

13     computing the time within which the trial of any such

14     offense must commence.  That's 3161(h)(1)(G).

15          And it follows:  Also excluded is any delay

16     reasonably attributable to any period not to exceed 30 days

17     during which any proceeding concerning the Defendant is

18     actually under advisement by the Court.  And that is

19     3161(h)(1)(H).

20          And --

21          THE COURT:  How do I get around that?

22          MS. REED:  So, your Honor, the Government believes

23     that this Court, because of the novelty of the litigation on

24     the 1512, we do believe that it was reasonably necessary for

25     this matter that the Court would have asked for a hearing in

1     this matter, because I believe that what defense is arguing

2     is that it wasn't reasonably necessary that a hearing would

3     have had to be had because of -- I think the culture of, I

4     guess, litigation in the courthouse.  It's kind of hard for

5     me to track where Mr. Ohm is on this.

6            But certainly I think that he's saying that while

7     we're limited to statute -- he referenced the *Henderson*

8     case, which in *Henderson* the Supreme Court rejected a

9     defense claim that the Speedy Trial Act clock was not tolled

10    for delay between the filing of a pretrial motion and a

11    hearing if that hearing was not reasonably necessary to a

12    ruling on the motion.

13           And so --

14           THE COURT:  Sorry.  Aren't we under (D), though,

15    (h)(1)(D)?

16           MS. REED:  We are, your Honor.  And I read

17    (h)(1)(D) before I cited the (h)(1)(H) statute as well.

18           So (h)(1)(D) states that under the Speedy Trial

19    Act, any delay resulting from any pretrial motion from the

20    filing of the motion through the conclusion of the hearing

21    or other prompt disposition shall be excluded in computing

22    the time within which the trial of any such offense must

23    commence.

24           And I believe that defense counsel mentioned in

25    their filing that (h)(1)(H) is not applicable in this case

1    because of the 30-day period, which they believe was an

2    unreasonable time period for this Court to have it under

3    advisement.

4            THE COURT:  But your position is that (h)(1)(H)

5    doesn't apply?

6            MS. REED:  That is correct, your Honor.

7            THE COURT:  We're under (h)(1)(D)?

8            MS. REED:  That's correct, your Honor.

9            I don't believe there was any obvious

10   subterfuge by either -- and that's language from

11   *Henderson* -- your Honor, by either this Court or the

12   Government in the delay for needing beyond 30 days to take

13   this matter under advisement.

14           And I think that that is the issue that defense

15   has raised in their filing, that any time beyond 30 days is

16   just simply unreasonable because this is -- I'm not exactly

17   sure if he's stating because this is an issue that --

18   certainly this is a novel issue for sure.  But I think that

19   they're just stating that it is unreasonable because it's

20   not unlike any other motion that would come before this

21   Court and it's not one that would have required a hearing.

22           And the Government's position is certainly that

23   it's just different in this particular case because of the

24   novelty of the issues that the Court has already mentioned.

25           THE COURT:  I understand.

1          MS. REED:  And, your Honor, if this Court is

2    inclined to dismiss this case, we would certainly ask that

3    it be dismissed without prejudice.  Again, your Honor, I

4    don't want to belabor how serious of an offense this is.

5    But obviously, that is one of the considerations that this

6    Court would have to consider.

7          THE COURT:  Can you speak to the obstruction

8    point?  Mr. Ohm was concerned about that.

9          MS. REED:  Yes, your Honor.

10         I actually -- before we started, you asked if we

11   had any other issues.  And I did want to raise the fact that

12   on -- yesterday, Mr. Ohm and Mr. Bostic did provide the

13   Government with a letter which I guess is tantamount to its

14   motion for bill of particulars.

15         We have told them that we are going to be

16   providing them information.  I know there has been

17   litigation, obviously.  I'm sure that Mr. Ohm is quite wise

18   not to file a motion for bill of particulars in this matter.

19   But we have litigated that issue because Ms. Kearney and I

20   are going to work to provide him with his responses which

21   not only deal with the 1512 issue, but also the 1752(a)(2)

22   and (a)(1) issues.

23         But what I would offer to the Court is that

24   certainly we believe that Mr. Seefried, both Mr. Kevin

25   Seefried and Hunter Seefried, are rightfully charged with

1   obstruction of governmental proceedings because of the facts

2   of this case.  So, one, your Honor, we have a congressional

3   proceeding that was occurring at that time.  And obviously,

4   that --

5           THE COURT:  That's true for all of them.  Right?

6           MS. REED:  That's true.

7           THE COURT:  He's asking what sets them apart from

8   all their other clients who just got misdemeanor charges.

9           MS. REED:  Yes, your Honor.

10          So we have the congressional proceeding that is

11  happening at that time.  And to go to the facts specifically

12  of these individuals, what the Government has alleged is

13  that Mr. Hunter Seefried obviously very violently entered

14  the Capitol on that day by breaking a window to enter into

15  that Capitol.

16          While they are inside of the Capitol, they gather

17  up with another group of individuals who are asking

18  questions about the vote count and where that vote count is

19  happening.  They're also referencing where the senators are

20  in the building.  And Mr. -- and both Seefrieds end up going

21  into another area that is very close to the Senate chambers,

22  where they continue to have discussion with officers

23  about --

24          THE COURT:  Police officers?

25          MS. REED:  Police officers, Capitol police

1    officers, your Honor, about why they were there in the

2    building.

3              And we believe that because of their actions,

4    obviously, this for a time impeded the ability, obviously,

5    for the congressional vote to be counted.

6              THE COURT:  So just to cut to the chase, it sounds

7    like you have evidence of intent here --

8              MS. REED:  Yes.

9              THE COURT:  -- where their conduct may look very

10    similar to other --

11             MS. REED:  Yes, sir.

12             THE COURT:  -- rioters?

13             MS. REED:  Yes, sir.

14             THE COURT:  I understand.

15             MS. REED:  And actually, I mean, the Government's

16    position is that this is a little different than some of the

17    other cases that probably have been seen in this court on

18    the 1512 issue.  I know it is still -- I keep saying the

19    word "novel."  I know it is an issue that has not been taken

20    to trial on many instances.  But we do believe that there is

21    something unique about these two individuals and we believe

22    that we will be able to satisfy the intent element.

23             THE COURT:  I see.

24             Thank you, ma'am.

25             MS. REED:  Thank you, your Honor.

```
1            THE COURT:  Mr. Ohm, I'll give you a very brief

2    rebuttal.

3            MR. OHM:  Thank you, your Honor.

4            I just wanted to make clear, if the Government is

5    saying there were statements made by Mr. Kevin Seefried or

6    if it was the fact that he was with another -- I mean, that

7    he was with a group of people that were making statements

8    searching for the particular areas of the Capitol or

9    Congress --

10           THE COURT:  I think I'll let you talk with her

11   afterward on that.

12           MR. OHM:  Thank you, your Honor.

13           THE COURT:  It sounds like she does intend to

14   respond to your letter.

15           MR. OHM:  Great.

16           So let me just be clear:  My dealings so far with

17   this prosecution team have been exceptionally --

18           THE COURT:  I understand.  This has been the

19   frustration with all these cases.  Right?  The individual

20   line AUSAs are great, but they're dealing with this machine

21   behind them that they have no control over --

22           MR. OHM:  Right.

23           THE COURT:  -- and none of us appear to have any

24   control over.

25           MR. OHM:  So I guess I would just point out, the
```

1    Government kind of has to shift a test in order to bring

2    this within the statute.  That's why we're hearing, you

3    know, reasonable -- they had a reasonable expectation to

4    believe that the Court wanted a hearing.

5         Well, that's just not the standard.  The standard

6    set forth by the Supreme Court is whether it's necessary to

7    have a hearing or not.  And there is no reasonable argument

8    that this motion required a hearing.

9         And, you know, the fact that we -- the

10   complexities of this case require the Government to ask the

11   Court for speedy trial exclusions in open court in front of

12   the Defendant and then the Defendant takes a position and at

13   least has an opportunity to argue that it's not.

14        The complexities of this case does not mean that a

15   motion can just sit there and everybody can forget about it;

16   and then when they lose the arguments about, you know,

17   whether time should be additionally excluded, that those

18   findings don't matter.

19        And essentially, that is what the Government's

20   position was or is.

21        I did want to point out some language in *Zedner*,

22   which is a Supreme Court case that is cited to in *Bryant*.

23   And I'm actually reading from *Bryant* because there's a

24   big -- there's a block quote here that appears really to be

25   talking exactly about our situation.  And it says:  The

```
 1    exclusion of delay resulting from an ends-of-justice
 2    continuance is the most open-ended type of exclusion
 3    recognized under the Act and in allowing district courts to
 4    grant such continuances.
 5              Congress clearly meant to give district judges a
 6    measure of flexibility in accommodating unusually complex
 7    and difficult cases.
 8              But it is actually clear that Congress, knowing
 9    that many sound grounds for granting ends-of-justice
10    continuances cannot be rigidly structured, saw a danger that
11    such continuances could get out of hand and subvert the
12    Act's detailed scheme.
13              The strategy of 3161(h)(8), then, is to counteract
14    substantive open-enedness with procedural strictness.  This
15    provision demands on-the-record findings and specifies in
16    some detail certain factors that a judge must consider in
17    making those findings.
18              So the procedural strictness is something that the
19    Court has recognized.  And if the Court, this Court, follows
20    the procedural strictness of the Speedy Trial Act, then the
21    Court has to dismiss this case because of the violation of
22    the Speedy Trial Act.
23              When we're talking about the 30-day period, your
24    Honor, I just wanted to say that that's the reasonable time.
25    So that's what we assume could be excluded if there is
```

1    motions filed.

2           But again, after the 30 days, there needs to be

3    some action, either some request by the Government or action

4    by the Court, in order to -- unless again there's fair

5    notice because it's an evidentiary hearing where everybody

6    knows that, you know, if the defense is asking for a

7    hearing, then that would automatically toll under the plain

8    language of the statute.

9           But other motions, novel motions, innovative

10   motions, there just is no exception for it.

11          THE COURT:  But I guess I'm having a hard time

12   seeing how (H) cabins (d).  I mean, if you look at (c), it's

13   any delay resulting from any interlocutory appeal.  You know

14   as well as I do it would be a miracle to get an

15   interlocutory appeal decided in 30 days.  Right?

16          MR. OHM:  Right.

17          THE COURT:  But that doesn't mean that (c) just

18   goes away because you can't -- the Circuit isn't going to

19   decide something within 30 days.  Right?  I guess I'm

20   struggling to see what relevance (H) has here.

21          MR. OHM:  Sorry, your Honor.  I didn't stop by the

22   printer this morning.

23          THE COURT:  Me neither.

24          MR. OHM:  I was looking at the first subsection

25   (h).  But the Court's obviously talking about capital (H).

```
1                   THE COURT:  Yes.  Sorry about that.

2                   MR. OHM:  The Court is asking whether (H)

3         encompasses (c) or --

4                   THE COURT:  Well, I guess I'm trying to see what

5         relevance (h)(1)(H) has here.  They're arguing this is an

6         (h)(1)(D) issue.  And what I think I hear you say is that

7         (h)(1)(H) somehow cabins or informs how I should read

8         (h)(1)(D).  And I'm just saying, I find that hard to

9         believe, given that (h)(1)(C) is never going to be done in

10        30 days.  So why would the 30 days in (H) have relevance to

11        the argument?

12                  MR. OHM:  I understand.

13                  So whether the Court agrees that (h)(1)(H) is a

14        time limit that also applies to all of the other sections, I

15        think (h)(1)(D) makes clear that there's a prompt

16        disposition, that there is some sort of time limit to what

17        it is.  And so that --

18                  THE COURT:  I see.

19                  MR. OHM:  -- that's the only subsection with a

20        time limit.  Right?  The interlocutory appeal doesn't

21        require a prompt disposition.  The only one that does is

22        (D).

23                  And so -- because that's the time limit that

24        exists within that subsection.

25                  THE COURT:  Understood.
```

1          MR. OHM:  So, your Honor, again, in the end, we're

2     15 months in.  And we have -- you know, I think Mr. Kevin

3     Seefried and Mr. Hunter Seefried are somewhat fortunate to

4     be in front of your Honor, who is actually motivated to get

5     these cases going.

6          But the way the Government has generally

7     approached -- and again, not our prosecutions here -- we

8     have no idea when these cases are going to be done.  And one

9     of the reasons is that there were people who -- I

10    understand.  January 6 came.  January 20 is coming.  There's

11    some dangerous folks out there.  The Government knew about

12    them.  They wanted to get them under supervision and into

13    the system.

14         There's no evidence that Mr. Kevin Seefried is one

15    of those people.  And frankly 80, 90 percent of the folks

16    who are brought before the Court in the first few months of

17    these cases were not one of those people.  The Government

18    just decided to charge them because they wanted to charge

19    them without any consideration of what they need to do in

20    terms of preparing them to go to trial.

21         The Speedy Trial Act is designed to make sure that

22    that practice doesn't happen.

23         So for those reasons, your Honor, I'd ask the

24    Court to dismiss and to give us a little bit more time to

25    figure out the prejudice issue.

```
 1                THE COURT:  Thank you, sir.

 2                MR. OHM:  Thank you.

 3                THE COURT:  Mr. Bostic, I'll give you the last

 4     word.

 5                MR. BOSTIC:  I have nothing to add, your Honor.

 6     Thank you.

 7                THE COURT:  Thank you.

 8                Why don't we take -- I know you've got a jury

 9     note.

10                MR. OHM:  Yes.

11                THE COURT:  Why don't we take about 15 minutes.

12     Hopefully, you'll be done by then.

13                Thanks.

14                (Thereupon a recess was taken, after which the

15     following proceedings were had:)

16                THE COURT:  I think Mr. Ohm is still held up.

17                Mr. Bostic, we realized we need to arraign your

18     client.  And I'm wondering if you could stand in for Mr. Ohm

19     for my ruling for a few minutes; until he gets here, anyway.

20                MR. BOSTIC:  Of course, your Honor.  I can stand

21     in.

22                THE COURT:  I'll ask you and your client to

23     approach the podium.

24                MR. BOSTIC:  Yes, your Honor.

25                THE COURTROOM DEPUTY:  Mr. Hunter Seefried, in
```

1   Criminal Case 21-287, in which you are charged by a

2   superseding indictment on Count 1, obstruction of an

3   official proceeding and aiding and abetting; Count 2,

4   entering and remaining in a restricted building or grounds;

5   Count 3, disorderly and disruptive conduct in a restricted

6   building or grounds; Count 4, disorderly conduct in a

7   Capitol building; Count 5, parading, demonstrating or

8   picketing in a Capitol building; Count 6, entering and

9   remaining in a restricted building or grounds with physical

10  violence against property; Count 7, destruction of

11  government property and aiding and abetting; and Count 8,

12  act of physical violence in a Capitol grounds or building,

13  do you waive the formal reading of the superseding

14  indictment and how do you wish to plead?

15          DEFENDANT HUNTER SEEFRIED:  Not guilty.

16          THE COURT:  All right, sir.  Actually, before you

17  sit, we had just talked earlier about your decision to waive

18  your jury trial rights.  I take it that applies to this

19  indictment as well.  Is that correct?

20          DEFENDANT HUNTER SEEFRIED:  Yes, your Honor.

21          THE COURT:  Thank you, sir.  You may have a seat.

22          Before the Court are the following motions:

23  First, the Government has three motions *in limine*, ECF 56,

24  57 and 58.  Those are a motion *in limine* regarding

25  authentication of certain video evidence, a motion *in limine*

1    regarding cross-examination of U.S. Secret Service witnesses

2    and a motion *in limine* regarding evidence about the specific

3    location of the U.S. Capitol Police surveillance cameras.

4         The Defendants have not opposed any of those, and

5    so I grant all three of those motions as conceded.

6         Also before me is Mr. Kevin Seefried's motion at

7    ECF 59 to dismiss Counts 1, 2 and 3; ECF 60, a motion to

8    dismiss on speedy trial grounds, which Mr. Hunter Seefried

9    has joined; and Mr. Hunter Seefried's motion at 61, the

10   motion to dismiss Count 1.

11        Let me turn first to the motions to dismiss Counts

12   1 through 3, which are ECF 59 and ECF 61, the motion to

13   dismiss Count 1.

14        The Court will deny Kevin Seefried's motion as to

15   Count 1 and Hunter Seefried's motion for the following

16   reasons:

17        First, both Defendants argue that 1512(c)(2) is

18   unconstitutionally vague and fails to give fair notice.

19        For this argument, the Defendants rely heavily on

20   Judge Nichols's opinion in *United States versus Miller*, 2022

21   Westlaw 823070 at *12 from this district in March 2022.

22        They contend that Subsection (c)(2) is a residual

23   clause for Subsection (c)(1).  If (c)(2) is a clean break

24   from (c)(1), it would be, quote-unquote, "inconsistent with

25   the statute as a whole because it would be the only

1    provision in 1512 not to contain a narrow focus."  That's

2    from Kevin Seefried's motion at Page 5.

3           They also argue that *Begay versus United States*,

4    553 U.S. 137, from 2008, and *Yates versus United States*, 574

5    U.S. 528, from 2015, and a memorandum from former Attorney

6    General Bill Barr all support a narrow reading of the clause

7    and suggest that the natural and plausible reading of (c)(2)

8    requires some conduct that impairs the integrity and

9    availability of some evidence.

10          The historical development of 1512 supports the

11   conclusion that (c)(2) is a catchall for (c)(1) and was

12   intended to close loopholes related to the destruction or

13   fabrication of evidence and preservation of financial and

14   audit records, according to Kevin Seefried's motion at 6.

15          They also argue that reading (c)(2) broadly would

16   render the specific terms in clause (c)(1) surplusage.  And

17   finally, they argue that the word "corruptly" is

18   unconstitutionally vague.

19          The Court is unpersuaded.  To start, when

20   considering a vagueness challenge, the touchstone of whether

21   the statute, either standing alone or as construed, made it

22   reasonably clear at the relevant time that the Defendant's

23   conduct was criminal, according to *United States versus*

24   *Lanier*, 520 U.S. 259, Page 267, from 1997.

25          Beginning with the Defendant's argument that

1    Section 1512(c)(2)'s prohibition is limited to obstruction

2    tied to documentary or tangible evidence, the Court

3    disagrees for the following reasons:

4         Because the statute does not define "obstruct,"

5    the Court, quote, "looks first to the word's ordinary

6    meaning."  That's according to *Schindler Elevator*

7    *Corporation versus United States ex rel. Kirk*, 563 U.S. 401,

8    Page 407, from 2011.

9         To obstruct is to prevent or to hinder something's

10   passage or progress, according to the *Oxford English*

11   *Dictionary*, Third Edition, from 2004.  These verbs are broad

12   enough to cover not only the destruction or alteration of

13   evidence used in a proceeding, but also impeding the

14   proceeding itself.

15        Looking at the context of the statute confirms

16   this interpretation.  Sections (c)(1) and (c)(2) are linked

17   by the word "otherwise."  Otherwise means, quote, "in a

18   different way" or, quote, "by other causes or means,"

19   according to *Black's Law Dictionary*, the Eleventh Edition,

20   from 2019.

21        Thus, a defendant can violate 1512(c) by either,

22   one, altering, destroying or concealing documents and other

23   objects; or, two, violating it, quote, "in a different way"

24   or by, quote, "other causes or means."

25        So 1512 gives fair warning that a crime will occur

1     in a different manner than in 1512(c)(1) if a defendant

2     obstructs, influences or impedes any official proceeding.

3               The different verbs used in 1512 confirm this.

4     The verbs in (c)(1) have as their object a, quote, "record,

5     document or other object for use in an official proceeding."

6     The verbs in (c)(2) have as their object, quote, "any

7     official proceeding."

8               It is most natural to read the statute in a way

9     that (c)(1) is about interfering with the evidence used in

10    an official proceeding and (c)(2) is about interfering with

11    the proceeding itself.

12              More, this interpretation avoids many of the

13    super-fluidity concerns raised by Defendants and by Judge

14    Nichols in his *Miller* opinion.  Section 1512(c)(1) and much

15    of the rest of 1512 concern the destruction of evidence.

16    But under the interpretation the Court now advances,

17    1512(c)(2) concerns interference with an official proceeding

18    itself.  I believe this interpretation is also consistent

19    with *Begay* and *Yates*.

20              Defendants rely heavily on *Begay* to interpret the

21    word "otherwise."  But the meaning of that word plays a

22    relatively minor role in that case.  Indeed, the Court said

23    that "the word, quote, 'otherwise' can -- we do not say

24    'must' -- refer to a crime that is similar to the listed

25    examples in some respects but different in others," closed

1    quote, from Page 144 in *Begay*.

2        *Yates* relied on the doctrine of *ejusdem generis* to

3    interpret the meaning of the phrase "tangible object."  But

4    there, "tangible object" appeared in the same list, indeed,

5    in the same sentence, as the other words that the Court used

6    to give the term its meaning.  That's from Page 531 in

7    *Yates*.

8        But here, the verbs in (c)(2) do not appear in a

9    list with those in (c)(1).  They are separated by a

10   semicolon and the word "or" and they appear on a separate

11   line in a separately numbered paragraph.

12       I turn next to the Defendant's argument that the

13   structure of the text and the legislative history support

14   their interpretation.

15       To start, the Court has already noted that the

16   plain language of the statute supports reading (c)(2) to

17   refer to conduct other than tampering with evidence.  Quote:

18   "Even most formidable argument concerning the statute's

19   purpose cannot overcome the clarity found in the statute's

20   text, and only rarely have we relied on legislative history

21   to constrict the otherwise broad application of a statute

22   indicated by its text," closed quote, from *Lindeen versus

23   the SEC*, 825 F.3d 646, Page 655 from the D.C. Circuit in

24   2016.

25       Next, the Seefrieds argue that the purpose of

1    (c)(2) was to target corporate malfeasance of the type

2    perpetrated by Enron in the late 1990s and early 2000s.

3    Thus, they say the Court should not apply (c)(2) beyond that

4    context.

5         But, quote, "That Congress acted due to concerns

6    about the document destruction and the integrity of

7    investigations of corporate criminality does not define the

8    statute's scope.  Statutes often reach beyond the principal

9    evil that animated them," closed quote, from *United States*

10   *versus Sandlin*, 2021 Westlaw 5865006 at *9 from this

11   district in December 10, 2021.

12        More, quote, "What little legislative history

13   exists should not be given much weight because it comes in

14   the form of floor statements," closed quote, from *United*

15   *States versus Montgomery*, 1221 Westlaw 6134591 at *15 from

16   this district on December 28, 2021.  And that's citing *NLRB*

17   *versus Southwest General*, 137 Supreme Court 929, Page 943,

18   from 2017.

19        Finally, I consider Kevin Seefried's argument that

20   the word "corruptly" is vague.  He relies on *Poindexter*,

21   which found the word "corruptly" was vague in the absence of

22   some narrowing gloss.  That's *Poindexter versus United*

23   *States*, 951 F.2d 369, Page 378, from the D.C. Circuit in

24   1991.

25        Here, there is a narrowing gloss because

1    "corruptly" applies directly to behavior that obstructs,

2    influences or impedes an official proceeding.

3           As Judge Friedrich noted in *Sandlin*, courts have

4    since cabined *Poindexter*'s holding to its facts and have not

5    read it as, quote, "a broad indictment of the use of the

6    word 'corruptly' in various obstruction-of-justice

7    statutes," closed quote, from *9 in *Sandlin*.

8           Finally, the Court notes that multiple other

9    judges in this district to have considered *Poindexter* have

10   similarly found it does not apply to a motion to dismiss an

11   obstruction count under 1512(c)(2).  And I look to

12   *Montgomery* again at *18 among others.

13          Second, the Seefrieds make a passing reference to

14   the rule of lenity to argue ambiguities must be construed in

15   their favor.  As an initial matter, the Court notes that the

16   rule of lenity only applies when there is a, quote,

17   "grievous ambiguity or uncertainty in the statute."  That's

18   from *Barber versus Thomas*, 560 U.S. 474, Page 488, from

19   2020.  As the Court's analysis has made clear, there is no

20   such grievous ambiguity here.

21          Nor can the Seefrieds claim surprise at this

22   result.  The verbs in (c)(2) clearly cover obstructive acts

23   aimed at official proceedings.  It would strain credulity

24   for the Seefrieds to express surprise that stopping an

25   official proceeding from taking place would be covered by a

1    statute that makes it a crime to obstruct, influence or

2    impede any official proceeding or attempt to do so.

3         Similarly, holding otherwise would lead to the

4    absurd result that destroying a document used or considered

5    by Congress in the electoral college vote count would

6    qualify as obstruction of the proceeding, but interfering

7    with the proceeding itself would not constitute obstruction.

8    The rule of lenity does not require that the Court adopt

9    such a strained interpretation of the statute.

10        Third, Kevin Seefried argues the Court should

11   strictly construe 1512(c) and that doing so means the

12   electoral vote count does not constitute an official

13   proceeding for purposes of the statute.

14        The Court rejects this argument because 18 USC

15   1515 defines "official proceeding" for purposes of 1512 as a

16   proceeding before Congress.  Central to this definition is

17   the meaning of the word "proceeding."  In the lay sense,

18   "proceeding" means, quote, "the carrying on of an action or

19   series of actions," according to *Oxford English Dictionary*,

20   Third Edition, from 2007.

21        In the legal sense, "proceeding" means, quote,

22   "the business conducted by a court or other official body;

23   or a hearing," from *Black's Law Dictionary*, the Eleventh

24   Edition, 2019.

25        Under either the lay or the legal definition, the

1    certification of the Electoral College vote is an official

2    proceeding because, quote, "it has the trappings of a formal

3    hearing before an official body.  There is a presiding

4    officer, a process by which objections can be heard, debated

5    and ruled upon and a decision.  The certification of the

6    results must be reached before the session can be adjourned.

7    Indeed, the certificates of electoral results are akin to

8    records or documents that are produced during judicial

9    proceedings, and any objection to those certificates can be

10   analogized to evidentiary objections," closed quote, from

11   *Sandlin*, *4.

12            Additionally, the Court notes that every other

13   judge in this district to consider this issue has reached

14   the same conclusion.

15            Third, Mr. Kevin Seefried argues that 1512(c)

16   concerns the administration of justice and that, quote,

17   "Nothing in the legislative history of the Sarbanes-Oxley

18   Act supports the notion that Congress enacted 1512(c)(2) to

19   criminalize the disruption of a ceremony before Congress by

20   persons engaged in a political rally," closed quote, from

21   his motion at 20.

22            The Court rejects this argument because nothing in

23   1512 suggests it applies only to hearings before tribunals.

24   Indeed, had Congress wanted to impose a definition that more

25   closely resembled a quasi-judicial setting, it could have

1    tracked the language in 18 USC 1505, which criminalizes,

2    among other things, the obstruction of, one, the due and

3    proper administration of the law under which any pending

4    proceeding is being had by a federal department or agency

5    and, two, the due and proper exercise of the power of

6    inquiry under which an inquiry or investigation that is

7    being had by Congress, including by congressional committees

8    and subcommittees.

9         I find that Congress thus knew how to specify that

10   it was talking about a quasi-adjudicatory setting and it

11   chose not to import that into 1512(c)(2).  The Court will

12   therefore assume, as it must, that 1512 and 1505 have

13   different meanings.  That's from -- and I'm looking for that

14   to *Russello versus United States*, 464 U.S. 16, Page 23, from

15   1983.

16        Finally, Kevin Seefried argues that Congress has

17   used other terms to describe interference with the Electoral

18   College certification on Pages 22 to 23 of his motion.

19   Specifically, he says that in other cases the Government has

20   charged civil disorder under 18 USC 231, alleging the

21   Defendant's actions, quote, "affected the conduct and

22   performance of a federally protected function," closed

23   quote.

24        (Thereupon, Mr. Ohm entered the courtroom and the

25   following proceedings were had:)

1          THE COURT:  Welcome, back, Mr. Ohm.

2          MR. OHM:  I'm sorry.

3          THE COURT:  Not at all.  I understand you're

4    multitasking.  I decided to go ahead and ask Mr. Bostic to

5    step in for you just for my oral rulings.  And we arraigned

6    Mr. Bostic's client.

7          In Counts 6 and 7, the Government charged Kevin

8    Seefried with violation of 40 USC 5104, which prohibits

9    entering any of the Capitol buildings intending to disrupt

10   the orderly conduct of official business.  Kevin Seefried

11   argues that certification of the Electoral College by

12   Congress is more appropriately considered the official

13   business of Congress or a federally protected function

14   rather than an official proceeding before Congress as

15   described in 18 USC 1512(c).

16         He cites no cases for this proposition.  And it is

17   not surprising that in different statutory sections enacted

18   at different times for different purposes, Congress used

19   different language.  I'm looking again for that to *Rossello*

20   at Page 25.

21         For all these reasons, I deny the motion to

22   dismiss Count 1 of the indictment.

23         Turning to Mr. Kevin Seefried's motion to dismiss

24   Counts 2 and 3, Count 2 of the superseding indictment

25   charges him with entering and remaining in a restricted

1    building or grounds in violation of 18 USC 1752.  Count 3 of

2    the superseding indictment charges him with disorderly and

3    disruptive conduct in a restricted building or grounds, in

4    violation of 1752(a)(2).

5              The term "restricted building or grounds" means,

6    quote, "any posted, cordoned-off or otherwise restricted

7    area of a building or grounds where the president or other

8    person protected by the Secret Service is or will be

9    temporarily visiting."

10             He argues that Vice President Pence was not,

11   quote, "temporarily visiting the Capitol because he lived

12   and worked in D.C. and had a permanent office within the

13   Capitol."  More, he says other cases where the Government

14   has charged this conduct usually includes areas outside the

15   District.

16             He also argues that the Secret Service did not

17   restrict the Capitol or its grounds on January 6.  He says

18   that the text and legislative history of the statute make it

19   clear that, quote, "only the United States Secret Service

20   can restrict areas for temporary visits by the president or

21   the vice president."  That's at Page 26 of his motion.

22             He also says that on January 6, the restrictions

23   in place were put there by the Capitol Police, not by the

24   Secret Service.

25             I reject these arguments for the following

1    reasons:  First, as to whether the vice president was

2    temporarily visiting the Capitol, the Court points to and

3    incorporates by reference the thoughtful analysis on this

4    issue by Judge Bates in *United States versus McHugh*, 2022

5    Westlaw 296304 at Pages *20 to 22, from this district on

6    February 1st of this year.

7          I briefly recount the outlines of that analysis:

8    The *Oxford English Dictionary* defines "temporarily" as,

9    quote, "for a time only; during a limited time," closed

10   quote, from the Second Edition in 1989.  And *Webster's Third*

11   *New International Dictionary* gives a very similar

12   definition:  "for a brief period; during a limited time;

13   briefly," from 1961.

14         Applying that analysis to the present situation,

15   Judge Bates found that the vice president, quote, "intended

16   to stay there for only a few hours until the certification

17   vote was complete and that when the event occurred in the

18   wee hours of the morning on January 7th, he left the

19   Capitol.  He was therefore temporarily visiting the

20   Capitol," closed quote, when the Defendant's alleged

21   unlawful conduct occurred.  That's from *21.

22         As to Mr. Seefried's argument that the past cases

23   involve a Secret Service protectee traveling outside the

24   District, the plain language of the statute does not require

25   the location temporarily being visited to be outside the

1    District.

2              Second, regarding Mr. Seefried's argument that

3    only the Secret Service can restrict the Capitol grounds,

4    the Court finds this reading is overly narrow.  The text of

5    the statute, quote, "focuses on the perpetrators who

6    knowingly enter a restricted area around a protectee, not on

7    how it is restricted or who does the restricting."  That's

8    from *United States versus Griffen*, 549 F.Supp.3d, 49, Page

9    54, from this Court in 2022.

10             And I take judicial notice of my ruling in that

11   case -- that's 21-CR-92 -- where I noted that a Secret

12   Service witness testified that the Secret Service consulted

13   with the United States Capitol Police in setting up the

14   restricted area at issue there.  That's from ECF No. 106 at

15   65, 16 to 18.  Thus, as in *Griffin*, this case does not

16   squarely present the question of whether the Capitol Police,

17   acting independently of the Secret Service, can designate a

18   restricted area.

19             Obviously, I'm not making any findings of fact for

20   this case.  I'm merely saying that I think, as the

21   indictment alleges, that the Secret Service acted; and I

22   think there is certainly plausibly information that this was

23   not just the Capitol Police that acted alone, but the Secret

24   Service was involved.  Obviously, we'll see what the facts

25   show in this case.  But at this point, I don't think

1    dismissal would be appropriate.

2           More, I think it accords with both 1752 and common

3    sense for the Secret Service to work with local law

4    enforcement, in this case the Capitol Police, and to take

5    advantage of walls, signage and other barriers the local law

6    enforcement already had in place.  It especially makes sense

7    in this context, given the close working relationship

8    between the Capitol Police and the Secret Service.

9           Mr. Kevin Seefried has an alternative argument for

10   dismissal:  that the indictment neither provides adequate

11   notice nor assures that the grand jury made the

12   determinations required by the Fifth Amendment.

13          He argues that the superseding indictment reveals

14   that the charges lack any specifics regarding the alleged

15   acts or circumstances and contains only conclusory

16   allegations.

17          He goes on to say:  Without specificity of charged

18   conduct and circumstances, the Court would be forced to

19   guess what was in the minds of the grand jury at the time

20   they returned the indictment, which would deprive the

21   Defendant of a basic protection that the grand jury was

22   designed to secure, by allowing a defendant to be convicted

23   on the basis of facts not found by and perhaps not even

24   presented to the grand jury that indicted him.  And he

25   quotes *United States versus Du Bo*, 186 F.3d 1177, Page 1179,

1    from the Ninth Circuit in 1999.

2              The Court disagrees because by using the statutory

3    language and specifying the time and place of the offense,

4    an indictment provides both fair notice and thus protection

5    against future prosecution for the same offense.  And I'm

6    looking for that to *United States versus Williamson*, 903

7    F.3d 124, Page 130, from the D.C. Circuit in 2018.

8              More, quote, "Neither the Constitution, the

9    Federal Rules of Criminal Procedure nor any other authority

10   suggests that an indictment must put the Defendant on notice

11   as to every detail considered by the grand jury.  Further,

12   indictments must be read to include facts which are

13   necessarily implied by the specific allegations made,"

14   closed quote.  That's from *United States versus Cisneros*, 26

15   F.Supp.2d, 24, Page 46, from this district in 1998.

16             In *Du Bo*, the case relied upon by Mr. Seefried,

17   the indictment failed to allege all the elements of the

18   offense.  Mr. Seefried makes no such allegation about the

19   superseding indictment.  Instead, he says the indictment

20   makes conclusory allegations.

21             I don't believe this is a sufficient basis on

22   which to dismiss the indictment.

23             Finally, I turn to the motion to dismiss the

24   indictment for Speedy Trial Act from Mr. Kevin Seefried,

25   which has been joined by Mr. Hunter Seefried.  They argue

1    that the Government violated their rights under the Speedy

2    Trial Act, 18 USC 3161.  The Act requires a defendant's

3    trial to begin within 70 days of indictment or arraignment

4    or else the Court must dismiss the case.  And that's

5    according to 3162(a).

6            Mr. Seefried argues that -- both Defendants argue

7    that at the time Kevin Seefried's motion was filed, 81 days

8    of nonexcludable time had elapsed.

9            Here's a quick review of the relevant dates:  The

10   Defendants filed motions to dismiss in October of 2021.

11   That's on ECF Nos. 36 and 37.

12           In a status conference on October 26, 2021, the

13   Court set a motions hearing for May 20, 2022.

14           On February 18, 2022, the Court denied the

15   Government's motion to toll time under the Act.

16           On March 14, the Court denied without prejudice

17   the motions to dismiss that the Seefrieds had filed in

18   October.  It told the Seefrieds that several other judges in

19   this district had ruled on the issue since they had filed

20   their motions and that they could refile their motions if

21   they updated them to address the analysis in those opinions.

22           On April 8, the Seefrieds filed updated motions to

23   dismiss.

24           Both parties agree that, except for a 31-day

25   period in the summer of 2021, time was tolled under the Act

1   until February 18, 2022, when the Court denied the

2   Government's motion to toll time.

3          At issue is the impact of the Court's denial.  The

4   Government argues that since the time was tolled by the

5   pending motions to dismiss, that denial had no effect under

6   the Speedy Trial Act.  The Seefrieds argue that the denial

7   stopped the tolling of time.

8          The Court does not find the defense argument

9   persuasive here.  Mr. Seefried contends that 3161(h)(1)(H)

10  dictates that a motion can toll time under the Act for only

11  30 days.  For this, he cites to *United States versus Bryant*,

12  523 F.3d 349 at Page 359, from the D.C. Circuit in 2008.

13         But I believe *Bryant* explicitly cabined its

14  holding to, quote, "motions that do not require a hearing,"

15  closed quote, from Page 359.  The Court decided on October

16  26, 2021, at that status conference that the motions to

17  dismiss did require a hearing.  So *Bryant* does not control

18  here.

19         In short, as I suggested earlier, I don't think

20  (h)(1)(H) is relevant.  I think (h)(1)(D) is the relevant

21  provision.  And as I suggested, if (h)(1)(H) somehow cabins

22  all of the preceding subsections, I couldn't see how in

23  (h)(1)(C), which relates to an interlocutory appeal, you

24  could possibly expect an interlocutory appeal to occur only

25  within 30 days.

1          Indeed, especially when the Defendants originally

2     filed their motions back in October of last year, their

3     motions raised novel, tricky, nontrivial questions of

4     statutory construction the Court quickly recognized that

5     they would need time and attention to resolve.

6          In the interim, various other judges in this

7     district ruled on substantially similar motions in other

8     January 6 cases.  While most judges denied those motions,

9     Judge Nichols granted one in a lengthy, thoughtful opinion

10    that I referenced earlier.

11         Thus, on March 14, the Court denied the pending

12    motions without prejudice to allow both parties to engage

13    with the judicial opinions that postdated their initial

14    briefs.

15         And I'll say, as I suggested earlier, that I

16    certainly did intend to hold a hearing on those motions.

17    Those are not your typical motions.  I recall at the time

18    that the Defendants filed their motions no other judge in

19    this Court had ruled on that motion, the motion to dismiss

20    the obstruction count, but I knew several other similar

21    motions were pending in this Court.  Indeed, judges had been

22    having hearings, had been making comment on the record

23    suggesting that they may well agree with the defense in

24    their arguments.

25         I wanted an opportunity to hear from the

1    attorneys.  I highly respect all the attorneys in this case.

2    I wanted to get an opportunity to hear from them.

3          I also thought it would be helpful to see how some

4    of my colleagues ruled who had already heard hearings.

5    Indeed, I thought that quite possibly the decisions in the

6    other cases could actually help the Defendants.

7          Therefore, I didn't see this as a kind of

8    run-of-the-mill-type motion, but one that certainly would

9    justify a hearing and one that I didn't want to rush to

10   decide.

11         As I said, no other judge had decided at that time

12   a motion like this.  Of course, the issue is much more

13   straightforward now that a number of my colleagues have

14   ruled, all but one, for the Government.

15         And I myself had a motions hearing on this.  In

16   fact, I'll say at the last motions hearing I had on a very

17   similar motion, it wasn't even an AUSA who argued it, but

18   the criminal division sent over someone from their appellate

19   section to argue this motion, which I think goes to the

20   novelty of it and the complexity of it.  And it was

21   certainly helpful to me to hear from the attorneys in those

22   arguments on the first motion that I had had before me.

23   That hearing happened well after the Defendants had filed

24   their October motions to dismiss.

25         In any event, the Supreme Court has held that,

1    quote, "The plain terms of the Speedy Trial Act appear to

2    exclude all time between the filing of the hearing on a

3    motion, whether that hearing was prompt or not.  Moreover,

4    Subsection (d) does not require that a period of delay be

5    reasonable to be excluded."  That's from *Henderson versus*

6    *United States*, 476 U.S. 321, Pages 326 and 327, from 1986.

7            Thus, the motions to dismiss tolled time until the

8    Court dismissed them without prejudice in a minute order on

9    March 14, 2022.

10           The Court specifically noted it was denying them

11   without prejudice, pointing the parties to its prior motions

12   schedule, which required all motions to be filed prior to

13   the May 20th motions hearing, and told them that if they

14   wished to file again they should engage with the recent

15   relevant decisions on the topic.

16           The Court's dismissal did not indicate that a

17   hearing was unnecessary.  Quite the contrary.  The only

18   reason the Court dismissed the motions prior to the hearing

19   was because it wanted the parties to engage with the

20   intervening decisions.

21           As to the Court's February 18, 2022, denial of the

22   Government's motion to toll, the Government's motion and the

23   Court's ruling related to the ongoing discovery, not the

24   automatic tolling due to the Defendants' pending motions.

25           Frankly, it appears that all parties, including

1   me, forgot the time was tolled automatically by statute.

2   Had the Court remembered this, it would have denied the

3   Government's motion as moot.  Either way, the Court denied

4   or would have denied the Government's motion; and the

5   tolling due to the pending motions to dismiss controls.

6          For those reasons, I agree with the Government

7   that more than 70 days have not elapsed.  Therefore, I deny

8   the Seefrieds' motion.

9          And I'll just say very briefly that, regardless, I

10  would not have been dismissing the indictment with

11  prejudice.  I think that's an extreme remedy and really

12  would not be appropriate, especially here, where the

13  Defendants are out on bond and they've been getting

14  discovery and preparing for a complex trial.  I don't mean

15  "complex" in the meaning of the statute, but in the

16  vernacular.

17         Ms. Reed, do you have any questions on any of my

18  rulings?

19         MS. REED:  No, sir, your Honor.

20         THE COURT:  And Mr. Ohm?

21         MR. OHM:  No, your Honor.

22         THE COURT:  And Mr. Bostic?

23         MR. BOSTIC:  No, your Honor.

24         THE COURT:  So I will see you all -- I'm making

25  sure I have this -- why don't we say 9:30 on June 13th.  I

```
 1    had 9:00, but we don't need to have a jury.  So I think 9:30
 2    is a more civil time for us to meet.
 3              Ms. Reed, anything else we should discuss?
 4              MS. REED:  I'm sorry, your Honor.
 5              Your Honor, we would just ask, obviously, for the
 6    speedy trial clock to be tolled at this time until the June
 7    13th 9:30 a.m. start time.
 8              THE COURT:  Mr. Ohm, I'll hear from you.
 9              MR. OHM:  I guess we would just oppose.
10              THE COURT:  Anything else you wanted to address,
11    sir?
12              MR. OHM:  I just wanted to ask if -- I don't
13    remember if there was a deadline set for, like, exhibit
14    lists.
15              THE COURT:  Yes.  Thank you.  I'll get that in
16    just a moment.
17              And, Mr. Bostic, anything you wish to be heard on?
18              MR. BOSTIC:  Your Honor, we just oppose.
19              THE COURT:  So I will grant the Government's
20    motion.  I think we're just really a few days from trial.
21    We just had a superseding indictment.  I don't think that
22    changes things much.  But I think it is appropriate for the
23    parties now to take the last few weeks to prepare for trial;
24    and I find that the interests of justice outweigh the
25    interests of the public and the Defendant in a speedy trial
```

1      to the extent that I will toll until June 13th.

2              I'll just ask the parties to provide exhibit

3      lists, premark your exhibits and witness lists on the

4      morning of trial.  I don't require those documents ahead of

5      time.

6              If the parties plan to file trial briefs -- I

7      don't necessarily require them.  But if you are going to

8      file anything, I'll just ask that you do that by June 8th.

9              I'll see you all on June 13th at 9:30.  Thanks,

10     folks.

11             (Proceedings concluded.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          **<u>CERTIFICATE</u>**

2

3                    I, LISA EDWARDS, RDR, CRR, do hereby

4       certify that the foregoing constitutes a true and accurate

5       transcript of my stenographic notes, and is a full, true,

6       and complete transcript of the proceedings produced to the

7       best of my ability.

8

9

10                   Dated this 17th day of April, 2023.

11

12             <u>/s/ Lisa Edwards, RDR, CRR</u>
               Official Court Reporter
13             United States District Court for the
                 District of Columbia
14             333 Constitution Avenue, Northwest
               Washington, D.C. 20001
15             (202) 354-3269

16

17

18

19

20

21

22

23

24

25

**'** 

**'corruptly'** [1] - 56:6
**'must'** [1] - 53:24
**'otherwise'** [1] - 53:23

---

**/**

**/s** [1] - 74:12

---

**1**

**1** [11] - 4:15, 11:20, 11:22, 30:19, 49:2, 50:7, 50:10, 50:12, 50:13, 50:15, 60:22
**10** [1] - 55:11
**10007** [1] - 1:19
**1005** [1] - 2:3
**106** [1] - 63:14
**10:04** [1] - 1:7
**11** [1] - 22:1
**1177** [1] - 64:25
**1179** [1] - 64:25
**12** [2] - 8:21, 50:21
**1221** [1] - 55:15
**124** [1] - 65:7
**130** [1] - 65:7
**137** [2] - 51:4, 55:17
**13th** [4] - 71:25, 72:7, 73:1, 73:9
**14** [3] - 66:16, 68:11, 70:9
**144** [1] - 54:1
**15** [3] - 47:2, 48:11, 55:15
**1505** [2] - 59:1, 59:12
**1512** [13] - 33:21, 34:18, 36:24, 39:21, 41:18, 51:1, 51:10, 52:25, 53:3, 53:15, 57:15, 58:23, 59:12
**1512(c** [3] - 52:21, 57:11, 58:15
**1512(c)** [1] - 60:15
**1512(c)(1** [2] - 53:1, 53:14
**1512(c)(2** [3] - 50:17, 53:17, 58:18
**1512(c)(2)** [2] - 56:11, 59:11
**1512(c)(2)'s** [1] - 52:1
**1515** [1] - 57:15
**16** [2] - 59:14, 63:15
**1600** [1] - 1:16
**1700** [1] - 2:3

---

**2**

**1752** [2] - 61:1, 64:2
**1752(a)(2** [1] - 39:21
**1752(a)(2)** [1] - 61:4
**17th** [1] - 74:10
**18** [11] - 56:12, 57:14, 59:1, 59:20, 60:15, 61:1, 63:15, 66:2, 66:14, 67:1, 70:21
**186** [1] - 64:25
**1961** [1] - 62:13
**19803** [1] - 2:4
**1983** [1] - 59:15
**1986** [1] - 70:6
**1989** [1] - 62:10
**1990s** [1] - 55:2
**1991** [1] - 55:24
**1997** [1] - 51:24
**1998** [1] - 65:15
**1999** [1] - 65:1
**1st** [1] - 62:6

---

**2**

**2** [6] - 4:16, 11:20, 49:3, 50:7, 60:24
**20** [6] - 1:6, 21:24, 47:10, 58:21, 62:5, 66:13
**20001** [2] - 2:8, 74:14
**20004** [1] - 1:23
**2000s** [1] - 55:2
**2004** [1] - 52:11
**2007** [1] - 57:20
**2008** [2] - 51:4, 67:12
**2011** [1] - 52:8
**2015** [1] - 51:5
**2016** [1] - 54:24
**2017** [1] - 55:18
**2018** [1] - 65:7
**2019** [2] - 52:20, 57:24
**202** [2] - 2:9, 74:15
**2020** [1] - 56:19
**2021** [8] - 33:19, 55:10, 55:11, 55:16, 66:10, 66:12, 66:25, 67:16
**2022** [10] - 1:6, 50:20, 50:21, 62:4, 63:9, 66:13, 66:14, 67:1, 70:9, 70:21
**2023** [1] - 74:10
**20th** [1] - 70:13
**21** [1] - 62:4
**21-00287** [1] - 1:3
**21-287** [3] - 3:2, 4:14, 49:1
**21-CR-92** [1] - 63:11

---

**3**

**22** [2] - 59:18, 62:5
**22nd** [1] - 34:6
**23** [2] - 59:14, 59:18
**231** [1] - 59:20
**24** [3] - 6:18, 7:18, 65:15
**25** [1] - 60:20
**259** [1] - 51:24
**26** [4] - 61:21, 65:14, 66:12, 67:16
**267** [1] - 51:24
**27th** [1] - 23:8
**28** [1] - 55:16
**296304** [1] - 62:5

---

**3**

**3** [7] - 4:18, 11:20, 49:5, 50:7, 50:12, 60:24, 61:1
**30** [11] - 35:17, 36:16, 38:12, 38:15, 45:2, 45:15, 45:19, 46:10, 67:11, 67:25
**30-day** [7] - 35:8, 35:15, 35:18, 35:20, 35:24, 38:1, 44:23
**302** [1] - 23:10
**31-day** [1] - 66:24
**3161** [2] - 36:4, 66:2
**3161(h)(1)(G)** [1] - 36:14
**3161(h)(1)(H** [2] - 36:5, 67:9
**3161(h)(1)(H)** [1] - 36:19
**3161(h)(8** [1] - 44:13
**3162(a)** [1] - 66:5
**321** [1] - 70:6
**326** [1] - 70:6
**327** [1] - 70:6
**333** [2] - 2:7, 74:14
**349** [1] - 67:12
**354-3269** [2] - 2:9, 74:15
**359** [2] - 67:12, 67:15
**36** [1] - 66:11
**369** [1] - 55:23
**37** [1] - 66:11
**378** [1] - 55:23

---

**4**

**4** [3] - 4:19, 49:6, 58:11
**40** [1] - 60:8
**401** [1] - 52:7
**407** [1] - 52:8

---

**46** [1] - 65:15
**464** [1] - 59:14
**474** [1] - 56:18
**476** [1] - 70:6
**488** [1] - 56:18
**49** [1] - 63:8

---

**5**

**5** [3] - 4:20, 49:7, 51:2
**5104** [1] - 60:8
**520** [1] - 51:24
**523** [1] - 67:12
**528** [1] - 51:5
**53** [1] - 6:16
**531** [1] - 54:6
**54** [1] - 63:9
**549** [1] - 63:8
**550** [1] - 1:23
**553** [1] - 51:4
**56** [1] - 49:23
**560** [1] - 56:18
**563** [1] - 52:7
**57** [1] - 49:24
**574** [1] - 51:4
**58** [1] - 49:24
**5865006** [1] - 55:10
**59** [2] - 50:7, 50:12

---

**6**

**6** [8] - 25:13, 47:10, 49:8, 51:14, 60:7, 61:17, 61:22, 68:8
**60** [1] - 50:7
**609** [2] - 28:1, 28:7
**61** [2] - 50:9, 50:12
**6134591** [1] - 55:15
**625** [1] - 1:22
**646** [1] - 54:23
**65** [1] - 63:15
**650** [1] - 1:16
**655** [1] - 54:23
**6706** [1] - 2:8
**6th** [1] - 34:14

---

**7**

**7** [2] - 49:10, 60:7
**70** [6] - 26:3, 26:4, 26:6, 26:10, 66:3, 71:7
**70130** [1] - 1:17
**7th** [1] - 62:18

---

**8**

**8** [2] - 49:11, 66:22
**80** [1] - 47:15
**81** [1] - 66:7
**823070** [1] - 50:21
**825** [1] - 54:23
**8th** [1] - 73:8

---

**9**

**9** [3] - 27:10, 55:10, 56:7
**90** [1] - 47:15
**903** [1] - 65:6
**929** [1] - 55:17
**943** [1] - 55:17
**951** [1] - 55:23
**9:00** [1] - 72:1
**9:30** [4] - 71:25, 72:1, 72:7, 73:9

---

**A**

**a)(1** [1] - 39:22
**a.m** [2] - 1:7, 72:7
**abetting** [3] - 4:16, 49:3, 49:11
**ability** [3] - 31:6, 41:4, 74:7
**able** [6] - 6:24, 14:1, 21:7, 23:12, 34:7, 41:22
**absence** [1] - 55:21
**absolutely** [1] - 15:25
**absurd** [1] - 57:4
**accepted** [2] - 12:16, 23:7
**accepting** [1] - 5:15
**accommodate** [1] - 19:22
**accommodated** [1] - 19:19
**accommodating** [1] - 44:6
**according** [8] - 26:19, 51:14, 51:23, 52:6, 52:10, 52:19, 57:19, 66:5
**accords** [1] - 64:2
**accurate** [1] - 74:4
**act** [1] - 49:12
**Act** [29] - 13:13, 15:6, 15:13, 17:17, 18:4, 19:3, 19:9, 19:13, 19:17, 25:22, 29:10, 36:9, 37:9, 37:19,

44:3, 44:20, 44:22,
47:21, 58:18, 65:24,
66:2, 66:15, 66:25,
67:6, 67:10, 70:1
**Act's** [1] - 44:12
**acted** [4] - 21:9,
55:5, 63:21, 63:23
**acting** [1] - 63:17
**action** [3] - 45:3,
57:18
**Action** [1] - 1:3
**actions** [3] - 41:3,
57:19, 59:21
**acts** [2] - 56:22,
64:15
**add** [1] - 48:5
**addiction** [1] - 8:9
**additional** [2] - 30:1,
31:3
**additionally** [2] -
43:17, 58:12
**address** [2] - 66:21,
72:10
**adequate** [1] - 64:10
**adjourned** [1] - 58:6
**adjudicatory** [1] -
59:10
**administration** [2] -
58:16, 59:3
**adopt** [1] - 57:8
**advances** [1] - 53:16
**advantage** [1] - 64:5
**advantages** [3] -
9:15, 9:21, 10:8
**advisement** [4] -
35:17, 36:18, 38:3,
38:13
**affected** [1] - 59:21
**agency** [1] - 59:4
**ago** [3] - 13:22,
20:19, 23:25
**agree** [9] - 8:22,
12:23, 22:12, 26:20,
29:12, 32:11, 66:24,
68:23, 71:6
**agrees** [1] - 46:13
**ahead** [2] - 60:4,
73:4
**aiding** [3] - 4:16,
49:3, 49:11
**aimed** [1] - 56:23
**akin** [1] - 58:7
**alcohol** [1] - 7:17
**alert** [1] - 8:2
**Alexandria** [1] - 26:9
**allegation** [1] - 65:18
**allegations** [3] -
64:16, 65:13, 65:20
**allege** [1] - 65:17
**alleged** [4] - 21:23,

40:12, 62:20, 64:14
**alleges** [1] - 63:21
**alleging** [1] - 59:20
**allow** [7] - 13:7, 18:4,
18:5, 19:3, 25:22,
29:25, 68:12
**allowed** [1] - 29:18
**allowing** [2] - 44:3,
64:22
**allows** [1] - 19:9
**alone** [3] - 9:10,
51:21, 63:23
**alteration** [1] - 52:12
**altering** [1] - 52:22
**alternative** [1] - 64:9
**ambiguities** [1] -
56:14
**ambiguity** [2] -
56:17, 56:20
**Amendment** [3] -
4:25, 15:15, 64:12
**America** [1] - 3:2
**AMERICA** [1] - 1:3
**analogized** [1] -
58:10
**analysis** [5] - 56:19,
62:3, 62:7, 62:14,
66:21
**AND** [1] - 1:11
**Andrew's** [1] - 1:19
**angst** [1] - 28:4
**animated** [1] - 55:9
**answer** [1] - 5:23
**anxiety** [1] - 7:21
**anyway** [1] - 48:19
**apart** [1] - 40:7
**apologize** [1] - 21:14
**appeal** [7] - 24:25,
25:1, 45:13, 45:15,
46:20, 67:23, 67:24
**appear** [4] - 42:23,
54:8, 54:10, 70:1
**APPEARANCES** [1] -
2:1
**appearances** [2] -
1:14, 32:10
**appeared** [2] - 18:20,
54:4
**appellate** [1] - 69:18
**applicable** [1] -
37:25
**application** [1] -
54:21
**applies** [5] - 46:14,
49:18, 56:1, 56:16,
58:23
**apply** [4] - 27:5,
38:5, 55:3, 56:10
**applying** [1] - 62:14
**appreciate** [2] -

13:19, 14:9
**apprenticeship** [1] -
31:13
**approach** [1] - 48:23
**approached** [1] -
47:7
**appropriate** [4] -
35:9, 64:1, 71:12,
72:22
**appropriately** [1] -
60:12
**approve** [2] - 9:8,
11:6
**April** [3] - 23:8,
66:22, 74:10
**area** [7] - 22:20,
29:13, 40:21, 61:7,
63:6, 63:14, 63:18
**areas** [3] - 42:8,
61:14, 61:20
**argue** [11] - 43:13,
50:17, 51:3, 51:15,
51:17, 54:25, 56:14,
65:25, 66:6, 67:6,
69:19
**argued** [1] - 69:17
**argues** [9] - 57:10,
58:15, 59:16, 60:11,
61:10, 61:16, 64:13,
66:6, 67:4
**arguing** [2] - 37:1,
46:5
**argument** [29] - 3:25,
20:25, 21:16, 22:9,
22:12, 22:25, 23:7,
25:19, 25:20, 26:16,
28:7, 30:23, 30:25,
34:12, 35:19, 35:23,
43:7, 46:11, 50:19,
51:25, 54:12, 54:18,
55:19, 57:14, 58:22,
62:22, 63:2, 64:9,
67:8
**arguments** [8] -
12:6, 17:8, 20:16,
33:9, 43:16, 61:25,
68:24, 69:22
**arisen** [1] - 12:25
**arraign** [3] - 3:21,
4:12, 48:17
**arraigned** [1] - 60:5
**arraignment** [2] -
3:23, 66:3
**ARRAIGNMENT** [1] -
1:11
**arrested** [1] - 19:15
**articulated** [1] -
29:11
**assert** [1] - 4:24
**asserted** [1] - 20:23

**assume** [3] - 11:17,
44:25, 59:12
**assuming** [3] -
26:15, 28:6, 28:8
**assumption** [1] -
16:9
**assure** [2] - 32:14,
32:22
**assures** [1] - 64:11
**attempt** [1] - 57:2
**attempted** [2] -
32:15, 32:17
**attention** [4] - 10:3,
10:15, 10:19, 68:5
**Attorney** [1] - 51:5
**attorney** [3] - 9:14,
11:23, 14:14
**ATTORNEY'S** [2] -
1:15, 1:18
**attorneys** [4] - 5:19,
69:1, 69:21
**attributable** [1] -
36:16
**audit** [1] - 51:14
**AUSA** [3] - 3:6, 3:7,
69:17
**AUSAs** [1] - 42:20
**authentication** [2] -
11:12, 49:25
**authority** [1] - 65:9
**automatic** [2] -
26:14, 70:24
**automatically** [3] -
35:25, 45:7, 71:1
**availability** [1] - 51:9
**Avenue** [3] - 1:22,
2:7, 74:14
**avoid** [1] - 32:17
**avoids** [1] - 53:12
**aware** [3] - 11:25,
30:20, 31:2

**B**

**background** [1] -
7:10
**Barber** [1] - 56:18
**Barr** [1] - 51:6
**barriers** [1] - 64:5
**based** [1] - 27:18
**basic** [1] - 64:21
**basis** [8] - 15:11,
16:24, 21:21, 22:19,
28:18, 34:8, 64:23,
65:21
**Bates** [2] - 62:4,
62:15
**BEFORE** [1] - 1:11
**began** [1] - 20:5

**Begay** [4] - 51:3,
53:19, 53:20, 54:1
**begin** [1] - 66:3
**beginning** [2] - 20:7,
51:25
**behalf** [7] - 3:7, 3:11,
3:16, 4:23, 5:2, 27:14,
30:19
**behavior** [1] - 56:1
**behind** [2] - 30:6,
42:21
**belabor** [1] - 39:4
**believes** [1] - 36:22
**bench** [1] - 12:22
**beneficial** [1] - 31:13
**benefits** [1] - 31:15
**Benet** [1] - 3:7
**BENET** [1] - 1:18
**best** [2] - 32:5, 74:7
**between** [7] - 22:20,
28:12, 28:15, 34:9,
37:10, 64:8, 70:2
**beyond** [4] - 38:12,
38:15, 55:3, 55:8
**big** [1] - 43:24
**biggest** [1] - 19:25
**bill** [2] - 39:14, 39:18
**Bill** [1] - 51:6
**bit** [6] - 7:9, 18:14,
26:3, 27:15, 31:5,
47:24
**Black's** [2] - 52:19,
57:23
**block** [1] - 43:24
**Bo** [2] - 64:25, 65:16
**board** [1] - 24:5
**body** [2] - 57:22,
58:3
**bond** [1] - 71:13
**bootstrap** [1] - 22:17
**Bostic** [14] - 3:16,
3:17, 4:8, 5:13, 10:7,
24:1, 30:12, 31:25,
39:12, 48:3, 48:17,
60:4, 71:22, 72:17
**BOSTIC** [16] - 2:2,
2:2, 3:15, 4:9, 5:2,
5:14, 10:10, 10:14,
10:17, 30:15, 30:18,
48:5, 48:20, 48:24,
71:23, 72:18
**Bostic's** [2] - 11:21,
60:6
**break** [1] - 50:23
**breaking** [1] - 40:14
**brief** [2] - 42:1, 62:12
**briefing** [3] - 16:15,
18:15, 34:23
**briefings** [1] - 33:24
**briefly** [3] - 62:7,

62:13, 71:9
**briefs** [2] - 68:14, 73:6
**bring** [2] - 20:12, 43:1
**bringing** [1] - 27:12
**brings** [1] - 30:3
**Brittany** [1] - 3:7
**BRITTANY** [1] - 1:15
**broad** [3] - 52:11, 54:21, 56:5
**broadly** [1] - 51:15
**brought** [1] - 47:16
**Bryant** [8] - 15:12, 27:23, 28:19, 43:22, 43:23, 67:11, 67:13, 67:17
**building** [16] - 4:17, 4:19, 4:20, 4:21, 40:20, 41:2, 49:4, 49:6, 49:7, 49:8, 49:9, 49:12, 61:1, 61:3, 61:5, 61:7
**buildings** [1] - 60:9
**bunch** [1] - 20:18
**business** [4] - 20:21, 57:22, 60:10, 60:13
**button** [1] - 33:22
**BY** [1] - 2:5

# C

**c)(1** [6] - 50:24, 51:11, 51:16, 52:16, 53:4, 53:9
**c)(1)** [2] - 50:23, 54:9
**c)(2** [13] - 50:22, 50:23, 51:7, 51:11, 51:15, 52:16, 53:6, 53:10, 54:8, 54:16, 55:1, 55:3, 56:22
**cabined** [2] - 56:4, 67:13
**cabins** [3] - 45:12, 46:7, 67:21
**calculations** [2] - 26:12, 33:1
**cameras** [2] - 11:15, 50:3
**cannot** [2] - 44:10, 54:19
**capital** [1] - 45:25
**Capitol** [27] - 4:20, 4:21, 11:15, 13:6, 40:14, 40:15, 40:16, 40:25, 42:8, 49:7, 49:8, 49:12, 50:3, 60:9, 61:11, 61:13, 61:17, 61:23, 62:2,

62:19, 62:20, 63:3, 63:13, 63:16, 63:23, 64:4, 64:8
**careful** [1] - 12:21
**carrying** [1] - 57:18
**carve** [3] - 26:24, 27:1, 27:23
**carved** [1] - 35:11
**carveouts** [3] - 25:24, 29:11, 29:13
**carving** [1] - 26:22
**case** [46] - 9:9, 12:8, 13:2, 14:11, 14:14, 15:21, 19:9, 19:21, 20:6, 20:8, 21:19, 24:25, 27:24, 28:2, 28:16, 29:15, 29:17, 29:25, 30:3, 32:12, 32:13, 32:16, 32:18, 34:3, 34:4, 34:16, 35:8, 36:1, 37:8, 37:25, 38:23, 39:2, 40:2, 43:10, 43:14, 43:22, 44:21, 53:22, 63:11, 63:15, 63:20, 63:25, 64:4, 65:16, 66:4, 69:1
**Case** [3] - 3:2, 4:14, 49:1
**cases** [22] - 15:13, 15:14, 19:5, 19:11, 19:21, 20:12, 22:2, 22:22, 29:17, 32:8, 41:17, 42:19, 44:7, 47:5, 47:8, 47:17, 59:19, 60:16, 61:13, 62:22, 68:8, 69:6
**catchall** [1] - 51:11
**category** [3] - 17:14, 17:17, 17:18
**causes** [2] - 52:18, 52:24
**central** [1] - 57:16
**ceremony** [1] - 58:19
**certain** [10] - 11:12, 14:15, 15:13, 15:14, 23:13, 26:23, 31:14, 44:16, 49:25
**certainly** [27] - 12:6, 13:1, 13:7, 13:17, 15:23, 16:14, 17:2, 17:13, 17:19, 25:13, 32:13, 32:19, 33:23, 34:10, 34:14, 34:17, 35:8, 35:23, 37:6, 38:18, 38:22, 39:2, 39:24, 63:22, 68:16, 69:8, 69:21
**CERTIFICATE** [1] - 74:1

**certificates** [2] - 58:7, 58:9
**certification** [5] - 58:1, 58:5, 59:18, 60:11, 62:16
**certify** [1] - 74:4
**Chaclan** [2] - 3:21, 6:5
**challenge** [1] - 51:20
**chambers** [1] - 40:21
**chance** [2] - 5:20, 23:23
**changes** [1] - 72:22
**characterize** [1] - 16:13
**charge** [13] - 16:21, 21:21, 22:8, 22:9, 22:13, 22:19, 22:21, 25:6, 30:6, 31:3, 34:18, 47:18
**charged** [9] - 4:14, 21:21, 22:18, 39:25, 49:1, 59:20, 60:7, 61:14, 64:17
**charges** [9] - 8:15, 22:7, 24:11, 24:19, 25:4, 40:8, 60:25, 61:2, 64:14
**charging** [1] - 22:22
**chase** [1] - 41:6
**chat** [1] - 5:19
**chime** [2] - 17:21, 19:6
**choice** [1] - 29:20
**chose** [1] - 59:11
**Circuit** [9] - 15:12, 17:21, 27:25, 45:18, 54:23, 55:23, 65:1, 65:7, 67:12
**circumstances** [3] - 30:5, 64:15, 64:18
**Cisneros** [1] - 65:14
**cite** [1] - 36:7
**cited** [3] - 20:1, 37:17, 43:22
**cites** [2] - 60:16, 67:11
**citing** [1] - 55:16
**civil** [2] - 59:20, 72:2
**claim** [2] - 37:9, 56:21
**claims** [1] - 28:10
**clarify** [1] - 30:12
**clarity** [1] - 54:19
**clause** [3] - 50:23, 51:6, 51:16
**clean** [1] - 50:23
**clear** [11] - 13:14, 21:22, 22:14, 28:20, 42:4, 42:16, 44:8,

46:15, 51:22, 56:19, 61:19
**clearly** [2] - 44:5, 56:22
**client** [11] - 9:21, 9:25, 10:8, 10:11, 11:19, 11:21, 23:13, 24:13, 48:18, 48:22, 60:6
**clients** [1] - 40:8
**climbed** [1] - 21:24
**clock** [6] - 16:2, 16:5, 18:8, 35:24, 37:9, 72:6
**close** [4] - 23:16, 40:21, 51:12, 64:7
**closed** [12] - 53:25, 54:22, 55:9, 55:14, 56:7, 58:10, 58:20, 59:22, 62:9, 62:20, 65:14, 67:15
**closely** [1] - 58:25
**co** [1] - 32:10
**co-counsel** [1] - 32:10
**colleagues** [5] - 16:23, 16:25, 17:9, 69:4, 69:13
**College** [3] - 58:1, 59:18, 60:11
**college** [1] - 57:5
**colloquy** [1] - 3:24
**COLUMBIA** [1] - 1:1
**Columbia** [3] - 2:7, 20:13, 74:13
**comfortable** [1] - 8:1
**coming** [1] - 32:2, 47:10
**commence** [2] - 36:14, 37:23
**comment** [1] - 68:22
**committees** [1] - 59:7
**common** [1] - 64:2
**communities** [2] - 24:21, 24:23
**community** [1] - 24:12
**compensation** [1] - 31:15
**competent** [3] - 10:4, 10:16, 10:19
**complete** [2] - 62:17, 74:6
**completely** [4] - 19:1, 21:13, 24:5, 24:20
**complex** [5] - 19:25, 29:17, 44:6, 71:14, 71:15

**complexities** [4] - 19:23, 19:25, 43:10, 43:14
**complexity** [1] - 69:20
**computing** [2] - 36:13, 37:21
**concealing** [1] - 52:22
**conceded** [1] - 50:5
**concern** [1] - 53:15
**concerned** [1] - 39:8
**concerning** [2] - 36:17, 54:18
**concerns** [6] - 12:19, 17:2, 53:13, 53:17, 55:5, 58:16
**concluded** [1] - 73:11
**conclusion** [5] - 28:12, 36:11, 37:20, 51:11, 58:14
**conclusory** [2] - 64:15, 65:20
**conduct** [15] - 4:18, 4:19, 21:23, 41:9, 49:5, 49:6, 51:8, 51:23, 54:17, 59:21, 60:10, 61:3, 61:14, 62:21, 64:18
**conducted** [1] - 57:22
**conference** [4] - 14:24, 32:20, 66:12, 67:16
**CONFERENCE** [1] - 1:10
**confirm** [2] - 11:17, 53:3
**confirms** [1] - 52:15
**confused** [1] - 17:22
**Congress** [19] - 26:22, 26:24, 29:13, 42:9, 44:5, 44:8, 55:5, 57:5, 57:16, 58:18, 58:19, 58:24, 59:7, 59:9, 59:16, 60:12, 60:13, 60:14, 60:18
**congressional** [4] - 40:2, 40:10, 41:5, 59:7
**connection** [1] - 31:13
**consider** [4] - 39:6, 44:16, 55:19, 58:13
**consideration** [2] - 22:5, 47:19
**considerations** [1] - 39:5
**considered** [5] -

12:6, 56:9, 57:4, 60:12, 65:11

**considering** [1] - 51:20

**consistent** [1] - 53:18

**consisting** [1] - 8:21

**constantly** [1] - 24:6

**constitute** [2] - 57:7, 57:12

**constitutes** [1] - 74:4

**Constitution** [3] - 2:7, 65:8, 74:14

**constitutional** [2] - 25:18, 25:20

**constrict** [1] - 54:21

**construction** [1] - 68:4

**construe** [1] - 57:11

**construed** [2] - 51:21, 56:14

**consulted** [1] - 63:12

**consumed** [1] - 7:17

**CONT'D** [1] - 2:1

**contain** [2] - 17:17, 51:1

**contains** [1] - 64:15

**contend** [1] - 50:22

**contends** [1] - 67:9

**context** [3] - 52:15, 55:4, 64:7

**continuance** [1] - 44:2

**continuances** [3] - 44:4, 44:10, 44:11

**continue** [1] - 40:22

**contrary** [1] - 70:17

**control** [3] - 42:21, 42:24, 67:17

**controls** [1] - 71:5

**conversation** [1] - 21:25

**convicted** [1] - 64:22

**cordoned** [1] - 61:6

**cordoned-off** [1] - 61:6

**corner** [1] - 24:14

**corporate** [2] - 55:1, 55:7

**Corporation** [1] - 52:7

**correct** [7] - 5:11, 12:13, 30:13, 30:15, 38:6, 38:8, 49:19

**corruptly** [4] - 51:17, 55:20, 55:21, 56:1

**counsel** [4] - 3:4, 32:10, 34:13, 37:24

**count** [8] - 12:1, 30:9, 40:18, 56:11,

57:5, 57:12, 68:20

**Count** [21] - 4:15, 4:16, 4:18, 4:19, 4:20, 11:22, 30:19, 49:2, 49:3, 49:5, 49:6, 49:7, 49:8, 49:10, 49:11, 50:10, 50:13, 50:15, 60:22, 60:24, 61:1

**counted** [1] - 41:5

**counteract** [1] - 44:13

**country** [1] - 20:13

**Counts** [5] - 11:20, 50:7, 50:11, 60:7, 60:24

**course** [2] - 48:20, 69:12

**court** [7] - 24:24, 27:25, 28:18, 33:20, 41:17, 43:11, 57:22

**Court** [119] - 2:6, 2:6, 9:9, 12:16, 14:10, 14:12, 14:17, 14:24, 14:25, 15:8, 15:19, 16:17, 18:5, 18:18, 19:19, 21:13, 21:16, 22:18, 22:24, 23:7, 24:8, 25:19, 26:13, 26:21, 28:5, 28:6, 28:11, 28:14, 28:22, 29:11, 29:21, 29:25, 31:2, 31:6, 31:9, 31:16, 31:17, 31:19, 32:14, 32:22, 33:2, 33:16, 33:17, 34:7, 34:17, 34:21, 34:22, 35:1, 35:2, 35:4, 35:21, 36:18, 36:23, 36:25, 37:8, 38:2, 38:11, 38:21, 38:24, 39:1, 39:6, 39:23, 43:4, 43:6, 43:11, 43:22, 44:19, 44:21, 45:4, 46:2, 46:13, 47:16, 47:24, 49:22, 50:14, 51:19, 52:2, 52:5, 53:16, 53:22, 54:5, 54:15, 55:3, 55:17, 56:8, 56:15, 57:8, 57:10, 57:14, 58:12, 58:22, 59:11, 62:2, 63:4, 63:9, 64:18, 65:2, 66:4, 66:13, 66:14, 66:16, 67:1, 67:8, 67:15, 68:4, 68:11, 68:19, 68:21, 69:25, 70:8, 70:10, 70:18, 71:2, 71:3, 74:12, 74:13

**COURT** [124] - 1:1,

3:9, 3:13, 3:17, 4:6, 4:8, 4:10, 5:6, 5:13, 5:15, 6:1, 6:3, 6:7, 6:10, 6:13, 6:15, 6:17, 6:19, 6:22, 6:24, 7:2, 7:4, 7:7, 7:9, 7:12, 7:14, 7:17, 7:20, 7:22, 7:24, 8:1, 8:4, 8:7, 8:12, 8:14, 8:18, 8:20, 8:25, 9:2, 9:6, 9:8, 9:14, 9:18, 9:20, 9:24, 10:3, 10:7, 10:11, 10:15, 10:18, 10:22, 11:1, 11:4, 12:23, 13:15, 13:23, 14:1, 14:5, 14:8, 16:19, 17:14, 17:25, 21:18, 23:1, 23:4, 25:10, 25:24, 26:7, 26:9, 27:4, 27:20, 28:25, 29:6, 30:11, 30:17, 31:25, 33:5, 33:14, 35:14, 36:1, 36:8, 36:21, 37:14, 38:4, 38:7, 38:25, 39:7, 40:5, 40:7, 40:24, 41:6, 41:9, 41:12, 41:14, 41:23, 42:1, 42:10, 42:13, 42:18, 42:23, 45:11, 45:17, 45:23, 46:1, 46:4, 46:18, 46:25, 48:1, 48:3, 48:7, 48:11, 48:16, 48:22, 49:16, 49:21, 60:1, 60:3, 71:20, 71:22, 71:24, 72:8, 72:10, 72:15, 72:19

**Court's** [10] - 13:12, 14:22, 19:24, 22:5, 45:25, 56:19, 67:3, 70:16, 70:21, 70:23

**courthouse** [14] - 13:21, 19:13, 24:7, 25:11, 25:14, 26:5, 27:2, 27:7, 27:13, 27:17, 27:18, 29:2, 29:15, 37:4

**courthouses** [2] - 17:23, 20:13

**COURTROOM** [3] - 3:1, 4:13, 48:25

**courtroom** [3] - 13:17, 32:4, 59:24

**courts** [4] - 28:3, 35:3, 44:3, 56:3

**cover** [2] - 52:12, 56:22

**covered** [1] - 56:25

**credulity** [1] - 56:23

**crime** [3] - 52:25, 53:24, 57:1

**criminal** [2] - 51:23, 69:18

**Criminal** [5] - 1:3, 3:2, 4:14, 49:1, 65:9

**criminality** [1] - 55:7

**criminalize** [1] - 58:19

**criminalizes** [1] - 59:1

**cross** [2] - 11:13, 50:1

**cross-examination** [2] - 11:13, 50:1

**CRR** [3] - 2:5, 74:3, 74:12

**culture** [8] - 19:12, 25:14, 27:2, 27:7, 27:13, 27:18, 32:4, 37:3

**cut** [1] - 41:6

## D

**d)** [1] - 45:12

**D)** [1] - 46:22

**D.C** [12] - 1:6, 1:23, 2:8, 27:9, 27:15, 27:24, 54:23, 55:23, 61:12, 65:7, 67:12, 74:14

**danger** [1] - 44:10

**dangerous** [1] - 47:11

**date** [6] - 14:17, 14:18, 15:7, 31:17, 34:6

**Dated** [1] - 74:10

**dates** [1] - 66:9

**days** [20] - 26:3, 26:4, 26:6, 26:10, 35:17, 35:21, 36:16, 38:12, 38:15, 45:2, 45:15, 45:19, 46:10, 66:3, 66:7, 67:11, 67:25, 71:7, 72:20

**deadline** [1] - 72:13

**deal** [3] - 16:6, 29:18, 39:21

**dealing** [1] - 42:20

**dealings** [1] - 42:16

**dealt** [2] - 28:22, 30:2

**debated** [1] - 58:4

**December** [2] - 55:11, 55:16

**decide** [2] - 45:19, 69:10

**decided** [8] - 20:6, 28:17, 29:19, 45:15, 47:18, 60:4, 67:15, 69:11

**decision** [4] - 15:20, 23:17, 49:17, 58:5

**decisions** [4] - 22:22, 69:5, 70:15, 70:20

**Defendant** [11] - 10:4, 10:19, 11:4, 11:17, 18:6, 36:17, 43:12, 64:21, 65:10, 72:25

**DEFENDANT** [41] - 1:21, 2:2, 5:25, 6:2, 6:9, 6:11, 6:12, 6:14, 6:16, 6:18, 6:21, 6:23, 7:1, 7:3, 7:6, 7:8, 7:11, 7:13, 7:15, 7:19, 7:21, 7:23, 7:25, 8:3, 8:6, 8:11, 8:13, 8:17, 8:19, 8:24, 9:1, 9:5, 9:7, 9:12, 9:13, 9:17, 9:19, 10:25, 11:3, 49:15, 49:20

**defendant** [3] - 52:21, 53:1, 64:22

**defendant's** [1] - 66:2

**Defendant's** [7] - 19:18, 24:5, 51:22, 51:25, 54:12, 59:21, 62:20

**Defendants** [18] - 1:7, 3:21, 5:7, 6:5, 6:6, 31:1, 50:4, 50:17, 50:19, 53:13, 53:20, 66:6, 66:10, 68:1, 68:18, 69:6, 69:23, 71:13

**defendants** [4] - 21:1, 24:6, 24:8

**Defendants'** [1] - 70:24

**DEFENDER** [1] - 1:22

**Defender's** [1] - 12:5

**defense** [13] - 11:23, 18:13, 21:22, 23:6, 34:13, 35:23, 37:1, 37:9, 37:24, 38:14, 45:6, 67:8, 68:23

**define** [2] - 52:4, 55:7

**defines** [2] - 57:15, 62:8

**definitely** [1] - 23:19

**definition** [4] - 57:16, 57:25, 58:24, 62:12

**Delaware** [1] - 20:21
**delay** [9] - 28:14,
36:9, 36:15, 37:10,
37:19, 38:12, 44:1,
45:13, 70:4
**delays** [1] - 32:17
**deliver** [1] - 7:15
**demands** [1] - 44:15
**Democratic** [1] -
27:16
**demonstrating** [2] -
4:20, 49:7
**denial** [4] - 67:3,
67:5, 67:6, 70:21
**denied** [8] - 66:14,
66:16, 67:1, 68:8,
68:11, 71:2, 71:3,
71:4
**deny** [3] - 50:14,
60:21, 71:7
**denying** [2] - 30:21,
70:10
**department** [1] -
59:4
**deprive** [1] - 64:20
**DEPUTY** [3] - 3:1,
4:13, 48:25
**describe** [1] - 59:17
**described** [1] - 60:15
**designate** [1] - 63:17
**designation** [1] -
29:17
**designed** [2] - 47:21,
64:22
**destroying** [2] -
52:22, 57:4
**destruction** [6] -
31:3, 49:10, 51:12,
52:12, 53:15, 55:6
**detail** [3] - 31:1,
44:16, 65:11
**detailed** [1] - 44:12
**determinations** [1] -
64:12
**determine** [3] - 9:10,
23:23, 29:5
**determining** [1] -
31:9
**development** [1] -
51:10
**dictates** [1] - 67:10
**Dictionary** [6] -
52:11, 52:19, 57:19,
57:23, 62:8, 62:11
**difference** [2] - 22:6,
31:4
**different** [25] - 12:2,
16:7, 17:22, 17:23,
18:3, 18:22, 19:5,
19:6, 22:1, 24:6,

25:14, 27:8, 34:13,
38:23, 41:16, 52:18,
52:23, 53:1, 53:3,
53:25, 59:13, 60:17,
60:18, 60:19
**differentiated** [1] -
28:15
**difficult** [3] - 16:21,
17:18, 44:7
**difficulties** [1] -
19:23
**directly** [1] - 56:1
**disadvantages** [3] -
9:15, 9:21, 10:8
**disagrees** [2] - 52:3,
65:2
**discovery** [6] - 5:1,
20:4, 32:16, 33:9,
70:23, 71:14
**discuss** [2] - 23:12,
72:3
**discussed** [4] - 9:14,
9:20, 10:7, 21:10
**discussion** [1] -
40:22
**dismiss** [34] - 11:20,
11:22, 13:13, 14:19,
15:2, 29:25, 30:9,
30:18, 31:18, 31:19,
39:2, 44:21, 47:24,
50:7, 50:8, 50:10,
50:11, 50:13, 56:10,
60:22, 60:23, 65:22,
65:23, 66:4, 66:10,
66:17, 66:23, 67:5,
67:17, 68:19, 69:24,
70:7, 71:5
**dismissal** [5] - 31:7,
31:9, 64:1, 64:10,
70:16
**dismissed** [3] - 39:3,
70:8, 70:18
**dismissing** [1] -
71:10
**disorder** [1] - 59:20
**disorderly** [5] - 4:18,
4:19, 49:5, 49:6, 61:2
**dispose** [2] - 15:22,
34:6
**disposition** [4] -
36:12, 37:21, 46:16,
46:21
**disrupt** [1] - 60:9
**disruption** [1] -
58:19
**disruptive** [3] - 4:18,
49:5, 61:3
**distinction** [1] -
35:11
**distinguisher** [1] -

35:7
**DISTRICT** [3] - 1:1,
1:1, 1:12
**District** [7] - 2:6, 2:7,
20:12, 61:15, 62:24,
63:1, 74:13
**district** [15] - 27:25,
30:20, 34:17, 44:3,
44:5, 50:21, 55:11,
55:16, 56:9, 58:13,
62:5, 65:15, 66:19,
68:7, 74:13
**disturbance** [1] - 8:9
**division** [1] - 69:18
**docket** [1] - 26:19
**doctrine** [1] - 54:2
**document** [3] - 53:5,
55:6, 57:4
**documentary** [1] -
52:2
**documents** [3] -
52:22, 58:8, 73:4
**done** [5] - 18:15,
34:24, 46:9, 47:8,
48:12
**doubt** [3] - 9:24,
10:2, 10:11
**dragging** [1] - 27:7
**drew** [1] - 28:19
**drugs** [2] - 7:17, 8:9
**drywall** [2] - 7:13,
20:21
**Du** [2] - 64:25, 65:16
**due** [5] - 55:5, 59:2,
59:5, 70:24, 71:5
**duly** [1] - 6:6
**during** [4] - 36:17,
58:8, 62:9, 62:12

## E

**early** [2] - 18:14, 55:2
**easily** [1] - 28:22
**ECF** [7] - 49:23, 50:7,
50:12, 63:14, 66:11
**Edition** [5] - 52:11,
52:19, 57:20, 57:24,
62:10
**EDSON** [1] - 2:2
**Edson** [1] - 3:15
**Edwards** [1] - 74:12
**EDWARDS** [2] - 2:5,
74:3
**effect** [1] - 67:5
**effort** [1] - 32:8
**either** [9] - 10:19,
11:16, 38:10, 38:11,
45:3, 51:21, 52:21,
57:25, 71:3

**ejusdem** [1] - 54:2
**elapsed** [2] - 66:8,
71:7
**Electoral** [3] - 58:1,
59:17, 60:11
**electoral** [3] - 57:5,
57:12, 58:7
**element** [1] - 41:22
**elements** [1] - 65:17
**Elevator** [1] - 52:6
**Eleventh** [2] - 52:19,
57:23
**emotional** [1] - 8:8
**employment** [3] -
7:10, 7:11, 7:16
**enacted** [2] - 58:18,
60:17
**encompasses** [1] -
46:3
**encourage** [1] -
31:19
**end** [3] - 33:11,
40:20, 47:1
**ended** [1] - 44:2
**endedness** [1] -
44:14
**ends** [2] - 44:1, 44:9
**ends-of-justice** [2] -
44:1, 44:9
**enforced** [1] - 25:9
**enforcement** [2] -
64:4, 64:6
**engage** [3] - 68:12,
70:14, 70:19
**engaged** [1] - 58:20
**English** [4] - 6:25,
52:10, 57:19, 62:8
**Enron** [1] - 55:2
**ensure** [1] - 5:17
**enter** [3] - 5:4, 40:14,
63:6
**entered** [2] - 40:13,
59:24
**entering** [5] - 4:17,
49:4, 49:8, 60:9,
60:25
**entire** [3] - 14:16,
18:19, 25:7
**entitled** [5] - 8:14,
25:8, 25:15, 29:14
**especially** [5] - 12:4,
27:7, 64:6, 68:1,
71:12
**ESQ** [4] - 1:15, 1:18,
1:21, 2:2
**essential** [1] - 5:22
**essentially** [3] -
18:9, 21:23, 43:19
**EUGENE** [1] - 1:21
**Eugene** [1] - 3:11

**event** [3] - 34:15,
62:17, 69:25
**evidence** [16] -
11:12, 11:14, 14:20,
28:21, 29:4, 41:7,
47:14, 49:25, 50:2,
51:9, 51:13, 52:2,
52:13, 53:9, 53:15,
54:17
**evidentiary** [4] -
15:16, 29:4, 45:5,
58:10
**evil** [1] - 55:9
**ex** [1] - 52:7
**exactly** [3] - 35:21,
38:16, 43:25
**examination** [2] -
11:13, 50:1
**example** [1] - 15:16
**examples** [1] - 53:25
**exceed** [1] - 36:16
**except** [1] - 66:24
**exception** [5] -
17:18, 25:23, 27:2,
27:23, 45:10
**exceptionally** [1] -
42:17
**exceptions** [4] -
26:23, 26:25, 29:22
**exclude** [1] - 70:2
**excluded** [8] - 28:13,
28:16, 36:12, 36:15,
37:21, 43:17, 44:25,
70:5
**exclusion** [3] - 24:7,
44:1, 44:2
**exclusions** [2] -
26:15, 43:11
**exercise** [1] - 59:5
**exhibit** [2] - 72:13,
73:2
**exhibits** [1] - 73:3
**exists** [2] - 46:24,
55:13
**expand** [1] - 29:12
**expect** [4] - 13:8,
34:22, 34:23, 67:24
**expectation** [2] -
33:17, 43:3
**expedition** [1] - 13:8
**expeditiously** [2] -
32:9, 32:16
**expended** [1] - 35:19
**experience** [1] -
15:24
**explain** [1] - 23:1
**explicit** [1] - 18:6
**explicitly** [1] - 67:13
**express** [1] - 56:24
**extensive** [1] - 34:23

**extent** [4] - 12:17, 13:2, 20:2, 73:1
**extreme** [1] - 71:11

**F**

**F.2d** [1] - 55:23
**F.3d** [4] - 54:23, 64:25, 65:7, 67:12
**F.Supp.2d** [1] - 65:15
**F.Supp.3d** [1] - 63:8
**fabrication** [1] - 51:13
**facing** [3] - 22:6, 23:2, 24:18
**fact** [10] - 9:20, 14:23, 20:3, 25:21, 30:1, 39:11, 42:6, 43:9, 63:19, 69:16
**fact-gathering** [1] - 20:3
**fact-gathering/ briefing** [1] - 30:1
**factors** [1] - 44:16
**facts** [7] - 20:16, 40:1, 40:11, 56:4, 63:24, 64:23, 65:12
**factual** [3] - 15:10, 21:21, 30:6
**factually** [1] - 22:14
**failed** [1] - 65:17
**fails** [3] - 15:4, 22:10, 50:18
**fair** [4] - 45:4, 50:18, 52:25, 65:4
**fairness** [1] - 27:19
**fall** [1] - 16:12
**falling** [2] - 20:19, 20:20
**familiar** [2] - 32:4, 33:24
**far** [3] - 6:19, 25:12, 42:16
**farce** [1] - 21:7
**favor** [2] - 30:21, 56:15
**February** [7] - 16:2, 16:9, 18:21, 62:6, 66:14, 67:1, 70:21
**Federal** [2] - 12:5, 65:9
**federal** [2] - 31:3, 59:4
**FEDERAL** [1] - 1:21
**federally** [2] - 59:22, 60:13
**felony** [1] - 25:6
**felt** [2] - 12:25, 24:18

**few** [8] - 11:10, 12:24, 32:9, 47:16, 48:19, 62:16, 72:20, 72:23
**field** [1] - 27:10
**Fifth** [2] - 4:24, 64:12
**figure** [1] - 47:25
**file** [5] - 21:15, 39:18, 70:14, 73:6, 73:8
**filed** [19] - 8:15, 14:17, 15:2, 16:6, 16:12, 17:3, 21:15, 30:22, 33:25, 45:1, 66:7, 66:10, 66:17, 66:19, 66:22, 68:2, 68:18, 69:23, 70:12
**filing** [11] - 15:7, 23:18, 25:25, 28:12, 29:8, 36:10, 37:10, 37:20, 37:25, 38:15, 70:2
**filings** [1] - 12:3
**final** [1] - 22:25
**finally** [6] - 11:14, 51:17, 55:19, 56:8, 59:16, 65:23
**financial** [1] - 51:13
**findings** [5] - 26:14, 43:18, 44:15, 44:17, 63:19
**FIRM** [1] - 2:2
**first** [18] - 20:16, 20:17, 20:22, 23:11, 23:12, 25:10, 26:5, 26:17, 30:12, 45:24, 47:16, 49:23, 50:11, 50:17, 52:5, 62:1, 69:22
**fishing** [1] - 13:8
**flesh** [1] - 23:23
**flexibility** [1] - 44:6
**floor** [1] - 55:14
**fluidity** [1] - 53:13
**focus** [1] - 51:1
**focuses** [1] - 63:5
**folks** [5] - 19:14, 24:21, 47:11, 47:15, 73:10
**follow** [1] - 28:1
**followed** [1] - 25:9
**following** [7] - 28:20, 48:15, 49:22, 50:15, 52:3, 59:25, 61:25
**follows** [2] - 36:15, 44:19
**folly** [1] - 13:21
**FOR** [4] - 1:1, 1:15, 1:21, 2:2
**forced** [1] - 64:18
**foregoing** [1] - 74:4

**forget** [2] - 13:23, 43:15
**forgetting** [1] - 4:3
**forgot** [1] - 71:1
**forgotten** [1] - 33:7
**form** [2] - 33:2, 55:14
**formal** [5] - 4:21, 4:24, 5:3, 49:13, 58:2
**former** [1] - 51:5
**formidable** [1] - 54:18
**forms** [2] - 10:23, 11:7
**forth** [3] - 29:22, 30:4, 43:6
**fortunate** [1] - 47:3
**forward** [7] - 3:4, 4:11, 18:18, 19:11, 19:12, 19:17, 32:12
**Fourth** [1] - 15:15
**frankly** [7] - 5:10, 19:12, 22:1, 25:11, 25:15, 47:15, 70:25
**free** [1] - 5:21
**Friedrich** [1] - 56:3
**front** [4] - 25:2, 36:5, 43:11, 47:4
**frustration** [1] - 42:19
**full** [2] - 6:8, 74:5
**function** [2] - 59:22, 60:13
**future** [1] - 65:5

**G**

**gather** [1] - 40:16
**gathering** [2] - 20:3, 20:16
**gathering/briefing** [1] - 30:1
**general** [1] - 17:10
**General** [2] - 51:6, 55:17
**generally** [2] - 15:17, 47:6
**generis** [1] - 54:2
**gentlemen** [6] - 4:11, 5:6, 5:10, 6:7, 11:8, 25:3
**genuinely** [2] - 16:21, 17:7
**given** [7] - 12:19, 14:24, 18:3, 33:24, 46:9, 55:13, 64:7
**gloss** [2] - 55:22, 55:25
**go-by** [1] - 17:11
**Government** [47] -

3:5, 11:11, 12:17, 13:4, 16:3, 16:8, 16:11, 17:1, 18:9, 18:21, 19:19, 20:5, 20:9, 20:10, 20:11, 22:13, 24:9, 28:9, 29:12, 29:16, 29:19, 29:23, 30:2, 31:22, 32:7, 32:20, 32:25, 34:9, 36:22, 38:12, 39:13, 40:12, 42:4, 43:1, 43:10, 45:3, 47:6, 47:11, 47:17, 49:23, 59:19, 60:7, 61:13, 66:1, 67:4, 69:14, 71:6
**government** [1] - 49:11
**GOVERNMENT** [1] - 1:15
**Government's** [22] - 12:19, 14:15, 14:21, 14:25, 15:9, 17:7, 19:24, 21:2, 21:12, 22:7, 22:17, 22:21, 38:22, 41:15, 43:19, 66:15, 67:2, 70:22, 71:3, 71:4, 72:19
**governmental** [1] - 40:1
**grade** [1] - 6:21
**grand** [5] - 64:11, 64:19, 64:21, 64:24, 65:11
**grant** [3] - 44:4, 50:5, 72:19
**granted** [1] - 68:9
**granting** [2] - 17:10, 44:9
**gray** [1] - 22:20
**Great** [1] - 4:10
**great** [2] - 42:15, 42:20
**greatly** [1] - 31:22
**grievous** [2] - 56:17, 56:20
**Griffen** [1] - 63:8
**Griffin** [1] - 63:15
**grounds** [14] - 4:17, 4:19, 44:9, 49:4, 49:6, 49:9, 49:12, 50:8, 61:1, 61:3, 61:5, 61:7, 61:17, 63:3
**group** [2] - 40:17, 42:7
**guarantee** [1] - 31:14
**guess** [12] - 15:18, 16:19, 17:16, 30:2, 37:4, 39:13, 42:25, 45:11, 45:19, 46:4,

64:19, 72:9
**guiding** [1] - 27:1
**guilt** [1] - 9:10
**guilty** [2] - 5:4, 49:15
**gun** [1] - 28:2

**H**

**h)** [1] - 45:25
**H)** [1] - 45:25
**h)(1)(C** [2] - 46:9, 67:23
**h)(1)(D** [7] - 37:15, 37:17, 37:18, 38:7, 46:6, 46:15, 67:20
**h)(1)(D)** [1] - 46:8
**h)(1)(H** [8] - 37:17, 37:25, 38:4, 46:5, 46:7, 46:13, 67:20, 67:21
**half** [2] - 13:22, 23:24
**hand** [1] - 44:11
**handle** [1] - 3:24
**hands** [1] - 32:21
**hanging** [2] - 24:11, 25:4
**happy** [3] - 12:8, 12:10, 13:10
**hard** [3] - 37:4, 45:11, 46:8
**harmed** [1] - 31:22
**head** [2] - 24:12, 25:4
**hear** [10] - 3:25, 12:8, 12:10, 13:10, 21:17, 46:6, 68:25, 69:2, 69:21, 72:8
**heard** [3] - 58:4, 69:4, 72:17
**hearing** [47] - 15:1, 15:8, 15:15, 15:16, 15:19, 15:21, 15:22, 16:5, 16:15, 18:10, 21:5, 28:13, 28:15, 28:21, 28:24, 29:4, 29:5, 33:18, 36:11, 36:25, 37:2, 37:11, 37:20, 38:21, 43:2, 43:4, 43:7, 43:8, 45:5, 45:7, 57:23, 58:3, 66:13, 67:14, 67:17, 68:16, 69:9, 69:15, 69:16, 69:23, 70:2, 70:3, 70:13, 70:17, 70:18
**hearings** [6] - 17:2, 29:1, 34:1, 58:23, 68:22, 69:4

81

**heavily** [3] - 27:24, 50:19, 53:20
**held** [3] - 28:11, 48:16, 69:25
**help** [1] - 69:6
**helpful** [2] - 69:3, 69:21
**Henderson** [7] - 28:11, 28:20, 29:10, 37:7, 37:8, 38:11, 70:5
**hereby** [1] - 74:3
**higher** [1] - 31:14
**highly** [1] - 69:1
**hinder** [1] - 52:9
**hired** [1] - 20:18
**hiring** [1] - 20:17
**historical** [1] - 51:10
**history** [5] - 54:13, 54:20, 55:12, 58:17, 61:18
**hold** [3] - 16:4, 20:24, 68:16
**holding** [3] - 56:4, 57:3, 67:14
**honestly** [2] - 17:5, 17:8
**Honor** [67] - 3:1, 3:6, 3:12, 3:15, 4:5, 4:7, 4:9, 4:23, 5:2, 5:12, 5:14, 9:23, 10:2, 10:6, 10:10, 10:17, 10:21, 11:3, 12:15, 13:11, 16:4, 19:12, 23:3, 24:22, 26:20, 29:24, 30:8, 30:15, 30:16, 31:24, 32:2, 32:5, 32:6, 33:15, 35:22, 36:4, 36:5, 36:7, 36:22, 37:16, 38:6, 38:8, 38:11, 39:1, 39:3, 39:9, 40:2, 40:9, 41:1, 41:25, 42:3, 42:12, 44:24, 45:21, 47:1, 47:4, 47:23, 48:5, 48:20, 48:24, 49:20, 71:19, 71:21, 71:23, 72:4, 72:5, 72:18
**Honor's** [3] - 15:23, 17:19, 33:24
**HONORABLE** [1] - 1:11
**hope** [2] - 4:1, 32:10
**hopefully** [2] - 12:20, 32:7, 48:12
**hot** [2] - 33:22
**hot-button** [1] - 33:22
**hours** [3] - 7:18,

62:16, 62:18
**Hunter** [34] - 3:3, 3:16, 3:18, 5:3, 6:1, 6:17, 6:22, 7:2, 7:7, 7:14, 7:20, 8:12, 8:18, 8:25, 9:6, 9:18, 11:1, 11:5, 23:15, 23:20, 23:21, 23:25, 30:19, 31:2, 31:8, 31:11, 39:25, 40:13, 47:3, 48:25, 50:8, 50:9, 50:15, 65:25
**HUNTER** [25] - 1:6, 1:11, 2:2, 6:2, 6:12, 6:14, 6:18, 6:23, 7:3, 7:8, 7:15, 7:21, 7:23, 7:25, 8:3, 8:6, 8:13, 8:19, 9:1, 9:7, 9:13, 9:19, 11:3, 49:15, 49:20
**hunter** [1] - 6:12

**I**

**idea** [2] - 14:16, 47:8
**identify** [1] - 3:4
**illness** [1] - 8:8
**impact** [1] - 67:3
**impairs** [1] - 51:8
**impede** [1] - 57:2
**impeded** [1] - 41:4
**impedes** [2] - 53:2, 56:2
**impeding** [1] - 52:13
**implied** [1] - 65:13
**import** [1] - 59:11
**important** [1] - 22:4
**impose** [2] - 13:4, 58:24
**impression** [1] - 16:3
**inclined** [1] - 39:2
**include** [1] - 65:12
**included** [1] - 25:6
**includes** [1] - 61:14
**including** [4] - 4:4, 25:25, 59:7, 70:25
**inconsistent** [1] - 50:24
**incorporates** [1] - 62:3
**incredibly** [1] - 22:20
**incumbent** [1] - 22:23
**indeed** [7] - 53:22, 54:4, 58:7, 58:24, 68:1, 68:21, 69:5
**independently** [1] - 63:17
**Indiana** [1] - 1:22

**indicate** [1] - 70:16
**indicated** [1] - 54:22
**indication** [1] - 19:8
**indicted** [1] - 64:24
**indictment** [26] - 3:20, 4:15, 4:22, 5:4, 16:24, 49:2, 49:14, 49:19, 56:5, 60:22, 60:24, 61:2, 63:21, 64:10, 64:13, 64:20, 65:4, 65:10, 65:17, 65:19, 65:22, 65:24, 66:3, 71:10, 72:21
**indictments** [1] - 65:12
**individual** [1] - 42:19
**individuals** [4] - 27:16, 40:12, 40:17, 41:21
**individuals'** [2] - 20:6, 20:7
**influence** [1] - 57:1
**influences** [2] - 53:2, 56:2
**information** [7] - 13:2, 20:11, 22:19, 22:24, 26:24, 39:16, 63:22
**informed** [1] - 5:7
**informs** [1] - 46:7
**initial** [2] - 56:15, 68:13
**innocence** [1] - 9:10
**innovative** [1] - 45:9
**inquiry** [2] - 59:6
**inside** [1] - 40:16
**instance** [1] - 35:12
**instances** [1] - 41:20
**instead** [3] - 20:13, 20:15, 65:19
**integrity** [2] - 51:8, 55:6
**intend** [3] - 29:13, 42:13, 68:16
**intended** [3] - 21:15, 51:12, 62:15
**intending** [1] - 60:9
**intent** [2] - 41:7, 41:22
**interest** [2] - 19:18, 19:19
**interested** [1] - 17:7
**interesting** [1] - 12:10
**interests** [2] - 72:24, 72:25
**interference** [2] - 53:17, 59:17
**interfering** [1] - 53:9, 53:10, 57:6

**interim** [1] - 68:6
**interlocutory** [5] - 45:13, 45:15, 46:20, 67:23, 67:24
**International** [1] - 62:11
**interpret** [2] - 53:20, 54:3
**interpretation** [6] - 52:16, 53:12, 53:16, 53:18, 54:14, 57:9
**intervening** [1] - 70:20
**interview** [1] - 23:9
**investigation** [2] - 20:1, 59:6
**investigations** [1] - 55:7
**involve** [1] - 62:23
**involved** [1] - 63:24
**issue** [35] - 13:7, 13:9, 15:24, 16:10, 16:11, 16:18, 16:22, 17:4, 18:3, 30:1, 30:3, 31:5, 32:15, 32:24, 33:21, 33:22, 34:2, 34:20, 34:23, 35:4, 38:14, 38:17, 38:18, 39:19, 39:21, 41:18, 41:19, 46:6, 47:25, 58:13, 62:4, 63:14, 66:19, 67:3, 69:12
**issues** [7] - 12:24, 21:19, 23:19, 23:22, 38:24, 39:11, 39:22
**it'll** [1] - 12:21
**itself** [6] - 15:13, 34:14, 52:14, 53:11, 53:18, 57:7

**J**

**January** [8] - 25:13, 34:14, 47:10, 61:17, 61:22, 62:18, 68:8
**job** [1] - 31:11
**join** [1] - 30:23
**joined** [2] - 50:9, 65:25
**JUDGE** [1] - 1:12
**judge** [4] - 44:16, 58:13, 68:18, 69:11
**Judge** [6] - 50:20, 53:13, 56:3, 62:4, 62:15, 68:9
**judges** [10] - 13:20, 19:6, 28:23, 29:7, 44:5, 56:9, 66:18, 68:6, 68:8, 68:21

**judicial** [4] - 58:8, 58:25, 63:10, 68:13
**June** [5] - 71:25, 72:6, 73:1, 73:8, 73:9
**jurisdictions** [1] - 27:8
**jurors** [1] - 8:22
**jury** [27] - 3:24, 5:8, 5:15, 8:15, 8:20, 8:21, 9:3, 9:9, 9:15, 9:21, 10:1, 10:5, 10:8, 10:13, 10:16, 10:20, 10:22, 11:6, 12:16, 48:8, 49:18, 64:11, 64:19, 64:21, 64:24, 65:11, 72:1
**justice** [5] - 44:1, 44:9, 56:6, 58:16, 72:24
**justify** [1] - 69:9

**K**

**KEARNEY** [1] - 1:18
**Kearney** [4] - 3:7, 3:10, 32:15, 39:19
**keep** [1] - 41:18
**Keep** [1] - 29:8
**Kevin** [45] - 3:3, 3:11, 3:14, 4:13, 4:23, 5:24, 6:9, 6:15, 6:20, 6:25, 7:4, 7:10, 7:18, 8:10, 8:16, 8:23, 9:3, 9:10, 9:15, 10:24, 11:4, 21:20, 22:10, 23:9, 23:20, 23:21, 23:24, 39:24, 42:5, 47:2, 47:14, 50:6, 50:14, 51:2, 51:14, 55:19, 57:10, 58:15, 59:16, 60:7, 60:10, 60:23, 64:9, 65:24, 66:7
**KEVIN** [19] - 1:6, 1:21, 5:25, 6:9, 6:11, 6:16, 6:21, 7:1, 7:6, 7:11, 7:13, 7:19, 8:11, 8:17, 8:24, 9:5, 9:12, 9:17, 10:25
**kick** [1] - 26:15
**kind** [17] - 3:22, 4:2, 8:9, 16:14, 16:22, 17:11, 19:7, 20:25, 26:1, 26:16, 26:18, 29:1, 33:8, 37:4, 43:1, 69:7
**Kirk** [1] - 52:7
**knowing** [4] - 9:25, 10:12, 14:22, 44:8
**knowingly** [2] - 11:5,

63:6
**known** [2] - 21:10, 25:6
**knows** [4] - 14:10, 26:24, 27:15, 45:6

## L

**lack** [1] - 64:14
**language** [9] - 29:9, 38:10, 43:21, 45:8, 54:16, 59:1, 60:19, 62:24, 65:3
**Lanier** [1] - 51:24
**last** [9] - 7:18, 7:23, 13:23, 16:1, 32:20, 48:3, 68:2, 69:16, 72:23
**late** [1] - 55:2
**law** [8] - 19:9, 27:1, 35:10, 35:15, 36:2, 59:3, 64:3, 64:5
**Law** [2] - 52:19, 57:23
**LAW** [1] - 2:2
**laws** [1] - 27:5
**lay** [2] - 57:17, 57:25
**lead** [2] - 13:12, 57:3
**least** [6] - 15:23, 21:20, 22:18, 23:14, 23:25, 43:13
**left** [1] - 62:18
**legal** [9] - 15:17, 15:24, 16:22, 16:24, 20:4, 20:10, 20:16, 57:21, 57:25
**legally** [1] - 19:4
**legislative** [5] - 54:13, 54:20, 55:12, 58:17, 61:18
**legitimate** [1] - 22:7
**legitimately** [1] - 32:25
**lengthy** [1] - 68:9
**lenity** [3] - 56:14, 56:16, 57:8
**less** [1] - 25:12
**letter** [3] - 19:2, 39:13, 42:14
**level** [1] - 31:15
**liberty** [2] - 20:6, 20:7
**limine** [8] - 11:11, 11:14, 12:14, 30:13, 49:23, 49:24, 49:25, 50:2
**limit** [4] - 46:14, 46:16, 46:20, 46:23
**limited** [6] - 27:21,

1:11
**McHugh** [1] - 62:4
**mean** [20] - 12:1, 12:15, 19:3, 19:6, 19:12, 19:17, 20:18, 21:2, 24:6, 25:3, 25:11, 27:18, 29:16, 35:14, 41:15, 42:6, 43:14, 45:12, 45:17, 71:14
**meaning** [7] - 35:16, 52:6, 53:21, 54:3, 54:6, 57:17, 71:15
**meanings** [1] - 59:13
**means** [8] - 8:21, 52:17, 52:18, 52:24, 57:11, 57:18, 57:21, 61:5
**meant** [1] - 44:5
**measure** [1] - 44:6
**mechanic** [3] - 24:23, 64:3, 64:5
**medication** [1] - 7:24
**medicine** [2] - 7:18, 7:21
**meet** [2] - 22:10, 72:2
**memorandum** [1] - 51:5
**mental** [1] - 8:8
**mentioned** [3] - 32:19, 37:24, 38:24
**merely** [1] - 63:20
**met** [1] - 29:23
**middle** [2] - 6:10, 6:13
**might** [1] - 23:18
**mill** [1] - 69:8
**Miller** [2] - 50:20, 53:14
**mind** [1] - 31:16
**minds** [1] - 64:19
**minor** [1] - 53:22
**minute** [1] - 70:8
**minutes** [3] - 21:25, 48:11, 48:19
**miracle** [1] - 45:14
**misdemeanor** [2] - 22:7, 40:8
**misdemeanors** [2] - 22:2, 22:20
**moment** [4] - 4:12, 11:18, 13:15, 72:16
**Montgomery** [2] - 55:15, 56:12
**months** [4] - 15:24, 16:15, 47:2, 47:16
**moot** [1] - 71:3
**moreover** [1] - 70:3
**morning** [16] - 3:6, 3:9, 3:10, 3:12, 3:13,

29:21, 37:7, 52:1, 62:9, 62:12
**Lindeen** [1] - 54:22
**line** [3] - 28:19, 42:20, 54:11
**linked** [1] - 52:16
**Lisa** [1] - 74:12
**LISA** [2] - 2:5, 74:3
**list** [2] - 54:4, 54:9
**listed** [1] - 53:24
**listen** [1] - 27:13
**lists** [3] - 72:14, 73:3
**litigate** [1] - 34:22
**litigated** [3] - 34:2, 34:19, 39:19
**litigation** [7] - 33:21, 34:15, 35:3, 35:12, 36:23, 37:4, 39:17
**live** [1] - 17:3
**lived** [1] - 61:11
**local** [3] - 24:23, 64:3, 64:5
**location** [2] - 50:3, 62:25
**locations** [1] - 11:15
**look** [5] - 26:18, 35:4, 41:9, 45:12, 56:11
**looked** [1] - 23:13
**looking** [6] - 4:2, 45:24, 52:15, 59:13, 60:19, 65:6
**looks** [1] - 52:5
**loopholes** [1] - 51:12
**lose** [2] - 21:9, 43:16
**lost** [3] - 25:12, 26:16, 31:11
**Louisiana** [1] - 1:17
**love** [1] - 30:5

## M

**ma'am** [1] - 41:24
**machine** [1] - 42:20
**malfeasance** [1] - 55:1
**manner** [1] - 53:1
**March** [4] - 50:21, 66:16, 68:11, 70:9
**Market** [1] - 2:3
**masks** [1] - 13:17
**materials** [1] - 7:15
**matter** [13] - 13:6, 33:8, 33:10, 33:11, 33:18, 34:24, 34:25, 36:25, 37:1, 38:13, 39:18, 43:18, 56:15
**mattered** [1] - 22:14
**McFADDEN** [1] -

3:14, 3:15, 3:17, 3:18, 4:2, 8:5, 30:16, 30:17, 45:22, 62:18, 73:4
**most** [5] - 12:9, 44:2, 53:8, 54:18, 68:8
**motion** [91] - 11:14, 11:19, 11:20, 11:21, 11:25, 12:7, 12:9, 12:20, 13:13, 14:19, 15:2, 15:7, 15:8, 15:15, 15:22, 16:12, 16:14, 17:2, 17:11, 18:11, 18:12, 18:14, 18:24, 21:3, 21:5, 21:8, 25:1, 25:25, 28:2, 28:7, 28:12, 28:13, 29:1, 30:9, 30:18, 30:21, 30:22, 32:22, 33:7, 33:10, 33:18, 34:7, 36:10, 36:11, 36:12, 37:10, 37:12, 37:19, 37:20, 38:20, 39:14, 39:18, 43:8, 43:15, 49:24, 49:25, 50:2, 50:6, 50:7, 50:9, 50:10, 50:12, 50:14, 50:15, 51:2, 51:14, 56:10, 58:21, 59:18, 60:21, 60:23, 61:21, 65:23, 66:7, 66:15, 67:2, 67:10, 68:19, 69:8, 69:12, 69:17, 69:19, 69:22, 70:3, 70:22, 71:3, 71:4, 71:8, 72:20
**motions** [55] - 3:25, 11:10, 11:11, 12:13, 14:17, 14:18, 15:14, 15:17, 16:6, 17:14, 17:18, 18:17, 21:4, 23:18, 28:15, 28:17, 28:20, 28:21, 30:13, 45:1, 45:9, 45:10, 49:22, 49:23, 50:5, 50:11, 66:10, 66:13, 66:17, 66:20, 66:22, 67:5, 67:14, 67:16, 68:2, 68:3, 68:7, 68:8, 68:12, 68:16, 68:17, 68:18, 68:21, 69:15, 69:16, 69:24, 70:7, 70:11, 70:12, 70:13, 70:18, 70:24, 71:5
**motivated** [1] - 47:4
**move** [3] - 32:9, 32:11, 32:15
**moving** [1] - 18:18
**MR** [60] - 3:11, 3:15, 4:7, 4:9, 4:23, 5:2,

5:12, 5:14, 9:23, 10:2, 10:6, 10:10, 10:14, 10:17, 12:15, 13:11, 13:19, 13:25, 14:3, 14:6, 14:9, 17:13, 17:16, 18:2, 21:19, 23:3, 23:5, 25:18, 26:5, 26:8, 26:20, 27:5, 27:21, 29:3, 29:7, 30:15, 30:18, 42:3, 42:12, 42:15, 42:22, 42:25, 45:16, 45:21, 45:24, 46:2, 46:12, 46:19, 47:1, 48:2, 48:5, 48:10, 48:20, 48:24, 60:2, 71:21, 71:23, 72:9, 72:12, 72:18
**MS** [25] - 3:6, 4:5, 10:21, 32:2, 33:13, 33:15, 35:16, 36:3, 36:9, 36:22, 37:16, 38:6, 38:8, 39:1, 39:9, 40:6, 40:9, 40:25, 41:8, 41:11, 41:13, 41:15, 41:25, 71:19, 72:4
**multiple** [1] - 56:8
**multitasking** [1] - 60:4
**must** [10] - 8:22, 36:14, 37:22, 44:16, 56:14, 58:6, 59:12, 65:10, 65:12, 66:4

## N

**name** [2] - 6:10, 6:13
**names** [2] - 6:8, 24:22
**narcotic** [1] - 8:9
**narrow** [3] - 51:1, 51:6, 63:4
**narrowing** [2] - 55:22, 55:25
**natural** [2] - 51:7, 53:8
**necessarily** [3] - 30:4, 65:13, 73:7
**necessary** [7] - 28:14, 28:17, 34:11, 36:24, 37:2, 37:11, 43:6
**need** [11] - 3:19, 5:9, 5:16, 6:3, 14:25, 19:11, 29:4, 47:19, 48:17, 68:5, 72:1
**needed** [1] - 33:1
**needing** [1] - 38:12
**needs** [3] - 24:9,

30:4, 45:2
**nervous** [1] - 32:3
**never** [3] - 14:10, 15:23, 46:9
**new** [1] - 3:19
**New** [5] - 1:17, 1:19, 34:18, 62:11
**newspaper** [2] - 24:24, 25:2
**next** [1] - 54:12
**Next** [1] - 54:25
**nice** [1] - 14:3
**Nichols** [2] - 53:14, 68:9
**Nichols's** [1] - 50:20
**night** [1] - 7:23
**nine** [1] - 22:2
**Ninth** [1] - 65:1
**ninth** [1] - 6:21
**NLRB** [1] - 55:16
**nobody** [4] - 18:8, 18:10, 21:4, 21:8
**none** [1] - 42:23
**nonetheless** [1] - 31:23
**nonexcludable** [1] - 66:8
**nontrivial** [1] - 68:3
**Northwest** [3] - 1:22, 2:7, 74:14
**Nos** [1] - 66:11
**note** [2] - 31:11, 48:9
**noted** [4] - 54:15, 56:3, 63:11, 70:10
**notes** [4] - 56:8, 56:15, 58:12, 74:5
**nothing** [7] - 24:11, 25:3, 29:16, 32:23, 48:5, 58:17, 58:22
**notice** [9] - 25:1, 25:20, 28:7, 45:5, 50:18, 63:10, 64:11, 65:4, 65:10
**notion** [2] - 18:7, 58:18
**novel** [9] - 19:4, 20:9, 34:12, 34:20, 35:4, 38:18, 41:19, 45:9, 68:3
**novelty** [4] - 35:13, 36:23, 38:24, 69:20
**November** [5] - 15:3, 16:6, 16:12, 17:3, 33:19
**number** [7] - 5:16, 16:25, 19:25, 23:15, 23:19, 33:24, 69:13
**numbered** [1] - 54:11

**O**

**object** [5] - 53:4, 53:5, 53:6, 54:3, 54:4
**objection** [1] - 58:9
**objections** [2] - 58:4, 58:10
**objects** [1] - 52:23
**observing** [1] - 13:21
**obstruct** [3] - 52:4, 52:9, 57:1
**obstruction** [22] - 4:15, 12:1, 16:20, 21:21, 22:8, 22:13, 22:21, 23:2, 30:6, 30:8, 30:9, 34:18, 39:7, 40:1, 49:2, 52:1, 56:6, 56:11, 57:6, 57:7, 59:2, 68:20
**obstruction-of-justice** [1] - 56:6
**obstructive** [1] - 56:22
**obstructs** [2] - 53:2, 56:1
**obvious** [1] - 38:9
**obviously** [16] - 12:4, 15:15, 16:22, 17:19, 34:7, 35:20, 39:5, 39:17, 40:3, 40:13, 41:4, 45:25, 63:19, 63:24, 72:5
**occur** [2] - 52:25, 67:24
**occurred** [2] - 62:17, 62:21
**occurring** [1] - 40:3
**occurs** [1] - 26:11
**October** [6] - 66:10, 66:12, 66:18, 67:15, 68:2, 69:24
**odd** [1] - 22:16
**OF** [5] - 1:1, 1:3, 1:10, 1:11, 1:21
**offense** [7] - 22:5, 36:14, 37:22, 39:4, 65:3, 65:5, 65:18
**offer** [1] - 39:23
**office** [2] - 20:14, 61:12
**Office** [1] - 12:5
**OFFICE** [3] - 1:15, 1:18, 1:21
**officer** [2] - 21:25, 58:4
**officers** [4] - 40:22, 40:24, 40:25, 41:1
**Official** [1] - 2:6
**official** [20] - 4:16,

49:3, 53:2, 53:5, 53:7, 53:10, 53:17, 56:2, 56:23, 56:25, 57:2, 57:12, 57:15, 57:22, 58:1, 58:3, 60:10, 60:12, 60:14, 74:12
**often** [1] - 55:8
**OHM** [47] - 1:21, 3:11, 4:7, 4:23, 5:12, 9:23, 10:2, 10:6, 12:15, 13:11, 13:19, 13:25, 14:3, 14:6, 14:9, 17:13, 17:16, 18:2, 21:19, 23:3, 23:5, 25:18, 26:5, 26:8, 26:20, 27:5, 27:21, 29:3, 29:7, 42:3, 42:12, 42:15, 42:22, 42:25, 45:16, 45:21, 45:24, 46:2, 46:12, 46:19, 47:1, 48:2, 48:10, 60:2, 71:21, 72:9, 72:12
**Ohm** [25] - 3:11, 3:13, 4:6, 5:11, 9:20, 12:4, 12:12, 13:10, 16:19, 18:1, 30:23, 31:20, 32:4, 32:19, 37:5, 39:8, 39:12, 39:17, 42:1, 48:16, 48:18, 59:24, 60:1, 71:20, 72:8
**Ohm's** [1] - 11:19
**old** [2] - 6:15, 27:11
**on-the-record** [1] - 44:15
**once** [1] - 35:3
**one** [32] - 11:11, 11:12, 13:14, 13:15, 16:22, 17:5, 17:15, 21:19, 23:15, 24:13, 24:15, 25:10, 25:22, 28:20, 28:25, 31:2, 31:12, 31:13, 32:6, 38:21, 39:5, 40:2, 46:21, 47:8, 47:14, 47:17, 52:22, 59:2, 68:9, 69:8, 69:9, 69:14
**One** [1] - 1:19
**ones** [1] - 19:22
**ongoing** [1] - 70:23
**open** [3] - 43:11, 44:2, 44:14
**open-ended** [1] - 44:2
**open-endedness** [1] - 44:14
**opinion** [3] - 50:20, 53:14, 68:9

**opinions** [2] - 66:21, 68:13
**opportunities** [1] - 31:11
**opportunity** [9] - 11:24, 18:13, 19:5, 23:17, 33:2, 35:4, 43:13, 68:25, 69:2
**oppose** [6] - 11:17, 12:18, 12:20, 24:7, 72:9, 72:18
**opposed** [1] - 50:4
**opposing** [2] - 12:13, 30:13
**opposition** [1] - 11:16
**oral** [2] - 4:1, 60:5
**orally** [1] - 15:19
**order** [3] - 43:1, 45:4, 70:8
**orderly** [1] - 60:10
**ordinary** [1] - 52:5
**original** [1] - 14:14
**originally** [1] - 68:1
**Orleans** [2] - 1:17, 34:18
**otherwise** [7] - 15:3, 52:17, 53:21, 54:21, 57:3, 61:6
**outfit** [1] - 31:14
**outlines** [1] - 62:7
**outside** [5] - 61:14, 62:23, 62:25
**outstanding** [3] - 3:25, 4:25, 32:22
**outweigh** [1] - 72:24
**overcome** [1] - 54:19
**overly** [1] - 63:4
**Oxford** [3] - 52:10, 57:19, 62:8
**Oxley** [1] - 58:17

**P**

**Page** [18] - 51:2, 51:24, 52:8, 54:1, 54:6, 54:23, 55:17, 55:23, 56:18, 59:14, 60:20, 61:21, 63:8, 64:25, 65:7, 65:15, 67:12, 67:15
**page** [2] - 11:10, 25:2
**Pages** [3] - 59:18, 62:5, 70:6
**paper** [1] - 28:18
**papers** [1] - 30:10
**parading** [2] - 4:20, 49:7

**paragraph** [1] - 54:11
**part** [2] - 22:4, 26:12
**participate** [1] - 9:3
**particular** [5] - 23:2, 35:11, 35:12, 38:23, 42:8
**particularly** [1] - 31:12
**particulars** [2] - 39:14, 39:18
**parties** [10] - 34:21, 34:22, 66:24, 68:12, 70:11, 70:19, 70:25, 72:23, 73:2, 73:6
**passage** [1] - 52:10
**passed** [1] - 31:17
**passing** [1] - 56:13
**past** [1] - 62:22
**paused** [1] - 18:8
**Pence** [1] - 61:10
**pending** [9] - 18:24, 31:12, 33:7, 59:3, 67:5, 68:11, 68:21, 70:24, 71:5
**Pennsylvania** [1] - 2:4
**people** [9] - 8:21, 13:16, 14:2, 21:1, 27:7, 42:7, 47:9, 47:15, 47:17
**people's** [1] - 24:22
**percent** [1] - 47:15
**performance** [1] - 59:22
**perhaps** [3] - 12:9, 12:12, 64:23
**period** [14] - 34:10, 35:8, 35:15, 35:17, 35:18, 35:20, 35:24, 36:16, 38:1, 38:2, 44:23, 62:12, 66:25, 70:4
**permanent** [1] - 61:12
**perpetrated** [1] - 55:2
**perpetrators** [1] - 63:5
**person** [1] - 61:8
**persons** [1] - 58:20
**perspective** [2] - 21:20, 24:1
**persuasive** [1] - 67:9
**Philadelphia** [1] - 2:4
**phrase** [1] - 54:3
**physical** [2] - 49:9, 49:12
**picketing** [2] - 4:21, 49:8

**pills** [1] - 7:18
**place** [5] - 7:16, 56:25, 61:23, 64:6, 65:3
**plain** [5] - 29:9, 45:7, 54:16, 62:24, 70:1
**Plaintiff** [1] - 1:4
**plan** [1] - 73:6
**plastic** [2] - 13:20, 13:24
**plausible** [1] - 51:7
**plausibly** [1] - 63:22
**plays** [1] - 53:21
**Plaza** [1] - 1:19
**plea** [2] - 5:4, 25:6
**plead** [2] - 4:22, 49:14
**pleading** [1] - 14:21
**pleadings** [1] - 19:24
**plumbing** [1] - 31:14
**podium** [2] - 32:3, 48:23
**Poindexter** [3] - 55:20, 55:22, 56:9
**Poindexter's** [1] - 56:4
**point** [14] - 12:10, 16:4, 16:8, 17:10, 17:16, 21:22, 23:4, 29:6, 30:7, 30:21, 39:8, 42:25, 43:21, 63:25
**pointed** [1] - 33:16
**pointing** [1] - 70:11
**points** [1] - 62:2
**police** [3] - 40:24, 40:25
**Police** [9] - 11:15, 13:6, 50:3, 61:23, 63:13, 63:16, 63:23, 64:4, 64:8
**political** [1] - 58:20
**portions** [1] - 12:18
**position** [16] - 14:16, 14:25, 15:4, 15:9, 15:11, 18:22, 21:12, 22:17, 24:4, 32:24, 34:14, 38:4, 38:22, 41:16, 43:12, 43:20
**possible** [1] - 4:1
**possibly** [2] - 67:24, 69:5
**postdated** [1] - 68:13
**posted** [1] - 61:6
**postponed** [1] - 15:7
**power** [1] - 59:5
**Poydras** [1] - 1:16
**practical** [1] - 13:6
**practice** [4] - 12:25, 14:22, 15:23, 47:22

**pragmatically** [1] - 15:18
**preceding** [1] - 67:22
**prejudice** [19] - 21:16, 22:10, 22:25, 23:5, 24:3, 30:1, 31:5, 31:7, 31:8, 31:10, 31:18, 31:19, 39:3, 47:25, 66:16, 68:12, 70:8, 70:11, 71:11
**prejudicial** [1] - 23:6
**premark** [1] - 73:3
**prepare** [1] - 72:23
**preparing** [2] - 47:20, 71:14
**preposterous** [1] - 18:7
**present** [2] - 62:14, 63:16
**presented** [1] - 64:24
**preservation** [1] - 51:13
**president** [5] - 61:7, 61:20, 61:21, 62:1, 62:15
**President** [1] - 61:10
**presiding** [1] - 58:3
**pressing** [1] - 14:13
**pretrial** [5] - 14:23, 32:20, 36:10, 37:10, 37:19
**PRETRIAL** [1] - 1:10
**pretty** [2] - 16:23, 23:16
**prevent** [1] - 52:9
**primary** [1] - 15:20
**principal** [1] - 55:8
**printer** [1] - 45:22
**problematic** [1] - 12:18
**procedural** [3] - 44:14, 44:18, 44:20
**Procedure** [1] - 65:9
**proceeding** [27] - 4:16, 36:17, 40:3, 40:10, 49:3, 52:13, 52:14, 53:2, 53:5, 53:7, 53:10, 53:11, 53:17, 56:2, 56:25, 57:2, 57:6, 57:7, 57:15, 57:16, 57:17, 57:18, 57:21, 58:2, 59:4, 60:14
**proceedings** [7] - 13:5, 40:1, 48:15, 56:23, 58:9, 59:25, 74:6
**Proceedings** [1] - 73:11
**process** [2] - 28:5,

58:4
**processes** [1] - 17:19
**processing** [1] - 20:4
**produced** [3] - 23:14, 58:8, 74:6
**producing** [1] - 32:16
**progress** [1] - 52:10
**prohibition** [1] - 52:1
**prohibits** [1] - 60:8
**prompt** [5] - 36:12, 37:21, 46:15, 46:21, 70:3
**prong** [1] - 22:10
**proper** [2] - 59:3, 59:5
**property** [3] - 31:3, 49:10, 49:11
**propose** [1] - 11:23
**proposition** [2] - 22:16, 60:16
**prosecuted** [1] - 29:15
**prosecution** [3] - 20:5, 42:17, 65:5
**prosecutions** [2] - 19:4, 47:7
**prosecutors** [1] - 20:17
**protected** [3] - 59:22, 60:13, 61:8
**protectee** [2] - 62:23, 63:6
**protection** [2] - 64:21, 65:4
**proud** [1] - 24:17
**provide** [5] - 22:24, 33:2, 39:12, 39:20, 73:2
**provides** [2] - 64:10, 65:4
**providing** [1] - 39:16
**provision** [3] - 44:15, 51:1, 67:21
**PUBLIC** [1] - 1:21
**Public** [1] - 12:5
**public** [1] - 72:25
**public's** [1] - 19:18
**purpose** [6] - 14:18, 15:1, 15:20, 19:2, 54:19, 54:25
**purposes** [3] - 57:13, 57:15, 60:18
**pursue** [1] - 25:20
**pursued** [1] - 29:16
**pursuing** [1] - 20:9
**pushed** [1] - 25:14
**put** [5] - 15:18, 20:6, 29:22, 61:23, 65:10

## Q

**qualify** [1] - 57:6
**quasi** [2] - 58:25, 59:10
**quasi-adjudicatory** [1] - 59:10
**quasi-judicial** [1] - 58:25
**questions** [6] - 5:16, 5:18, 5:21, 40:18, 68:3, 71:17
**quick** [2] - 17:6, 66:9
**quickly** [1] - 68:4
**quite** [3] - 39:17, 69:5, 70:17
**quote** [41] - 43:24, 50:24, 52:5, 52:17, 52:18, 52:23, 52:24, 53:4, 53:6, 53:23, 54:1, 54:17, 54:22, 55:5, 55:9, 55:12, 55:14, 56:5, 56:7, 56:16, 57:18, 57:21, 58:2, 58:10, 58:16, 58:20, 59:21, 59:23, 61:6, 61:11, 61:19, 62:9, 62:10, 62:15, 62:20, 63:5, 65:8, 65:14, 67:14, 67:15, 70:1
**quote-unquote** [1] - 50:24
**quotes** [1] - 64:25

## R

**raise** [1] - 39:11
**raised** [5] - 17:1, 32:25, 38:15, 53:13, 68:3
**rally** [1] - 58:20
**rarely** [1] - 54:20
**rather** [1] - 60:14
**rational** [3] - 17:20, 18:2
**RDR** [3] - 2:5, 74:3, 74:12
**re** [1] - 30:3
**re-brings** [1] - 30:3
**reach** [1] - 55:8
**reached** [2] - 58:6, 58:13
**read** [6] - 7:4, 37:16, 46:7, 53:8, 56:5, 65:12
**reading** [10] - 4:22, 4:24, 5:3, 43:23,

49:13, 51:6, 51:7, 51:15, 54:16, 63:4
**ready** [1] - 20:15
**real** [2] - 17:1, 23:22
**realized** [1] - 48:17
**really** [10] - 12:25, 16:17, 19:7, 20:25, 27:21, 28:25, 29:22, 43:24, 71:11, 72:20
**reason** [4] - 15:25, 34:3, 34:5, 70:18
**reasonable** [8] - 17:20, 33:17, 34:8, 43:3, 43:7, 44:24, 70:5
**reasonably** [8] - 28:14, 28:16, 34:11, 36:16, 36:24, 37:2, 37:11, 51:22
**reasons** [8] - 29:24, 47:9, 47:23, 50:16, 52:3, 60:21, 62:1, 71:6
**rebuttal** [1] - 42:2
**receive** [1] - 23:8
**received** [5] - 8:7, 23:9, 23:11, 24:1
**recent** [1] - 70:14
**recently** [2] - 8:8, 23:8
**recess** [1] - 48:14
**recognize** [1] - 31:21
**recognized** [3] - 44:3, 44:19, 68:4
**reconsider** [1] - 18:17
**record** [4] - 3:5, 44:15, 53:4, 68:22
**records** [2] - 51:14, 58:8
**recount** [1] - 62:7
**REED** [26] - 1:15, 3:6, 4:5, 10:21, 32:2, 33:13, 33:15, 35:16, 36:3, 36:9, 36:22, 37:16, 38:6, 38:8, 39:1, 39:9, 40:6, 40:9, 40:25, 41:8, 41:11, 41:13, 41:15, 41:25, 71:19, 72:4
**Reed** [7] - 3:7, 3:9, 4:4, 10:18, 32:1, 71:17, 72:3
**refer** [2] - 53:24, 54:17
**reference** [2] - 56:13, 62:3
**referenced** [2] - 37:7, 68:10
**referencing** [1] -

40:19
**refile** [1] - 66:20
**regarding** [8] - 11:11, 11:13, 11:14, 49:24, 50:1, 50:2, 63:2, 64:14
**regardless** [1] - 71:9
**regular** [1] - 7:24
**reject** [3] - 16:17, 21:13, 61:25
**rejected** [1] - 37:8
**rejecting** [1] - 12:7
**rejects** [2] - 57:14, 58:22
**rel** [1] - 52:7
**related** [2] - 51:12, 70:23
**relates** [3] - 32:13, 32:14, 67:23
**relationship** [1] - 64:7
**relatively** [3] - 23:16, 28:4, 53:22
**relevance** [3] - 45:20, 46:5, 46:10
**relevant** [6] - 13:2, 51:22, 66:9, 67:20, 70:15
**relied** [4] - 27:24, 54:2, 54:20, 65:16
**relies** [1] - 55:20
**rely** [4] - 14:16, 30:9, 50:19, 53:20
**relying** [1] - 22:7
**remaining** [4] - 4:17, 49:4, 49:9, 60:25
**remedy** [1] - 71:11
**remember** [1] - 72:13
**remembered** [1] - 71:2
**remind** [1] - 16:1
**render** [1] - 51:16
**reply** [2] - 21:15
**reported** [1] - 25:1
**REPORTED** [1] - 2:5
**Reporter** [2] - 2:6, 74:12
**request** [2] - 4:25, 45:3
**require** [15] - 13:16, 15:14, 16:14, 28:15, 28:21, 43:10, 46:21, 57:8, 62:24, 67:14, 67:17, 70:4, 73:4, 73:7
**required** [7] - 15:16, 15:22, 29:3, 38:21, 43:8, 64:12, 70:12
**requires** [4] - 19:14, 19:18, 51:8, 66:2

**researching** [1] - 20:16
**resembled** [1] - 58:25
**residual** [1] - 50:22
**resolve** [4] - 18:14, 18:16, 21:5, 68:5
**resolved** [2] - 15:25, 18:25
**resolving** [2] - 14:19, 15:2
**respect** [4] - 27:13, 30:18, 30:22, 69:1
**respects** [1] - 53:25
**respond** [1] - 42:14
**responses** [1] - 39:20
**rest** [4] - 13:20, 30:19, 30:21, 53:15
**rested** [1] - 35:23
**restrict** [1] - 61:17, 61:20, 63:3
**restricted** [13] - 4:17, 4:18, 49:4, 49:5, 49:9, 60:25, 61:3, 61:5, 61:6, 63:6, 63:7, 63:14, 63:18
**restricting** [1] - 63:7
**restrictions** [2] - 20:7, 61:22
**result** [2] - 56:22, 57:4
**resulting** [4] - 36:10, 37:19, 44:1, 45:13
**results** [2] - 58:6, 58:7
**returned** [1] - 64:20
**reveals** [1] - 64:13
**review** [1] - 66:9
**rightfully** [2] - 35:2, 39:25
**rights** [11] - 4:25, 11:6, 14:11, 19:16, 20:22, 21:9, 25:9, 27:18, 29:14, 49:18, 66:1
**rigidly** [1] - 44:10
**rioters** [1] - 41:12
**roadmap** [1] - 3:22
**role** [1] - 53:22
**Room** [1] - 2:8
**Rossello** [1] - 60:19
**routine** [2] - 28:2, 28:3
**rule** [6] - 12:3, 15:19, 28:3, 56:14, 56:16, 57:8
**ruled** [8] - 11:25, 33:20, 58:5, 66:19, 68:7, 68:19, 69:4,

69:14
**Rules** [1] - 65:9
**rules** [2] - 27:17, 28:1
**ruling** [8] - 4:1, 22:25, 35:18, 35:22, 37:12, 48:19, 63:10, 70:23
**rulings** [2] - 30:20, 35:1, 60:5, 71:18
**run** [2] - 18:23, 69:8
**run-of-the-mill-type** [1] - 69:8
**running** [2] - 16:2, 16:5
**rush** [1] - 69:9
**Russello** [1] - 59:14

## S

**S-C-O-T-T** [1] - 6:14
**Saint** [1] - 1:19
**sake** [1] - 26:15
**sanction** [2] - 31:6, 31:23
**Sandlin** [1] - 55:10, 56:3, 56:7, 58:11
**Sarbanes** [1] - 58:17
**Sarbanes-Oxley** [1] - 58:17
**satisfy** [1] - 41:22
**saved** [1] - 18:24
**saw** [2] - 12:3, 44:10
**schedule** [2] - 16:15, 70:12
**scheme** [1] - 44:12
**Schindler** [1] - 52:6
**school** [1] - 6:19
**science** [2] - 13:21, 14:8
**scope** [1] - 55:8
**Scott** [1] - 6:12
**sealing** [1] - 12:18
**searching** [1] - 42:8
**seat** [2] - 11:8, 49:21
**SEC** [1] - 54:23
**second** [4] - 11:12, 25:22, 56:13, 63:2
**Second** [1] - 62:10
**secondly** [1] - 23:5
**secrecy** [1] - 13:4
**Secret** [16] - 11:13, 13:5, 50:1, 61:8, 61:16, 61:19, 61:24, 62:23, 63:3, 63:11, 63:12, 63:17, 63:21, 63:23, 64:3, 64:8
**section** [1] - 69:19
**Section** [2] - 52:1,

53:14
**sections** [3] - 46:14, 52:16, 60:17
**secure** [1] - 64:22
**see** [19] - 12:4, 12:5, 14:2, 14:20, 17:8, 23:14, 23:17, 24:22, 36:4, 41:23, 45:20, 46:4, 46:18, 63:24, 67:22, 69:3, 69:7, 71:24, 73:9
**SEEFRIED** [44] - 1:6, 1:6, 1:11, 1:21, 2:2, 5:25, 6:2, 6:9, 6:11, 6:12, 6:14, 6:16, 6:18, 6:21, 6:23, 7:1, 7:3, 7:6, 7:8, 7:11, 7:13, 7:15, 7:19, 7:21, 7:23, 7:25, 8:3, 8:6, 8:11, 8:13, 8:17, 8:19, 8:24, 9:1, 9:5, 9:7, 9:12, 9:13, 9:17, 9:19, 10:25, 11:3, 49:15, 49:20
**Seefried** [80] - 3:3, 3:11, 3:14, 3:16, 3:18, 4:13, 4:23, 5:3, 5:24, 6:1, 6:9, 6:12, 6:15, 6:17, 6:20, 6:22, 6:25, 7:2, 7:5, 7:7, 7:10, 7:14, 7:18, 7:20, 8:10, 8:12, 8:16, 8:18, 8:23, 8:25, 9:4, 9:6, 9:11, 9:16, 9:18, 10:24, 11:1, 11:5, 14:10, 14:12, 21:7, 22:10, 23:9, 23:15, 23:20, 23:21, 23:22, 23:25, 27:9, 29:14, 29:21, 30:19, 31:2, 31:8, 31:11, 39:24, 39:25, 40:13, 42:5, 47:3, 47:14, 48:25, 50:8, 57:10, 58:15, 59:16, 60:8, 60:10, 64:9, 65:16, 65:18, 65:24, 65:25, 66:6, 67:9
**Seefried's** [15] - 19:21, 21:20, 23:24, 25:5, 50:6, 50:9, 50:14, 50:15, 51:2, 51:14, 55:19, 60:23, 62:22, 63:2, 66:7
**Seefrieds** [10] - 20:20, 40:20, 54:25, 56:13, 56:21, 56:24, 66:17, 66:18, 66:22, 67:6
**Seefrieds'** [1] - 71:8
**seeing** [2] - 17:7,

45:12
**seem** [1] - 18:22
**selection** [1] - 9:3
**semicolon** [1] - 54:10
**Senate** [1] - 40:21
**senators** [1] - 40:19
**sense** [8] - 14:7, 16:20, 18:7, 18:15, 57:17, 57:21, 64:3, 64:6
**sent** [1] - 69:18
**sentence** [1] - 54:5
**separate** [1] - 54:10
**separated** [1] - 54:9
**separately** [1] - 54:11
**series** [1] - 57:19
**serious** [1] - 39:4
**seriously** [1] - 24:9
**seriousness** [2] - 22:5, 22:9
**seriousness-of-the-charge** [1] - 22:9
**served** [1] - 34:6
**Service** [16] - 11:13, 13:5, 50:1, 61:8, 61:16, 61:19, 61:24, 62:23, 63:3, 63:12, 63:17, 63:21, 63:24, 64:3, 64:8
**session** [1] - 58:6
**set** [9] - 14:17, 15:8, 16:5, 16:15, 18:12, 30:4, 43:6, 66:13, 72:13
**sets** [1] - 40:7
**setting** [3] - 58:25, 59:10, 63:13
**several** [2] - 66:18, 68:20
**shall** [3] - 28:13, 36:12, 37:21
**shift** [1] - 43:1
**short** [1] - 67:19
**show** [2] - 15:20, 63:25
**shunned** [1] - 24:20
**sic]** [1] - 28:8
**sided** [1] - 17:1
**sign** [1] - 11:7
**signage** [1] - 64:5
**signature** [2] - 10:24, 11:2
**similar** [7] - 11:25, 41:10, 53:24, 62:11, 68:7, 68:20, 69:17
**similarly** [3] - 31:1, 56:10, 57:3
**simple** [1] - 16:18

**simply** [1] - 38:16
**sit** [3] - 24:4, 43:15, 49:17
**situated** [1] - 31:1
**situation** [9] - 16:7, 19:4, 24:10, 27:23, 28:1, 28:5, 35:7, 43:25, 62:14
**six** [2] - 15:24, 16:15
**Sixth** [1] - 4:24
**small** [1] - 24:21
**smaller** [1] - 24:23
**solely** [1] - 28:17
**someone** [1] - 69:18
**something's** [1] - 52:9
**somewhat** [2] - 35:6, 47:3
**sorry** [9] - 5:9, 13:15, 18:24, 23:1, 37:14, 45:21, 46:1, 60:2, 72:4
**sort** [15] - 13:3, 13:4, 16:13, 17:22, 19:5, 21:6, 22:16, 23:23, 24:4, 24:17, 29:12, 32:11, 32:21, 32:24, 46:16
**sound** [1] - 44:9
**sounds** [2] - 41:6, 42:13
**Southwest** [1] - 55:17
**speaking** [1] - 15:17
**specific** [6] - 11:14, 13:1, 26:22, 50:2, 51:16, 65:13
**specifically** [1] - 40:11, 59:19, 70:10
**specificity** [1] - 64:17
**specifics** [1] - 64:14
**specifies** [1] - 44:15
**specify** [1] - 59:9
**specifying** [1] - 65:3
**Speedy** [21] - 13:12, 15:6, 17:17, 18:4, 19:2, 19:3, 19:8, 19:13, 19:17, 25:22, 29:10, 36:9, 37:9, 37:18, 44:20, 44:22, 47:21, 65:24, 66:1, 67:6, 70:1
**speedy** [20] - 4:25, 11:20, 12:9, 14:11, 15:6, 18:8, 18:22, 19:16, 20:22, 25:8, 25:14, 30:22, 31:6, 31:17, 32:14, 32:24, 43:11, 50:8, 72:6,

72:25
**spell** [1] - 6:13
**spirit** [2] - 12:20, 19:2
**squarely** [1] - 63:16
**STA** [1] - 28:9
**stand** [2] - 48:18, 48:20
**standard** [2] - 43:5
**standing** [2] - 26:2, 51:21
**standpoint** [1] - 33:23
**start** [6] - 3:19, 3:23, 12:12, 51:19, 54:15, 72:7
**started** [2] - 20:5, 39:10
**starting** [2] - 3:5, 6:8
**state** [1] - 33:16
**statements** [3] - 42:5, 42:7, 55:14
**states** [1] - 37:18
**States** [22] - 2:6, 3:2, 3:8, 50:20, 51:3, 51:4, 51:23, 52:7, 55:9, 55:15, 55:23, 59:14, 61:19, 62:4, 63:8, 63:13, 64:25, 65:6, 65:14, 67:11, 70:6, 74:13
**STATES** [5] - 1:1, 1:3, 1:12, 1:15, 1:18
**stating** [2] - 38:17, 38:19
**status** [2] - 66:12, 67:16
**statute** [28] - 26:19, 27:22, 29:22, 33:10, 36:1, 36:3, 36:6, 37:7, 37:17, 43:2, 45:8, 50:25, 51:21, 52:4, 52:15, 53:8, 54:16, 54:21, 56:17, 57:1, 57:9, 57:13, 61:18, 62:24, 63:5, 71:1, 71:15
**statute's** [3] - 54:18, 54:19, 55:8
**statutes** [2] - 55:8, 56:7
**statutory** [3] - 60:17, 65:2, 68:4
**stay** [1] - 62:16
**stenographic** [1] - 74:5
**step** [1] - 60:5
**stigma** [1] - 24:12
**still** [7] - 13:21, 13:24, 24:2, 30:7,

31:21, 41:18, 48:16
**stop** [1] - 45:21
**stopped** [1] - 67:7
**stopping** [1] - 56:24
**store** [3] - 24:14, 24:15, 24:19
**stores** [1] - 24:15
**straightforward** [1] - 69:13
**strain** [1] - 56:23
**strained** [1] - 57:9
**strategy** [2] - 33:4, 44:13
**Street** [2] - 1:16, 2:3
**strictly** [1] - 57:11
**strictness** [3] - 44:14, 44:18, 44:20
**stronger** [1] - 22:12
**structure** [1] - 54:13
**structured** [1] - 44:10
**struggling** [1] - 45:20
**subcommittees** [1] - 59:8
**subjecting** [1] - 27:16
**submission** [1] - 30:20
**submissions** [1] - 28:18
**Subsection** [3] - 50:22, 50:23, 70:4
**subsection** [3] - 45:24, 46:19, 46:24
**subsections** [1] - 67:22
**substantially** [1] - 68:7
**substantive** [1] - 44:14
**subterfuge** [1] - 38:10
**subvert** [1] - 44:11
**sudden** [1] - 18:23
**sufficient** [1] - 65:21
**suggest** [3] - 12:8, 26:3, 51:7
**suggested** [3] - 67:19, 67:21, 68:15
**suggesting** [6] - 10:4, 10:16, 10:19, 33:6, 68:23
**suggests** [2] - 58:23, 65:10
**Suite** [3] - 1:16, 1:23, 2:3
**summer** [1] - 66:25
**super** [1] - 53:13
**super-fluidity** [1] -

53:13
**superseding** [8] - 4:15, 49:2, 49:13, 60:24, 61:2, 64:13, 65:19, 72:21
**supervision** [1] - 47:12
**support** [2] - 51:6, 54:13
**supports** [3] - 51:10, 54:16, 58:18
**supposed** [2] - 26:13, 27:25
**Supreme** [6] - 28:11, 37:8, 43:6, 43:22, 55:17, 69:25
**surplusage** [1] - 51:16
**surprise** [2] - 56:21, 56:24
**surprising** [1] - 60:17
**surveillance** [2] - 11:15, 50:3
**suspicious** [1] - 32:23
**swear** [2] - 6:3, 6:5
**sworn** [1] - 6:6
**system** [1] - 47:13

**T**

**talks** [2] - 23:20, 23:21
**tampering** [1] - 54:17
**tangible** [3] - 52:2, 54:3, 54:4
**tantamount** [1] - 39:13
**target** [1] - 55:1
**tax** [1] - 20:14
**team** [1] - 42:17
**technical** [2] - 26:19, 31:20
**technicalities** [1] - 26:1
**technicality** [3] - 20:25, 21:2, 26:2
**temporarily** [6] - 61:9, 61:11, 62:2, 62:8, 62:19, 62:25
**temporary** [1] - 61:20
**ten** [4] - 22:1, 22:2, 25:12, 25:21
**term** [2] - 54:6, 61:5
**terms** [9] - 23:5, 28:19, 30:8, 31:8,

47:20, 51:16, 59:17, 70:1
**test** [2] - 22:11, 43:1
**testified** [1] - 63:12
**text** [8] - 19:8, 27:22, 54:13, 54:20, 54:22, 61:18, 63:4
**THE** [133] - 1:1, 1:11, 1:15, 1:21, 1:21, 2:2, 2:2, 3:1, 3:9, 3:13, 3:17, 4:6, 4:8, 4:10, 4:13, 5:6, 5:13, 5:15, 6:1, 6:3, 6:7, 6:10, 6:13, 6:15, 6:17, 6:19, 6:22, 6:24, 7:2, 7:4, 7:7, 7:9, 7:12, 7:14, 7:17, 7:20, 7:22, 7:24, 8:1, 8:4, 8:7, 8:12, 8:14, 8:18, 8:20, 8:25, 9:2, 9:6, 9:8, 9:14, 9:18, 9:20, 9:24, 10:3, 10:7, 10:11, 10:15, 10:18, 10:22, 11:1, 11:4, 12:23, 13:15, 13:23, 14:1, 14:5, 14:8, 16:19, 17:14, 17:25, 21:18, 23:1, 23:4, 25:10, 25:24, 26:7, 26:9, 27:4, 27:20, 28:25, 29:6, 30:11, 30:17, 31:25, 33:5, 33:14, 35:14, 36:1, 36:8, 36:21, 37:14, 38:4, 38:7, 38:25, 39:7, 40:5, 40:7, 40:24, 41:6, 41:9, 41:12, 41:14, 41:23, 42:1, 42:10, 42:13, 42:18, 42:23, 45:11, 45:17, 45:23, 46:1, 46:4, 46:18, 46:25, 48:1, 48:3, 48:7, 48:11, 48:16, 48:22, 48:25, 49:16, 49:21, 60:1, 60:3, 71:20, 71:22, 71:24, 72:8, 72:10, 72:15, 72:19
**theories** [1] - 20:10
**theory** [1] - 30:6
**therefore** [4] - 59:12, 62:19, 69:7, 71:7
**Thereupon** [2] - 48:14, 59:24
**they've** [3] - 19:22, 20:17, 71:13
**thinking** [1] - 3:23
**Third** [3] - 52:11, 57:20, 62:10
**third** [2] - 57:10,

58:15
**Thomas** [1] - 56:18
**thoughtful** [2] - 62:3, 68:9
**three** [3] - 12:13, 49:23, 50:5
**throughout** [1] - 14:13
**tied** [1] - 52:2
**timed** [1] - 14:23
**timeframe** [1] - 19:7
**today** [3] - 3:23, 30:4, 30:24
**today's** [1] - 15:7
**toll** [6] - 45:7, 66:15, 67:2, 67:10, 70:22, 73:1
**tolled** [9] - 28:9, 34:10, 35:25, 37:9, 66:25, 67:4, 70:7, 71:1, 72:6
**tolling** [4] - 33:10, 67:7, 70:24, 71:5
**took** [1] - 35:21
**top** [2] - 25:21
**topic** [2] - 33:23, 70:15
**touching** [1] - 31:5
**touchstone** [1] - 51:20
**track** [4] - 25:7, 25:12, 26:16, 37:5
**tracked** [1] - 59:1
**transcript** [2] - 74:5, 74:6
**TRANSCRIPT** [1] - 1:10
**trappings** [1] - 58:2
**travel** [1] - 25:1
**traveling** [1] - 62:23
**treatment** [1] - 8:7
**TREVOR** [1] - 1:11
**trial** [57] - 4:25, 5:8, 5:16, 8:15, 8:20, 9:9, 9:15, 9:22, 10:1, 10:5, 10:9, 10:13, 10:16, 10:20, 10:22, 11:6, 11:21, 12:9, 12:16, 12:22, 13:23, 14:11, 14:17, 15:6, 16:5, 18:8, 19:16, 20:22, 21:14, 23:16, 24:22, 25:8, 25:9, 25:15, 26:4, 26:5, 28:18, 30:22, 31:6, 31:17, 32:14, 32:24, 36:13, 37:22, 41:20, 43:11, 47:20, 49:18, 50:8, 66:3, 71:14, 72:6, 72:20, 72:23, 72:25,

73:4, 73:6
**Trial** [21] - 13:13, 15:6, 17:17, 18:4, 19:2, 19:3, 19:9, 19:13, 19:17, 25:22, 29:10, 36:9, 37:9, 37:18, 44:20, 44:22, 47:21, 65:24, 66:2, 67:6, 70:1
**trials** [3] - 12:24, 25:11, 25:13
**tribunals** [1] - 58:23
**tricky** [2] - 26:12, 68:3
**tried** [2] - 8:21, 12:23
**trip** [1] - 27:10
**true** [5] - 26:7, 40:5, 40:6, 74:4, 74:5
**trust** [1] - 14:8
**truth** [1] - 17:5
**try** [3] - 9:9, 25:15, 32:5
**trying** [4] - 18:18, 20:21, 27:8, 46:4
**turn** [3] - 50:11, 54:12, 65:23
**turning** [1] - 60:23
**twenty** [1] - 25:21
**two** [7] - 10:22, 13:22, 23:19, 24:14, 41:21, 52:23, 59:5
**type** [4] - 8:8, 44:2, 55:1, 69:8
**typical** [3] - 16:22, 17:11, 68:17
**typically** [1] - 24:7

## U

**U.S** [10] - 11:15, 50:1, 50:3, 51:4, 51:5, 51:24, 52:7, 56:18, 59:14, 70:6
**ultimately** [1] - 17:1
**unaware** [1] - 34:16
**uncertainty** [1] - 56:17
**unconstitutionally** [2] - 50:18, 51:18
**under** [25] - 16:3, 16:9, 30:5, 35:16, 36:9, 36:18, 37:14, 37:18, 38:2, 38:7, 38:13, 44:3, 45:7, 47:12, 53:16, 56:11, 57:25, 59:3, 59:6, 59:20, 66:1, 66:15, 66:25, 67:5, 67:10
**understandable** [1] -

20:2
**understood** [1] - 46:25
**unique** [3] - 34:15, 35:6, 41:21
**UNITED** [5] - 1:1, 1:3, 1:12, 1:15, 1:18
**united** [1] - 2:6
**United** [21] - 3:2, 3:7, 50:20, 51:3, 51:4, 51:23, 52:7, 55:9, 55:14, 55:22, 59:14, 61:19, 62:4, 63:8, 63:13, 64:25, 65:6, 65:14, 67:11, 70:6, 74:13
**unlawful** [1] - 62:21
**unless** [1] - 45:4
**unlike** [2] - 17:6, 38:20
**unnecessary** [2] - 32:17, 70:17
**unpersuaded** [1] - 51:19
**unquote** [1] - 50:24
**unreasonable** [3] - 38:2, 38:16, 38:19
**unusual** [2] - 16:23, 19:4
**unusually** [1] - 44:6
**up** [8] - 5:10, 13:24, 19:16, 32:21, 40:17, 40:20, 48:16, 63:13
**updated** [2] - 66:21, 66:22
**USC** [7] - 57:14, 59:1, 59:20, 60:8, 60:15, 61:1, 66:2

## V

**vague** [4] - 50:18, 51:18, 55:20, 55:21
**vagueness** [1] - 51:20
**valid** [2] - 5:17, 5:22
**Vanegas** [1] - 15:3
**various** [2] - 56:6, 68:6
**verbs** [6] - 52:11, 53:3, 53:4, 53:6, 54:8, 56:22
**verdict** [1] - 8:22
**vernacular** [1] - 71:16
**versus** [20] - 3:2, 50:20, 51:3, 51:4, 51:23, 52:7, 54:22, 55:10, 55:15, 55:17,

55:22, 56:18, 59:14, 62:4, 63:8, 64:25, 65:6, 65:14, 67:11, 70:5
**Vice** [1] - 61:10
**vice** [3] - 61:21, 62:1, 62:15
**video** [5] - 11:12, 23:12, 23:14, 23:24, 49:25
**videotaped** [1] - 23:9
**views** [1] - 12:17
**vigorously** [1] - 34:2
**violate** [1] - 52:21
**violated** [1] - 66:1
**violating** [1] - 52:23
**violation** [8] - 31:7, 31:10, 31:20, 31:21, 44:21, 60:8, 61:1, 61:4
**violence** [2] - 49:10, 49:12
**violently** [1] - 40:13
**visited** [1] - 62:25
**visiting** [4] - 61:9, 61:11, 62:2, 62:19
**visits** [1] - 61:20
**voluntarily** [1] - 11:5
**voluntary** [2] - 9:25, 10:12
**vote** [7] - 40:18, 41:5, 57:5, 57:12, 58:1, 62:17
**vs** [1] - 1:5

## W

**wait** [2] - 15:24, 17:21
**waited** [1] - 12:2
**waive** [9] - 4:21, 4:24, 5:3, 5:8, 10:4, 10:16, 10:20, 49:13, 49:17
**waived** [3] - 11:6, 14:11, 21:11
**waiver** [10] - 3:24, 5:15, 5:17, 5:22, 9:9, 9:25, 10:12, 11:7, 12:16, 23:7
**waivers** [2] - 10:22, 18:6
**walked** [1] - 21:24
**walls** [1] - 64:5
**wants** [2] - 15:19, 21:17
**warning** [1] - 52:25
**Washington** [5] - 1:6, 1:23, 2:8, 27:15,

74:14
**wave** [1] - 32:21
**ways** [3] - 26:1, 26:3, 28:2
**wear** [1] - 13:16
**Webster's** [1] - 62:10
**wee** [1] - 62:18
**week** [1] - 23:24
**weeks** [1] - 72:23
**weight** [1] - 55:13
**weighty** [1] - 17:4
**welcome** [2] - 13:17, 60:1
**Westlaw** [4] - 50:21, 55:10, 55:15, 62:5
**whole** [2] - 20:18, 50:25
**Williamson** [1] - 65:6
**window** [2] - 21:24, 40:14
**wise** [1] - 39:17
**wish** [4] - 4:22, 5:7, 49:14, 72:17
**wished** [1] - 70:14
**with-prejudice** [1] - 22:25
**witness** [2] - 63:12, 73:3
**witnesses** [2] - 11:13, 50:1
**wondering** [1] - 48:18
**word** [12] - 41:19, 48:4, 51:17, 52:17, 53:21, 53:23, 54:10, 55:20, 55:21, 56:6, 57:17
**word's** [1] - 52:5
**words** [1] - 54:5
**world** [1] - 20:20
**write** [1] - 7:4
**written** [2] - 15:20, 33:2

## Y

**Yates** [4] - 51:4, 53:19, 54:2, 54:7
**year** [2] - 62:6, 68:2
**years** [2] - 13:22, 27:10
**yesterday** [2] - 23:12, 39:12
**York** [2] - 1:19
**yourself** [1] - 35:5
**yourselves** [1] - 3:5

| Z |
|---|
| **Zedner** [1] - 43:21 |