**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**KEVIN SEEFRIED**,<br><br>Defendant. | Case No. 1:21-cr-00287 (TNM) |

<u>**MEMORANDUM ORDER**</u>

After a bench trial, Kevin Seefried was convicted of a felony and four misdemeanors. *See* Judgment, ECF No. 141.  He has since appealed his conviction and sentence to the D.C. Circuit, and he now moves for release pending the Circuit's resolution of that appeal.  For the reasons below, the Court grants his motion, but not immediately.

**I.**

In early 2023, the Court found Seefried guilty of one felony and four misdemeanors stemming from his participation in the riot at the U.S. Capitol Building on January 6, 2021.  *See generally* Judgment.  Seefried was found guilty of Obstruction of an Official Proceeding, under 18 U.S.C. § 1512(c)(2) (his felony conviction), and four trespass-related misdemeanors under 18 U.S.C. § 1752(a) and 40 U.S.C. § 5104(e)(2).  *Id.*  Following those convictions, the Court sentenced Seefried to 36 months' incarceration on the § 1512(c) felony count, twelve months' incarceration on each of the § 1752(a) misdemeanor counts, and six months' incarceration on each of the § 5104(e)(2) misdemeanor counts.  *Id.* at 3.  All sentences were concurrent to one another.  *Id.*

Seefried promptly appealed his conviction and sentence to the D.C. Circuit.  Notice of Appeal, ECF No. 144.  Once he did, he moved in this Court for release pending appeal based on

the Circuit's consideration of *United States v. Miller*, D.C. Cir. Case No. 22-3041.  *Miller*

concerned whether § 1512(c) applied outside the context of "evidence impairment," *i.e.*, when a

defendant had not taken acts "intended to affect the availability or integrity of evidence."  *United*

*States v. Fischer*, 64 F.4th 329, 338 (D.C. Cir. 2023) (case consolidated with *Miller*).

Concluding that this was a "substantial question" and that the Circuit's disposition of the appeal

might result in a significantly lesser sentence, the Court granted Seefried's motion for release

pending appeal.  *See* Order on Mot. for Bond (Release Order), ECF No. 151.

 A few weeks after the Court ordered Seefried released pending appeal, the D.C. Circuit

decided *Fischer*.  A fractured panel held that § 1512(c) *does* apply to "assaultive conduct,

committed in furtherance of an attempt to stop Congress from performing a constitutionally

required duty."  *Fischer*, 64 F.4th at 332.  Thus, if the Circuit's opinion were the last word,

Seefried's felony conviction would be valid.  So the Court ordered Seefried to surrender to the

custody of the Attorney General to begin serving his sentence.  ECF No. 158.

 Seefried's current motion is déjà vu all over again.  Last December, the Supreme Court

issued a writ of certiorari, agreeing to hear *Fischer*.  *Fischer v. United States*, 144 S. Ct. 537, 537

(2023) (Mem.).  That means that at least four justices were interested in deciding the question

presented by that case.  *Rogers v. Mo. Pac. R.R. Co.*, 352 U.S. 521, 527 (1957) (Frankfurter, J.,

dissenting).  That is, whether "§ 1512(c) ('Witness, Victim, or Informant Tampering'), which

prohibits obstruction of congressional inquiries and investigations, . . . include[s] acts unrelated

to investigations and evidence."  Pet. for a Writ of Cert. at i, *Fischer v. United States* (No. 23-

5572) (U.S. pet. for cert. filed Dec. 13, 2023).  Now that this issue is again live, and Seefried's

felony conviction may again be vitiated, Seefried asks this Court to order him released while his

appeal is decided.

## II.

In 18 U.S.C. § 3143(b), Congress gave defendants an avenue to secure their release from federal custody pending disposition of their appeals.  Except in cases in which the defendant has been convicted of certain crimes listed in 18 U.S.C. § 3142(f)(1), a District Judge "shall order the release" of a defendant whose appeal is pending before the Circuit or the Supreme Court if two conditions are met.  First, the Court must find "by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released."  18 U.S.C. § 3143(b)(1)(A).  And second, the Court must find "that the appeal is not for the purpose of delay and raises a substantial question" that is "likely to result in" reversal, a new trial, a noncustodial sentence, or a custodial sentence which will have fully expired by the time the appeal is decided.  *Id*. § 3143(b)(1)(B).  When those conditions are met, the statute leaves no discretion:  The Court "*shall order*" that the defendant be released.  *Id*. § 3143(b)(1) (emphasis added).

Seefried has appealed both his conviction and sentence to the D.C. Circuit.  Notice of Appeal; Docketing Statement at 1, *United States v. Seefried*, D.C. Cir. Case No. 23-3023.  So he falls within the ambit of § 3143(b)(1) and must be released if the Court finds that he satisfies the two conditions discussed above.

## A.

The first prong of the § 3143(b)(1) analysis is whether, "by clear and convincing evidence," the Court finds that Seefried "is not likely to flee or pose a danger to . . . the community if released."  18 U.S.C. § 3143(b)(1)(A).  He is not.

To begin, the Court has already found that Seefried does not pose a flight risk or a risk of harm to the community.  Release Order at 2.  Indeed, at the time of Seefried's prior motion, the

Government "concede[d] [that] the defendant does not pose a danger to the community or a risk of flight." Opp'n to Mot. for Release Pending Appeal (First Opp'n) at 1, ECF No. 148. Without some intervening change of facts, that Court's prior finding is conclusive here. After all, one of "the most basic principle[s] of jurisprudence" is that "the same issue presented a second time in the same case in the same court should lead to the same result." *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (emphasis omitted). So the question is whether some fact has changed, such that the Court should revisit its earlier ruling.

The Government identifies two. First, it says that Seefried "now knows the day-to-day reality of confinement in prison" and is therefore "more likely" to "flee[] rather than returning to prison." Opp'n at 4. Second, it says that this is an election year, involving "what will likely be another fiercely contested presidential election." *Id*. So the Court "would be releasing defendant into the same political maelstrom that led him to commit his crimes in the first place." *Id*. These arguments are unavailing.

The Government's first argument proves too much. Taken to its logical end, it would mean that a defendant may *never* be released pending appeal once he has spent time in jail and learned the "day-to-day reality of confinement in prison." Opp'n at 4. No such limitation appears in the text of § 3143(b)(1). And the Court will not constructively amend the statute to eviscerate its intent.

The Government's second argument fares little better. The Government claims that because it is "the year of what will likely be another fiercely contested presidential election," defendants like Seefried cannot be released from custody. Opp'n at 4. To be sure, if the Government points to facts suggesting Seefried is likely to reoffend, he cannot be released.

4

18 U.S.C. § 3143(b)(1)(A).  But the Government must actually point to "evidence" supporting that assertion.  *See id*.  And it has not done so here.

The riot on January 6th was the culmination of a unique—indeed, never-before-seen—confluence of events.  The Government provides the Court no evidence suggesting that any of the events that led to that riot are reasonably likely to recur.  Nor does it point to any evidence that Seefried would participate in another riot if they did.  Instead, the Government invokes general atmospherics about a "fiercely contested presidential election" and a "political maelstrom."  Opp'n at 4.  It then leaves the Court to speculate that this "maelstrom" will ultimately result in Seefried reoffending.  This fact-free approach does not enable the Court to conclude that Seefried is "likely to flee or pose a danger to the safety of any other person or the community."  18 U.S.C. § 3143(b)(1)(A).

Ultimately, none of the Government's arguments involve any facts specific to Seefried. Instead, they are purely class-based.  People who have already gone to prison, *as a class*, cannot be released.  January 6th defendants, *as a class*, cannot be released during an election year.  In the end, if specific facts about Seefried lead the Government to believe that he is imminently likely to engage in criminal conduct, options remain open to the Government.  But without those facts, the Court cannot deprive a citizen of his liberty based on guesswork alone.

Because the Government has presented no reason to believe that its previous concession about Seefried's flight risk is no longer valid, the Court reaffirms its previous finding.  By clear and convincing evidence, Seefried is not likely to flee the jurisdiction or pose a harm to the community during his release.

**B.**

That leaves the second factor: whether "the appeal is not for the purpose of delay" and "raises a substantial question of law or fact likely to result in" Seefried's release from custody. 18 U.S.C. § 3143(b)(1)(B). The Government previously conceded that Seefried's appeal is "not for the purposes of delay," First Opp'n at 1, and its new Opposition does not recant that concession. Instead, it focuses entirely on the second component, whether Seefried's appeal raises a substantial question likely to result in his release. Opp'n at 5–7. The Court therefore asks two questions: "(1) Does the appeal raise a substantial question?" and "(2) If so, would the resolution of that question in the defendant's favor be likely to lead to [one of the § 3143(b)(1)(B) outcomes]?" *United States v. Perholtz*, 836 F.2d 554, 555 (D.C. Cir. 1987).

Seefried's appeal presents a substantial question. The Government makes scant mention of this requirement in its brief. *See* Opp'n at 4 (sole mention of this requirement). Still, the Court must address it. The question at issue in *Fischer* is identical to that raised by Seefried in his appeal. So the Supreme Court's grant of the *Fischer* petition necessarily means that Seefried's appeal raises a substantial question. After all, a substantial question is "a close question or one that very well could be decided the other way." *Perholtz*, 836 F.2d at 555 (internal quotation marks omitted). And when the Supreme Court issues a writ of certiorari to answer a question, it will usually be the case that this standard is met.

Consider for a moment why. The Supreme Court uses something called "the rule of four" to decide which cases to review. *Rogers*, 352 U.S. at 527 (Frankfurter, J., dissenting). That rule is based on the theory "that if four Justices find that a legal question of general importance is raised, that is ample proof that the question has such importance." *Id*. at 529; *see also id*. at 560 (Harlan, J., concurring). So when the Court issues a writ of certiorari, it must be

true that at least four Justices agree that "a legal question of general importance" has been raised. *Id*. at 529 (Frankfurter, J., dissenting); *see also* S. Ct. R. 10 (reaffirming this standard).  And where, as here, there is no circuit split to motivate the Court's review, the decision to issue a writ of certiorari will ordinarily indicate that reasonable minds could (and perhaps are inclined to) decide the question "the other way."  *Perholtz*, 836 F.2d at 555.  So, at least on the facts here, the grant of review in *Fischer* necessarily means that Seefried's appeal, which involves the same issue, presents a "substantial question of law."  18 U.S.C. § 3143(b)(1)(B).

That leaves only whether "resolution of that question in [Seefried's] favor [is] likely to lead to" his release from custody.  *Perholtz*, 836 F.2d at 555.  It is.  If the Supreme Court decides *Fischer* in Fischer's favor, it will almost certainly mean that Seefried's analogous conduct did not violate § 1512(c).  In that case, Seefried will be left serving only his sentences for the four misdemeanor convictions.  But, by the time his appeal has concluded, those custodial sentences will have likely concluded.

Seefried surrendered to the custody of the Attorney General on or before May 31, 2023. *See* ECF No. 158.  So his one-year custodial sentence on the misdemeanor charges will end on or before May 31, 2024.  *See* Judgment at 3 (ordering that all custodial sentences are to be served concurrently).  In that case, the question for the Court is whether Seefried's appeal is likely to conclude before or after May 31, 2024.  *See* 18 U.S.C. § 3143(b)(1)(B)(iv).

The Supreme Court has scheduled the oral argument in *Fischer* for April 16, 2024.  *See* February 16, 2024 Docket Entry, *Fischer v. United States*, S. Ct. Case No. 23-5572.  And the median time "from oral argument to decision" in the Supreme Court is 75 days.  Lee Epstein, William M. Landes & Richard A. Posner, *The Best for Last: The Timing of U.S. Supreme Court Decisions*, 64 DUKE L. J. 991, 993 n.5 (2015).  That easily puts the likely date of the Court's

opinion into the last week of June.  Then, the Circuit will take still more time to decide

Seefried's case, applying *Fischer*.  On that timeline, there is next to no likelihood that Seefried's

appeal will be over before May 31.  And in that case, he has satisfied the second *Perholtz* step.

The Government does not contest much of this.  Instead, it argues that Seefried's

*misdemeanor* sentences would not be reduced if his felony conviction were vacated.  Opp'n at 5.

But the Court's analysis so far has proceeded on the assumption that Seefried will have to serve

the maximum prison term possible on his misdemeanor counts—one year.  Incidentally, that is

the exact term the Court sentenced him to.  So the Government is left to rely on the speculative

claim that, without the felony conviction, the Court would convert Seefried's concurrent

sentences to consecutive ones.  *Id*. at 6; *see infra* at 10.

Finally, the Government appears to downplay the risk that Seefried would spend more

time in prison than necessary.  If the Court denies Seefried's motion, the Government says, he

would serve "at most a few weeks" longer in prison than he should.  Opp'n at 6.  But "[i]n our

society liberty is the norm," not the exception.  *United States v. Salerno*, 481 U.S. 739, 755

(1987).  And every day that a man's liberty is wrongfully withheld extracts a dear cost.  So it is

no answer for the Government to tell the Court that the cost of denying this motion is *just* "a few

weeks" more detention than warranted.

In sum, the Court concludes that Seefried has satisfied the second § 3143(b)(1) prong,

too.  His appeal presents a "substantial question" and, if that question were decided in his favor,

his sentence would likely be reduced to a term of imprisonment that is less than what he will

have served by the time his appeal is over.  18 U.S.C. § 3143(b)(1)(B)(iv).  In so deciding, the

Court joints with other courts in this district that have likewise found appeals raising the *Fischer*

issue to warrant release pending appeal.  *See, e.g.*, *United States v. Adams*, 21-cr-00354 (APM),

2024 WL 111802, at *1–3 (D.D.C. Jan. 10, 2024); *United States v. Sheppard*, 21-cr-00203
(JDB), 2024 WL 127016, at *2–3 (D.D.C. Jan. 11, 2024).

**C.**

All this means that Seefried has a right to release pending the disposition of his appeal.
But that leaves a final question: when?  Section 3143(b)(1)(B) provides the answer.  When a
court orders a defendant released under § 3143(b)(1)(B)(iv), that release shall not take effect
until "the expiration of the likely reduced sentence."  18 U.S.C. § 3143(b)(1)(B).  So the Court
must determine what that "likely reduced sentence" would be.  This analysis is inherently
speculative—the Court is *not* resentencing Seefried today.  Instead, it is simply looking ahead
and assessing what Seefried's probable sentence might be if he were to win on appeal.

The Court concludes that Seefried's misdemeanor sentence likely would not change:  It
would remain one year on the two § 1752(a) convictions and six months on the two § 5104(e)(2)
convictions, all to run concurrently.  Those sentences—each the statutory maximum—would
account for the severity of Seefried's criminal conduct.  At the same time, running the sentences
concurrently would account for the overlap in the relevant conduct and his lack of criminal
history.

Seefried disagrees.  He notes that "[i]n other cases involving misdemeanor-only January
6 defendants[,] . . . this Court has consistently imposed sentences of less than a month of
incarceration or probation only."  Mot. at 8.  But the cases he points to are meaningfully different
from this one.  As the Court noted in sentencing Seefried, "among the January 6th rioters I've
sentenced thus far for nonassaultive conduct, [Seefried's] actions are at the most egregious end."
Sentencing Tr. at 39, ECF No. 143.  Seefried was "one of the very first rioters to break into the
Capitol," *id*. at 38, and his early actions likely inspired those who followed him.  He carried a

9

Confederate battle flag into the Capitol—something that did not happen even during the Civil War—and used the flag to strike at a black police officer before chasing him through the building. *Id*. at 38–39. And, of course, Seefried went to trial rather than accepting responsibility for his actions. He is therefore unlike other defendants whom the Court has sentenced to brief terms of incarceration or noncustodial sentences. *Contra* Mot. at 8.

Likewise, though, the Court is unpersuaded by the Government's claim that Seefried's sentence would be *increased* on remand. Opp'n at 6. Because the Court issued Seefried the statutory maximum sentence, his sentence could only increase if the Court converted his terms of imprisonment from concurrent to consecutive sentences.

"When a federal court imposes multiple prison sentences, it can typically choose whether to run the sentences concurrently or consecutively." *Lora v. United States*, 599 U.S. 453, 455 (2023). But consecutive sentences are generally the exception, rather than the rule. That is because "[f]or many defendants, the difference between consecutive and concurrent sentences is more important than a jury verdict of innocence on any single count: Two consecutive 10–year sentences are in most circumstances a more severe punishment than any number of concurrent 10–year sentences." *Oregon v. Ice*, 555 U.S. 160, 174 (2009) (Scalia, J., dissenting).

The Court is not persuaded that it would likely sentence Seefried to consecutive terms of imprisonment on remand. Where "the sentence imposed on the count carrying the highest statutory maximum,"—here, one year—"is adequate to achieve the total punishment, . . . the sentences on all counts shall run concurrently." U.S.S.G. § 5G1.2(c). Here, that one-year sentence is likely adequate. As the Court noted during the first sentencing, Seefried has no criminal history. Sentencing Tr. at 40. He willingly surrendered himself to the authorities, both on arrest and also after sentencing. *Id*. at 40–41. And he has shown remorse for his crimes. *Id*.

at 41.  As the Court noted before, there is little risk of recidivism or need for specific deterrence here.  *Id*. at 42.  More, consecutive sentences are generally inappropriate where the offenses involve overlapping relevant conduct.  *Cf. United States v. Heard*, 359 F.3d 544, 549–51 (D.C. Cir. 2004).  So consecutive sentences would likely be "greater than necessary[] to comply with the purposes" of sentencing, and would thus be inappropriate.  18 U.S.C. §§ 3553(a), 3584(b).

To be clear, this conclusion turns on the specific facts of this case and this Defendant. Other courts in this district—in cases like *Adams* and *Sheppard*—have concluded that they would likely reduce the defendants' misdemeanor sentences if their felony convictions were vacated.  But each sentencing decision turns on the specific facts of the defendant before the Court.  So the Court's divergence from those decisions reflects only a case-specific evaluation of the Defendant before the Court.

The Court therefore concludes that Seefried's likely reduced sentence is a total of one year of incarceration.  Heeding Congress's command, the Court thus orders that Seefried be released on the expiration of that likely reduced sentence—in other words, one year to the day after he surrendered to the custody of the Attorney General.

\* \* \*

Accordingly, the Court **ORDERS** that Defendant's Motion for Release Pending Appeal is **GRANTED**.  The Bureau of Prisons is **ORDERED** to release Seefried one year after the day on which he surrendered to custody.  The parties are **ORDERED** to file a Joint Status Report no later than 14 days following the Supreme Court's release of an opinion in *Fischer*.

**SO ORDERED**.

Dated: March 26, 2024

_____

TREVOR N. McFADDEN, U.S.D.J.